UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DOCKET NO. 1:23-cv-114

------------------------------------------------------------------X

**JOHN DOE**

                        **Plaintiff,**

   -against-

**WAKE FOREST UNIVERSITY,**

                        **Defendant.**

------------------------------------------------------------------X

### DECLARATION OF TARA J. DAVIS, ESQ.
### IN SUPPORT OF PLAINTIFF'S MOTION
### <u>TO PROCEED ANONYMOUSLY</u>

TARA J. DAVIS, ESQ., hereby declares subject to the penalties of perjury pursuant to 28 U.S.C. § 1746:

1. I am an attorney-at-law of the States of New York and Massachusetts. I am a Partner at the law firm of Nesenoff & Miltenberg, LLP, the attorneys of record for the Plaintiff in this matter. In that capacity, I am fully familiar with the facts and issues set forth in this Declaration, which is being submitted in support of Plaintiff's *ex-parte* motion to proceed anonymously in this action.

2. In the instant action, Plaintiff seeks redress due to the actions, inactions, omissions, errors, flawed procedures and/or overall failure of Defendant Wake Forest University ("Wake Forest" or the "University") to provide Plaintiff with basic fairness and equity in accordance with the mandates of Title IX of the Education Amendments of 1972

1

and Wake Forest's own policies and procedures in investigating and adjudicating a Title IX complaint filed against Plaintiff by fellow Wake Forest student Jane Roe.

3. The detailed allegations underpinning the instant action are set forth in the Verified Complaint, filed simultaneously with this motion.

4. In October 2021, Roe invited Doe to her sorority date function, after the pair had engaged in sexual activity, but never intercourse, approximately six to eight times previously, dating back to the spring 2021 semester.

5. On the ride to the date function, Roe became affectionate toward Doe as they sat next to each other. They began kissing, which was initiated by Roe.

6. After the function, Doe and Roe both went to the AEPi fraternity house. Both parties had been consuming alcohol, however, neither was impaired to a degree that they were unable to appreciate their surroundings or understand what was happening.

7. Roe did not stumble, did not fall, did not slur her words, and did not fall asleep during the ride back to campus. At all times, she was fully coherent and alert.

8. After the stop at the AEPi house, the parties went to Roe's dorm room, where they began making out.

9. Consistent with all of their prior interactions, Roe unequivocally demonstrated her consent to engage in sexual activity through her non-verbal actions.

10. Both Doe and Roe mutually participated and moved toward intercourse. However, because Doe was unable to maintain an erection, they never engaged in the act of intercourse.

2

11. Instead, they each put clothing items back on and continued to kiss and cuddle, as they had on many prior occasions.

12. Doe slept in Roe's bed that evening.

13. When they woke up in the morning, they began cuddling, as Roe snuggled on Doe's chest. Roe began to rub Doe's shoulders and reached up to his hair, which had historically indicated the initiation of sexual contact.

14. Based upon Roe's actions, and consistent with their prior sexual encounters, they began kissing and Doe digitally penetrated Roe briefly.

15. They thereafter cuddled for a while longer before Doe got out of bed, got dressed, said goodbye and gave Roe a kiss, before returning to his dorm room.

16. Doe's departure that morning was no different than the many times they had spent together previously.

17. A few weeks later, Doe began dating another student at Wake Forest. Accordingly, he did not contact Roe thereafter.

18. Doe had no indication that Roe had any concern regarding what transpired between then on October 15-16, 2021, until he received the Notice of Allegations from Wake Forest six months later, in April 2022.

19. The Notice of Allegations described Roe's allegations as follows: "*[t]he respondent attended my sorority date function as my date on October 15th. After the event in my dorm room I was unable to give consent to activity that occurred due to incapacitation and the next morning non-consensual digital penetration occurred.*"

20. Notably, this information differed from the information submitted by Roe in her formal complaint the day prior, in which she stated: "*The respondent attended my sorority date function as my date on October 15th. After the event in my dorm room I was unable to give consent to activity that occurred and the next morning non-consensual activity occurred.*"

21. Roe's formal written complaint did not allege that she was not able to give consent "*due to incapacitation*" nor did she mention the act of "*digital penetration*," yet both of these details appeared in the Notice sent to Doe the following day.

22. The parties engaged in an Adaptive Resolution process during the summer of 2022 however, they were not able to reach a resolution.

23. Accordingly, the matter returned to the formal investigation process, with Roe being interviewed by the investigator, Assistant Director of the Title IX Office Jessica Telligman ("Telligman"), for the first time on August 30, 2022.

24. Two days later, on September 1, 2022 Doe received an Updated Notice of Allegations based on additional information provided by Roe during her first investigation interview.

25. The Updated Notice informed Doe that Roe was now alleging—ten months after the alleged incident—that in addition to her initial claims, she was also alleging that Doe sexually assaulted her when he engaged in sexual intercourse with her on October 15-16, 2021. Specifically, Roe stated that while she initially consented to sexual intercourse with Doe in her residence hall room, she subsequently withdrew her consent by stating "this doesn't feel good."

26. Despite having submitted her formal complaint back in April of 2022, this was the first time that Roe alleged that she and Doe had engaged in non-consensual sexual intercourse on the night of October 15-16, 2021.

27. On November 4, 2022, the Title IX Investigation Report was issued. The report again revised the allegations made against Doe, to include alternative theories of non-consent related to the sexual activity on the evening of October 15, 2021, as well as a claim that Roe was incapacitated due to sleep during the sexual activity on the morning of October 16, 2021.

28. Roe's medical record was included in the Report and revealed various inconsistencies in Roe's account. However, in reviewing the investigation report, it became apparent that when questioning Roe about the inconsistencies in her account, the Investigator offered Roe suggested responses to justify such inconsistencies, which Roe consequently adopted as her own.

29. The parties appeared for a hearing before the appointed Hearing Officer, attorney Dixie Wells ("Wells"), on November 29, 2022.

30. During the hearing, Wells evidenced a bias against Doe when she adopted the flawed findings of the Investigator; accepted Roe's allegations as fact despite her inconsistent and contradictory accounts; limited the time for Doe's advisor to cross-examine Roe because the hearing was going late into the evening; prohibited Doe's advisor from asking Roe and the other witnesses many relevant questions, while permitting Roe's advisor to ask every question posed; and reached a hearing outcome that was contrary to the weight of the evidence.

31. Doe received the hearing outcome letter ("the Outcome Letter") on December 20, 2022.

32. According to the Outcome Letter, Wells determined that the fact Roe had taken a Plan B was corroborative evidence of sexual assault, while she disregarded Roe's statement to the healthcare provider that she denied a sexual assault and did not recall either consenting to, or having, sexual intercourse with Doe.

33. Wells also cited to the fact that Roe did not contact Doe again after October 16, 2021, as evidence that "something bad" happened on that date, while overlooking that Doe began dating another Wake Forest student shortly thereafter, which Roe likely would have known about given their overlapping friend groups.

34. Further, Wells disregarded the fact that Roe remained in bed with Doe that evening, after supposedly being sexually assaulted by Doe, as evidence cutting against Roe's claims.

35. Finally, while determining that Roe was not incapacitated, Wells nonetheless determined that due to Doe's "overall lack of attention to and recognition of Claimant's condition during the evening on October 15, 2021, and in the early hours of October 16, 2021" it was reasonable to infer that he likewise was unaware that she was sleeping when he digitally penetrated her on the following morning of October 16, 2021.

36. Ultimately, Wells found Doe responsible and notified Doe of the recommended one-year suspension, with eligibility to return for the spring 2024 semester.

37. The Outcome Letter indicated that Doe had five (5) days to submit an appeal, making Doe's appeal due on Christmas Day, December 25.

38. Doe requested and was granted an extension. and appealed the hearing decision on January 3, 2023.

39. Doe's appeal was denied on January 23, 2023, upholding the findings reached by the Hearing Officer and affirming the one-year suspension.

40. Plaintiff has therefore exhausted his administrative remedies and this lawsuit represents and is the last and only option for him to right the wrongs occasioned by Defendant's misconduct and to clear his name.

41. Throughout the investigation, adjudication and appeal of the allegations against Plaintiff, Defendant failed to abide by the guidelines set by Wake Forest's Policy and acted in violation of federal and state law.

42. The wrongdoings of Wake Forest are abundant and are well defined in the Verified Complaint.

43. Plaintiff has been damaged by the Defendant's actions as his education and future have been severely compromised due to the flawed and unjust procedures that resulted in Plaintiff's suspension. Plaintiff has also suffered physical, psychological and emotional distress and irreparable harm to his reputation.

44. Plaintiff therefore brings this action to obtain relief based on claims for violations of Title IX of the Education Amendments of 1972 and breach of contract.

45. Plaintiff should be permitted to protect his identity through the use of a pseudonym in public filings with the Court because the circumstances detailed in the Verified Complaint, giving rise to Plaintiff's claims, involve facts of a highly intimate nature. The disclosure of Plaintiff's identity will result in significant harm to him, as well

7

as possible retaliation and harassment. The disclosure of the female student, Jane Roe, will likewise result in embarrassment and potential harassment. Moreover, Defendant—who is aware of Plaintiff's identity, and the identity of his accuser—will not be prejudiced by Plaintiff's use of a pseudonym.

I declare under the penalty of perjury that the foregoing is true and correct, pursuant to Title 28, United States Code, Section 1746.

Executed on the 2nd day of February 2023.

*Tara J. Davis*
Tara J. Davis
