# WAKE FOREST UNIVERSITY

# SEX AND GENDER[1] DISCRIMINATION AND HARASSMENT POLICY AND TITLE IX SEXUAL HARASSMENT[2] AND NON-TITLE IX SEXUAL MISCONDUCT[3] GRIEVANCE PROCEDURES

Eff. 8/14/2020

---

## TABLE OF CONTENTS

WAKE FOREST UNIVERSITY                                                                                1

SEX AND GENDER DISCRIMINATION AND HARASSMENT POLICY AND TITLE IX SEXUAL HARASSMENT
AND NON-TITLE IX SEXUAL MISCONDUCT GRIEVANCE PROCEDURES                                1

TABLE OF CONTENTS                                                                                    1

IMPORTANT INFORMATION FOR INDIVIDUALS WHO MAY BE VICTIMS OF SEXUAL HARASSMENT,
SEXUAL MISCONDUCT, SEXUAL ASSAULT, DATING VIOLENCE, DOMESTIC VIOLENCE, OR STALKING:     6

ASSISTANCE CAN BE OBTAINED 24 HOURS A DAY, 7 DAYS A WEEK, FROM:                        6

University Police (Non-Confidential)                                                   6

Phone:                                                                                6

Email:                                                                                6

Campus Location:                                                                      6

Mailing Address:                                                                      6

Safe Office (Confidential)                                                            6

24/7 Helpline: 336.758.5285                                                           6

Title IX Coordinator:                                                                 7

Email:                                                                                7

Location:                                                                             7

---

[1] As used in this Policy, "sex" includes birth/biological sex and sexual orientation, and gender includes gender identify and expression.

[2] As defined by Title IX of the Education Amendments Act of 1972 and its implementing regulations ("Title IX") and herein, Sexual Harassment includes Sexual Assault, Dating Violence, Domestic Violence, and Stalking,

[3] As defined in this Policy.

1

Doe Decl. Ex. A   p. 2

SECTION I. SEX AND GENDER DISCRIMINATION, HARASSMENT, AND MISCONDUCT POLICY ... 8

  1.01 Notice of Nondiscrimination ... 8

  1.02 Prohibition on Sex and Gender Discrimination, Harassment and Misconduct, Retaliation, and Providing False Information or Interfering with a Grievance Process ... 8

  1.03 Reporting and Period of Limitations ... 9

    Academic Staff ... 10

    Administrative Staff ... 10

    Athletics Department Staff ... 10

  1.04 Applicability of Policy and Grievance Procedures ... 11

  1.05 Information for Parents of Minors and Guardians ... 12

  1.06 Definitions Applicable to Policy ... 12

SECTION II. TITLE IX SEXUAL HARASSMENT AND NON-TITLE IX SEXUAL MISCONDUCT PRE-HEARING GRIEVANCE PROCEDURES ... 20

  A. APPLICABILITY, COMPLAINT INTAKE, AND OVERARCHING PROVISIONS ... 20

  2A.01 Applicability of Pre-Hearing Grievance Procedures ... 20

  2A.02 Obligation to Respond and Initial Outreach to Claimant ... 20

  2A.03 Filing of a Formal Complaint ... 20

  2A.04 Notice of Allegations ... 21

  2A.05 Dismissal ... 21

  2A.06 Advisors and Support Persons ... 23

  2A.07 Student Amnesty ... 23

  2A.08 Timing ... 24

  2A.09 Written Notice of Meetings ... 24

  2A.10 Effect of Corollary Criminal Investigation ... 24

  2A.11 Emergency Removal and Administrative Leave ... 24

  2A.12 Effect of Respondent Withdrawal, Graduation, or Resignation ... 25

  2A.13 Privacy and Disclosure ... 25

  2A.14 Conflicts of Interest, Bias, and Training ... 26

  2A.15 Burden of Proof ... 26

  2A.16 Presumption of No Responsibility until Determination ... 26

  2A.17 Objective Evaluation of All Relevant Evidence; Credibility Determinations ... 27

  2A.18 Academic Freedom ... 27

  2A.19 Documentation ... 27

  2A.20 Consolidation of Formal Complaints ... 27

  2A.21 Complex Complaints ... 27

  2A.22 Individuals with Disabilities ... 28

  B.    THE INVESTIGATION ... 28

  2B.01 Appointment of Investigators and Challenging of the Same ... 28

  2B.02 The Investigators' Activities ... 28

2

2B.03 The Investigative Report and Evidence Review          29
2B.04 Submission of Evidence; Expert Witnesses             30
2B.05 Treatment Records                                    30
SECTION III.   TITLE IX SEXUAL HARASSMENT HEARING PROCEDURES    31
3A.01 Referral for Adaptive Resolution                     31
3A.02 The Formal Resolution Process                        31
3A.03 Appointment of the Hearing Officer and Challenging of the Same    31
3A.04 Notice of the Hearing                                32
3A.05 Pre-Hearing Submissions                              32
3A.06 Failure to Appear                                    32
3A.07 Evidentiary Matters                                  32
3A.08 Hearing Format and Questioning of Witnesses and Parties    33
3A.09 Unavailability or Refusal to Testify or Submit to Cross-Examination    33
3A.10 Recording                                            34
3A.11 The Determination of the Hearing Officer Regarding Responsibility    34
3A.12 Determination Regarding Sanctions                    34
3A.13 Implementation of Sanctions                          35
3A.14 Final Outcome Letter                                 35
3A.15 Appeals                                              35
3A.16 Appointment of the Appeal Officer and Challenging of the Same    36
3A.17 Appellate Review                                     36
SECTION IV.  NON-TITLE IX SEXUAL MISCONDUCT HEARING GRIEVANCE PROCEDURES FOR
STUDENT-RESPONDENTS                                        37
4A.01 Referral for Adaptive Resolution                     37
4A.02 Hearing Board                                        37
4A. 03 Student Sexual Misconduct Hearing Process           37
4A. 04 Sanctions                                           39
4A. 05 Determination Letter                                39
4A.06 Appeals                                              40
4A.07 Appointment of the Appeal Officer and Challenging of the Same    40
4A.08 Appellate Review                                     40
SECTION V. NON-TITLE IX SEXUAL MISCONDUCT ADMINISTRATIVE GRIEVANCE PROCEDURES FOR
EMPLOYEE-RESPONDENTS                                       42
5A.01 Referral for Adaptive Resolution                     42
5A.02 Sexual Misconduct Review Committee                   42
5A. 03 Employee Sexual Misconduct Review Process           42
5A. 04 Sanctions                                           43
5A.05 Appeals                                              43
5A.06 Appointment of the Appeal Officer and Challenging of the Same    44

3

5A.07 Appellate Review                                                                                     44
SECTION VI.  ADAPTIVE RESOLUTION                                                          45
6A.01 Availability of Adaptive Resolution                                                   45
6A.02 Notice of Allegations and Notice of Adaptive Resolution and Facilitator   45
6A.03 Adaptive Resolution                                                                         45
6A.04 Resolution                                                                                        46
6A.05 Written Resolution Agreement                                                         46
6A.06 Termination of Adaptive Resolution Process                                    47
6A.07 Confidentiality of Information Shared                                             47
6A.08 Appeal                                                                                             47
6A.09 Records                                                                                           47
EXHIBIT A                                                                                                  48
Suggested Actions for People Who Have Experienced Sexual Harassment      48
1.    Ensure Your Physical Safety.                                                            48
2.    Seek Medical Assistance and Treatment.                                         48
3. Obtain Emotional Support                                                                    49
4. Obtain Information/Report Misconduct                                               50
Important Contact Information: Resources for Parties                              50
Title IX Coordinator:                                                                             50
University Police (Non-Confidential)                                                    50
Phone:                                                                                                 50
Email:                                                                                                  50
Campus Location:                                                                               50
Mailing Address:                                                                                50
Winston-Salem Police Department (Non-Confidential)                      51
Phone:                                                                                                 51
Address:                                                                                              51
Wake Forest University Human Resources                                           51
University Counseling Center (Confidential)                                       51
24/7 Crisis line
336.758.5273                                                                                       51
Safe Office (Confidential)                                                                    51
24/7 Helpline:
336.758.5285                                                                                       51
Office of Chaplain (Confidential)                                                        52
Employee Assistance Program (EAP) (Confidential)                          52
Women's Center [Non-Confidential, Private]                                    52
Additional Community Resources                                                       52
Wake Forest Baptist Medical Center (Confidential)                          52

4

Novant Health Forsyth Medical Center (Confidential)          52
Forsyth County Health Department (Confidential)               52
Family Services, Inc.  [ Confidential]                        52

5

*Updated on 3/8/22*

# IMPORTANT INFORMATION FOR INDIVIDUALS WHO MAY BE VICTIMS OF SEXUAL HARASSMENT, SEXUAL MISCONDUCT, SEXUAL ASSAULT, DATING VIOLENCE, DOMESTIC VIOLENCE, OR STALKING:

If you or someone you know may have been a victim of the behaviors listed above or any other type of violence, you are strongly encouraged to seek immediate assistance.

**ASSISTANCE CAN BE OBTAINED 24 HOURS A DAY, 7 DAYS A WEEK, FROM:**

University Police (Non-Confidential)

**Phone:**

From Campus Phone Extensions: 911
Cell or Off Campus: 336.758.5911
Non-Emergency: 336.758.5591

**Email:**

24/7 Dispatch Center: dispatch@wfu.edu
Admin Offices: police@wfu.edu

**Campus Location:**

Alumni Hall on Reynolda Campus
1834 Wake Forest Road
Winston-Salem, NC 27109

**Mailing Address:**

P.O. Box 7686
Winston-Salem, NC 27109

Safe Office (Confidential)

**24/7 Helpline: 336.758.5285**

The Safe Office is available for confidential crisis response and ongoing support related to matters of sexual misconduct. The Safe Office is available 24/7 while classes are in session.

During business hours (8:30 a.m. to 5:00 p.m., Monday through Friday), you are also strongly encouraged to contact one of the following individuals:

6

Title IX Coordinator (Non-Confidential):

**Email:**

titleixcoordinator@wfu.edu

**Location:**

1834 Wake Forest Road
Reynolda Hall, Suite 307
Winston-Salem, NC 27109

**Aishah Casseus, JD**
Title IX Coordinator/Title IX Office Director/Section 504 Coordinator
336.758.7258 | casseua@wfu.edu

For additional information about seeking medical assistance and emotional support, as well as important contact information for local law enforcement agencies, hospitals, and other resources, see Exhibit A attached to this document.

7

*Updated on 3/8/22*

# SECTION I. SEX AND GENDER DISCRIMINATION, HARASSMENT, AND MISCONDUCT POLICY

## 1.01 Notice of Nondiscrimination

Wake Forest University ("Wake Forest") is committed to diversity, inclusion, and the spirit of Pro Humanitate. In compliance with and as required by Title IX of the Education Amendments Act of 1972 and its implementing regulations ("Title IX") and other civil rights laws, as well as in furtherance of its own values as a higher education institution, does not discriminate on the basis of race, color, national origin, sex, sexual orientation, gender, gender identity, gender expression, pregnancy, disability, age, religion, veteran status, or any other characteristic or status protected by applicable local, state, or federal law in admission, treatment, or access to, or employment in, its programs and activities.

Discrimination and harassment are antithetical to the values and standards of the Wake Forest community; are incompatible with the safe, healthy environment that the Wake Forest community expects and deserves and will not be tolerated. Wake Forest is committed to providing programs, activities, and an education and work environment free from discrimination and harassment. Wake Forest is also committed to fostering a community that promotes prompt reporting and fair and timely resolution of those behaviors.

Inquiries concerning discrimination or harassment on the basis of sex and gender may be referred to Wake Forest's Title IX Coordinator. Exhibit A to this document provides the Title IX Coordinator's name and contact information.

Inquiries concerning discrimination or harassment based on a protected characteristic or status other than sex or gender may be referred to the Dean of Students for the College or the relevant School (for students) or the Human Resources Department (for employees). Exhibit A also provides their contact information.

Individuals may also make inquiries regarding discrimination or harassment to the U.S. Department of Education's Office for Civil Rights by contacting the District of Columbia Office, 400 Maryland Avenue, SW, Washington, D.C. 20202-1475; Phone: 800-421-3481; Email: OCR@ed.gov.

## 1.02 Prohibition on Sex and Gender Discrimination, Harassment and Misconduct, Retaliation, and Providing False Information or Interfering with a Grievance Process

This Policy prohibits discrimination, harassment, and misconduct on the basis of sex and gender. **As used in this policy, the term "sex" includes birth/biological sex and sexual orientation, and gender includes gender identity and expression.** Wake Forest strongly encourages the prompt reporting of, and is committed to timely and fair resolution of, complaints of sex and gender discrimination, harassment, and misconduct.

8

Sexual Harassment, as defined by Title IX and in this Policy[4], is a specific type of sex discrimination/harassment that includes Sexual Assault, Dating Violence, Domestic Violence, and Stalking and that Wake Forest addresses, as required by Title IX, using its Pre-Hearing and Hearing Grievance Procedures in Sections II and III of this Policy.

This Policy also prohibits Retaliation, as defined by Title IX and in this Policy. Complaints alleging Retaliation may be filed with the Title IX Coordinator and, at the discretion of the Title IX Coordinator, may be addressed under Wake Forest's Pre-Hearing and Hearing Grievance Procedures set forth below or other grievance procedures adopted by Wake Forest.

Sexual Misconduct, as defined by Wake Forest in this Policy, is addressed using the Pre-Hearing Grievance Procedures and Hearing Grievance Procedures in Sections II and IV of this Policy for student-respondents and the Pre-Hearing Grievance Procedures and Administrative Grievance Procedures in Sections II and V of this Policy for employee-respondents.

Additionally, Wake Forest presumes that individuals who file a Formal Complaint do so in good faith; however, any individual who knowingly files a false Formal Complaint or who interferes with a Wake Forest grievance process may be subject to disciplinary action. Interference with a grievance process may include, but is not limited to, preventing or attempting to coerce, compel, or prevent an individual from providing testimony or relevant information; removing, destroying, or altering documentation relevant to an investigation; or providing false or misleading information to Wake Forest officials who are involved in the investigation and/or resolution of a Formal Complaint, or encouraging others to do so. The outcome of a hearing process does not mean, in and of itself, that an individual knowingly filed a false Formal Complaint or that a determination regarding responsibility alone is sufficient to conclude that an individual made a materially false statement in bad faith.

### 1.03    Reporting and Period of Limitations

Any person (whether or not alleged to be the victim) may report sex or gender discrimination, harassment, or misconduct, including Sexual Harassment, in person, by mail, by telephone, or by electronic mail, using the contact information for the Title IX Coordinator listed in Exhibit A, or by any other means that results in the Title IX Coordinator receiving the person's verbal or written report. Such a report may be made at any time (including during non-business hours).

Wake Forest strongly encourages all employees and other members of the Wake Forest community to promptly report concerns regarding suspected or known discrimination/harassment/misconduct on the basis of sex or gender to the Title IX Coordinator.

---

[4] Capitalized terms used in this Policy are defined in Section 1.0.

9

*Updated on 3/8/22*

In addition to the Title IX Coordinator, Wake Forest has designated certain employees as individuals who are required to report discrimination and harassment on the basis of sex or gender to the Title IX Coordinator. These Mandatory Reporters consist of the following employees:

*Academic Staff*

- Senior vice president and provost
- Vice provosts and associate provosts
- Deans, including associate and assistant, in all Schools and the College
- Department Heads (Chairs) and Program Coordinators within Schools and the College

*Administrative Staff*

- President
- Executive Vice Presidents and Vice Presidents
- Chief Human Resource Officer
- Assistant Vice President for Campus Engagement and Professional Development, Human Resources
- Director, Campus Engagement, Human Resources
- Manager, Campus Engagement, Human Resources
- Title IX coordinator and Deputy Title IX coordinators
- Wake Forest University Police Officers
- Dean of Students of the College and each School of the University
- Student Conduct Officers
- Residence Life and Housing staff, including Resident Assistants
- Director of Campus Operations
- Associate Dean for Student Engagement
- Assistant Dean of Leadership and Fraternity and Sorority Life
- Director of Student Organizations and Programs
- Assistant Dean for Global Study Away

*Athletics Department Staff*

- Athletics Director
- Deputy, associate or assistant athletic directors
- All coaches

Additionally, Wake Forest has designated the following employees as confidential resources for students:

- Student Health Center Staff
- University Counseling Center Staff
- Chaplain's Office Staff
- Safe Office Staff

10

- Sports Psychologist
- Medical providers employed by the University

Wake Forest employees may contact the Employee Assistance Program for confidential consultations.

Information about sex or gender discrimination, harassment, or misconduct shared with these confidential resources will not be reported to other Wake Forest personnel (including the Title IX Coordinator), to the Respondent, or to others, unless the disclosing individual gives their consent to the disclosure or the law requires it (as may be the case with abuse involving a minor or under conditions involving imminent physical harm, for example). Confidential resources may report non-identifying statistical information to the Title IX Coordinator for recordkeeping and compliance purposes, and are also required to report such statistical information to the Wake Forest Police Department if the confidential resource is a Campus Security Authority under the Clery Act.

Wake Forest will address allegations of sex and gender discrimination, harassment, and misconduct in accordance with this Policy no matter the length of time that has passed since the alleged conduct. However, Wake Forest strongly encourages prompt reporting to preserve evidence for a potential legal or disciplinary proceeding. Delay may compromise the ability to investigate, particularly if the individuals who are involved in or who are witnesses to the alleged conduct are no longer Wake Forest students or employees.

## 1.04    Applicability of Policy and Grievance Procedures

This Policy applies to allegations of Sexual Harassment and Sexual Misconduct made by or against a student or an employee of Wake Forest or a third party, regardless of sex, sexual orientation, sexual identity, gender expression, or gender identity. Allegations of Sexual Harassment and Sexual Misconduct made by or against a student or employee of Wake Forest University Baptist Medical Center, Wake Forest University Health Sciences, or Wake Forest University School of Medicine will be addressed under the Wake Forest University Baptist Medical Center Sex and Gender Discrimination and Harassment Policy and Grievance Procedures.

The Title IX Sexual Harassment Pre-Hearing and Hearing Grievance Procedures apply only to allegations of Sexual Harassment in Wake Forest's Education Program or Activity (as defined herein), and to alleged Sexual Misconduct (if any) arising from the same facts and circumstances as the allegations of Sexual Harassment[5]. The Sexual Misconduct Pre-Hearing and Applicable Hearing and Administrative Grievance Procedures will apply to allegations of Sexual Misconduct and, at the direction of the Title IX Coordinator, to related allegations of Retaliation. Allegations of Retaliation that do not occur within the context of an existing investigation or hearing will be determined by the Title IX Coordinator following an investigation.

---

[5] And, at the discretion of the Title Coordinator, to related allegations of Retaliation.

11

Updated on 3/8/22

## 1.05   Information for Parents of Minors and Guardians

When a student Claimant or Respondent is a minor (age 17 or younger) or has a guardian appointed and their parent or guardian has the legal right to act on the student's behalf, then the parent or guardian may file a Formal Complaint on behalf of the student, although the student would be the "Claimant." In such a situation, the parent or guardian may exercise the rights granted to the student under this Policy, including requesting Supportive Measures and participating in a grievance process. Similarly, the parent or guardian may accompany the student to meetings, interviews, and hearings during a grievance process to exercise rights on behalf of the student, while the student's Advisor of choice may be a different person from the parent or guardian. Whether or not a parent or guardian has the legal right to act on behalf of an individual would be determined by state law, court orders, child custody arrangements, or other sources granting legal rights to parents or guardians.

Additionally, FERPA and its implementing regulations address the circumstances under which a parent or guardian is permitted to inspect and review a student's education records. However, in circumstances in which FERPA would not grant a party the opportunity to inspect and review evidence in connection with a grievance process, pursuant to Title IX and its implementing regulations, the student has an opportunity to do so, and a parent or guardian who has a legal right to act on behalf of the student has the same opportunity.

## 1.06   Definitions Applicable to Policy

Capitalized terms used herein are defined as follows.

**"Actual Knowledge"** means notice of Sexual Harassment or Sexual Misconduct or allegations of Sexual Harassment or Sexual Misconduct to Wake Forest's Title IX Coordinator or to any of the Mandatory Reporters listed in Section 1.03 above. "Notice" as used in this paragraph includes, but is not limited to, a report of Sexual Harassment or Sexual Misconduct to the Title IX Coordinator.[6]

**"Clery Act"** refers to the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act, which is a federal statute codified at 20 U.S.C. § 1092(f), with implementing regulations in the U.S. Code of Federal Regulations at 34 C.F.R. § 668.46. The Clery Act requires all colleges and universities that participate in federal financial aid programs to keep and disclose information about crime on and near their respective campuses.

---

[6] This standard is not met through imputation of knowledge based solely on vicarious liability or constructive notice. This standard also is not met when the only individual with Actual Knowledge is the Respondent. The mere ability or obligation to report Sexual Harassment and Sexual Misconduct or to inform a student about how to report Sexual Harassment or Sexual Misconduct, or having been trained to do so, does not qualify an individual as one to whom notice of Sexual Harassment or Sexual Misconduct or allegations of Sexual Harassment or Sexual Misconduct constitutes Actual Knowledge.

12

**"Complainant" or "Claimant"** means an individual who is alleged to be the victim of conduct that could constitute Sexual Harassment or Sexual Misconduct, irrespective of whether a Formal Complaint has been filed.

**"Consent"** means permission for something to happen or agreement to do something. For example, a person consents to sexual activity if/when they give permission for the activity to occur or agree to engage in the activity. Consent is unambiguous, informed, active (not passive), voluntary (freely given), mutually understandable words and/or actions that indicate a willingness to participate in the sexual activity.

Whether someone has given consent is based on the totality of the circumstances and is determined by reference to a reasonable person in the same or similar circumstances. Once consent to a sexual act has been given, consent can be withdrawn at any time by communicating words and/or actions to the other person before or during that sexual act. Consent is automatically withdrawn if someone becomes unconscious or falls asleep during a sexual act.

Consent cannot be inferred from silence, passivity, or a lack of resistance. Non-verbal communication alone may or may not be sufficient to constitute consent. Furthermore, consent cannot be inferred from a current or previous dating or sexual relationship (or the existence of such a relationship with anyone else), from someone's attire, spending money, or consent previously given. In other words, consenting to one sexual act does not imply consent to another sexual act.

Consent cannot be coerced. Examples of coercion that prevent consent include physical force, violence, duress, intimidation, deception, or the threat, expressed or implied, of bodily injury.

The use of alcohol or other drugs does not diminish one's responsibility to obtain consent before sexual activity and does not excuse conduct that violates this Policy.

Consent may never be given by:

1. Minors[7], even if the other participant did not know the minor's age;
2. Mentally disabled persons, when the Respondent knows or should know (based on a reasonable person standard) that the individual allegedly giving consent is not capable of consenting due to the disability; or
3. Persons who are Incapacitated.

**"Day"** means a calendar day, unless otherwise specified.

---

[7] A minor is a person who is legally below the age of consent as set forth in the applicable law. Determining whether someone is below the age of consent will be judged by the law of the place where the sexual act occurred. In North Carolina, the age of consent is 16 years old.

13

Updated on 3/8/22

**"Education Program or Activity"** means all of Wake Forest's operations and includes (1) locations, events, or circumstances over which Wake Forest exercised substantial control over both the Respondent and the context in which the alleged Sexual Harassment occurred; and (2) any building owned or controlled by a student organization that is officially recognized by Wake Forest.

**"Education Record"** has the meaning assigned to it under FERPA.

**"FERPA"** is the Family Educational Rights and Privacy Act, a federal statute codified at 20 U.S.C. § 1232g, with implementing regulations at 34 C.F.R. § 99. FERPA protects the privacy of student Education Records. FERPA grants to eligible students the right to access, inspect, and review Education Records, the right to challenge the content of Education Records, and the right to consent to the disclosure of Education Records.

**"Formal Complaint"** means a document filed by a Claimant or signed by the Title IX Coordinator alleging Sexual Harassment or Sexual Misconduct against a Respondent and requesting that Wake Forest investigate the allegation of Sexual Harassment or Sexual Misconduct. At the time of filing a Formal Complaint alleging Sexual Harassment, a Claimant must be participating in or attempting to participate in Wake Forest's Education Program or Activity. This same requirement does not apply to Formal Complaints alleging Sexual Misconduct. A Formal Complaint may be filed with the Title IX Coordinator in person, by mail, or by electronic mail by using the contact information listed for the Title IX Coordinator in Exhibit A. As used in this paragraph, the phrase "document filed by a Claimant" means a document or electronic submission that contains the Claimant's physical or digital signature, or otherwise indicates that the Claimant is the person filing the Formal Complaint.

**"Incapacitated"** means that a person does not have the capacity to consent. A person does not have the capacity to consent to a sexual act if, at the time of the act, they cannot understand the sexual nature of the proposed act, cannot understand that they have the right to refuse to participate in the act, or are otherwise unaware that the sexual activity is occurring.

For example, a person is Incapacitated if, because of the effect of alcohol, narcotics, drugs, or other substances, the person cannot understand the sexual nature of the proposed act or cannot understand that they have the right to refuse to participate in the act, and the Respondent knows or should know (based on a Reasonable Person standard) that the other person does not have the capacity to consent.

Other examples of persons who do not have the capacity to consent include persons who are unconscious, asleep, or physically helpless.

**"Reasonable Person"** means a reasonable person under similar circumstances and with similar identities.

**"Relevant Evidence"** means evidence that (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.

14

Evidence will not be considered Relevant Evidence if the question or proffered evidence constitutes, or seeks disclosure of: (1) information protected under a legally recognized privilege, unless the person holding such privilege has waived the privilege; (2) a party's records that were made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in the professional's or paraprofessional's capacity, or assisting in that capacity, and which were made and maintained in connection with the provision of treatment to the party, unless Wake Forest has received that party's voluntary, written consent to do so; (3) the Claimant's sexual predisposition or prior sexual behavior, unless such questions and evidence about the Claimant's prior sexual behavior are offered to prove that someone other than the Respondent committed the conduct alleged by the Claimant, or if the questions and evidence concern specific incidents of the Claimant's prior sexual behavior with respect to the Respondent and are offered in an effort to prove consent; or (4) Respondent's past sexual activity, if Respondent was found "not responsible" by Wake Forest.

**"Respondent"** means an individual who has been reported to be the perpetrator of conduct alleged to constitute Sexual Harassment, Sexual Misconduct, or Retaliation.

**"Retaliation"** means (1) any adverse action (including direct and indirect intimidation, threats, coercion, discrimination, or harassment (including charges for conduct violations that do not involve sex discrimination or harassment or Sexual Harassment or Sexual Misconduct but that arise out of the same facts or circumstances as a report or complaint of sex discrimination or harassment or a report or Formal Complaint of Sexual Harassment or Sexual Misconduct) that is (2) threatened or taken against a person (a) for the purpose of interfering with any right or privilege secured by Title IX or provided under this Policy; or (b) because the person has made a report or Formal Complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing related to Title IX or Sexual Misconduct.[8]

**"Sexual Harassment"** as defined by Title IX and in this Policy means conduct on the basis of sex that satisfies one or more of the following:

(1) an employee of Wake Forest conditioning the provision of an aid, benefit, or service on an individual's participation in unwelcome sexual conduct (commonly referred to quid pro quo harassment);

(2) unwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to Wake Forest's Education Program or Activity; or

(3) **"Sexual Assault,"** Sexual Assault is any sexual act directed against another person, without the consent of the person, including instances where the person is incapable of

---

[8] Retaliation does not include (1) the exercise of rights protected under the First Amendment; (2) charging an individual with making a materially false statement in bad faith in the course of a grievance proceeding (provided, however, that a determination regarding responsibility alone is not sufficient to conclude that an individual made a materially false statement in bad faith); or (3) good faith actions lawfully pursued in response to a report of prohibited conduct.

15

giving consent. Sexual Assault can occur between individuals of the same or different sexes and/or genders.

Sexual Assault includes the following:

- **Rape:** The carnal knowledge of a person, without the consent of the victim, including instances where the person is incapable of giving consent because of his/her age or because of his/her temporary or permanent mental or physical incapacity;
- **Sodomy:** Oral or anal sexual intercourse with another person, without the consent of the person, including instances where the person is incapable of giving consent because of his/her age or because of his/her temporary or permanent mental or physical incapacity;
- **Sexual Assault with an Object:** To use an object or instrument to unlawfully penetrate, however slightly, the genital or anal opening of the body of a person, without the consent of the person, including instances where the victim is incapable of giving consent because of his/her age or because of his/her temporary or permanent mental or physical incapacity;
- **Fondling:** The touching of the private body parts of a person for the purpose of sexual gratification, without the consent of the victim, including instances where the victim is incapable of giving consent because of his/her age or because of his/her temporary or permanent mental or physical incapacity;
- **Incest:** Nonforcible Sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by law; and
- **Statutory Rape:** Nonforcible Sexual intercourse with a person who is under the statutory age of consent.

**"Dating Violence,"** as defined in 34 U.S.C. § 12291(a)(10): violence committed by a person—(A) who is or has been in a social relationship of a romantic or intimate nature with the victim; and (B) where the existence of such a relationship shall be determined based on a consideration of the following factors: (i) the length of the relationship; (ii) the type of relationship; and (iii) the frequency of interaction between the persons involved in the relationship;

**"Domestic Violence,"** as defined in 34 U.S.C. § 12291(a)(8): felony or misdemeanor crimes of violence under North Carolina law and committed by a current or former spouse or intimate partner of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse or intimate partner, by a person similarly situated to a spouse of the victim under the domestic or family violence laws of the jurisdiction receiving grant monies, or by any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction; or

16

"Stalking," as defined in 34 U.S.C. § 12291(a)(30): engaging in a course of conduct directed at a specific person that would cause a reasonable person to (A) fear for their safety or the safety of others; or (B) suffer substantial emotional distress. A "course of conduct" means two or more acts, including, but not limited to, acts in which the stalker directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about a person, or interferes with a person's property. "Substantial emotional distress" means significant mental suffering or anguish that may, but does not necessarily require, medical or other professional treatment or counseling.

"**Sexual Misconduct**" is defined as follows:

(1) Conduct that would otherwise meet the definition of Sexual Harassment but does not meet the geographical or personal jurisdictional requirements under Title IX and its implementing regulations. For example, an alleged sexual assault that occurs in an off-campus apartment leased by a student would not satisfy the geographical jurisdiction of Title IX, but that alleged assault would be addressed under this Policy as Sexual Misconduct.

(2) Non-Title IX Sexual/Gender-Based Harassment: Non-Title IX Sexual or gender-based harassment is a form of discrimination that includes verbal, written, or physical behavior, directed at someone, or against a particular group, because of that person's or group's sex, gender identity, actual or perceived sexual orientation, or based on gender stereotypes, when:

    (a) that conduct is unwelcome and meets the following criteria:

        1. Submission to or rejection of the conduct is made either explicitly or implicitly a term or condition of an individual's education, employment, University living environment, or participation in a University activity or program; or

        2. Submission to or rejection of the conduct is used as the basis for, or as a factor in, decisions affecting an individual's education, employment, University living environment, or participation in a University activity or program; or

        3. the conduct has the purpose or effect[9] of creating an intimidating, hostile, or offensive educational, employment, University living, or University activity or program environment(s) for an individual, or

        4. the conduct unreasonably interferes with the educational, employment, or University living, or University activity or program environment(s) of an individual; AND

    (b) the conduct is sufficiently severe or pervasive that it alters the terms, conditions, or privileges of an individual's education, employment, University living environment, or participation in a University activity or program.

Conduct may be verbal or nonverbal, written, or electronic. Sexual or gender-based harassment can occur between any persons, including those the same or opposite sex, and either as single or

---

[9] In a pedagogical setting, such as a classroom, the conduct must have both purpose and effect.

17

repeated incidents. Whether conduct is sufficient to constitute harassment is evaluated under the totality of the circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating, or merely an offensive utterance. These factors are evaluated from both subjective and objective viewpoints, considering not only the effect that the conduct actually had on the person, but also the impact it would likely have had on a reasonable person in the same situation. The conduct must subjectively and objectively meet this definition to be sexual or gender-based harassment under this Policy.

The definition of Non-Title IX Sexual Misconduct applies differently to Wake Forest students, employees, and third-parties.

This definition applies to Wake Forest students from the time a student moves into an on-campus residence or matriculates at Wake Forest, whichever is sooner, and continues until the student is no longer enrolled at Wake Forest. This includes conduct taking place anywhere in the world and is not limited to conduct within Wake Forest's Education Programs or Activities.

This definition applies to Wake Forest employees and non-student third parties only to the extent the conduct giving rise to the complaint is directly related to the University's Education Programs or Activities.

(3) Sexual exploitation. Conduct that is defined as taking non-consensual, unjust, or abusive sexual advantage of another, for one's own advantage or benefit; or to benefit or advantage anyone other than the person being exploited. Sexual exploitation encompasses a wide range of behaviors including, but not limited to:

> (a) inducing incapacitation with the intent to rape or sexually assault another person;
>
> (b) non-consensual video or audio-recording of sexual activity;
>
> (c) allowing others to observe a personal act of consensual sex without knowledge or consent of the partner;
>
> (d) engaging in Peeping Tommery (voyeurism);
>
> (e) knowingly transmitting a sexually transmitted disease, including HIV, to another student;
>
> (f) prostituting another person (i.e. – personally gaining money, privilege, or power from the sexual activities of another person); or
>
> (g) indecent exposure (willfully exposing one's genitals in any public place, and in the presence of another person).

The definition of Sexual Exploitation applies differently to Wake Forest students, employees, and third-parties.

This definition applies to Wake Forest students from the time a student moves into an on-campus residence or matriculates at Wake Forest, whichever is sooner, and continues until

18

the student is no longer enrolled at Wake Forest. This includes conduct taking place anywhere in the world and is not limited to conduct within Wake Forest's Education Programs or Activities.

This definition applies to Wake Forest employees and non-student third parties only to the extent the conduct giving rise to the complaint is directly related to the University's Education Programs or Activities.

**"Supportive Measures"** are non-disciplinary, non-punitive, individualized services offered as appropriate, as reasonably available, and without fee or charge to a Claimant and/or a Respondent before or after the filing of a Formal Complaint or where no Formal Complaint has been filed. Such measures are designed to restore or preserve equal access to Wake Forest's Education Program or Activity without unreasonably burdening the other party, including measures designed to protect the safety of all parties or Wake Forest's educational environment or deter Sexual Harassment and Sexual Misconduct.

Supportive Measures may include, but are not limited to, counseling, extensions of deadlines or other course-related adjustments, modifications of work or class schedules, campus escort services, mutual restrictions on contact between the parties, changes in work or housing locations, leaves of absence, increased security, and monitoring of certain areas of the campus. Wake Forest will maintain as confidential any Supportive Measures provided to a Claimant or a Respondent, to the extent that maintaining such confidentiality would not impair Wake Forest's ability to provide the Supportive Measures. The Title IX Coordinator is responsible for coordinating the effective implementation of Supportive Measures.

19

# SECTION II. TITLE IX SEXUAL HARASSMENT AND NON-TITLE IX SEXUAL MISCONDUCT PRE-HEARING GRIEVANCE PROCEDURES

## A.    APPLICABILITY, COMPLAINT INTAKE, AND OVERARCHING PROVISIONS

### 2A.01  Applicability of Pre-Hearing Grievance Procedures

As noted above, these Pre-Hearing Grievance Procedures apply to allegations of Sexual Harassment in Wake Forest's Education Program or Activity (and to related Retaliation, at the discretion of the Title IX Coordinator) and allegations of Sexual Misconduct. Wake Forest treats Claimants and Respondents equitably by providing remedies to a Claimant where Wake Forest makes a determination of responsibility for Sexual Harassment or Sexual Misconduct against a Respondent under the applicable Hearing Procedures outlined in Sections III, IV and V of this Policy and also by following these Pre-Hearing Grievance Procedures before imposing any disciplinary sanctions against a Respondent for Sexual Harassment or Sexual Misconduct.

### 2A.02  Obligation to Respond and Initial Outreach to Claimant

When Wake Forest has Actual Knowledge of Sexual Harassment (or allegations thereof) against a person in the United States in its Education Program or Activity, Wake Forest is obligated to respond and to follow Title IX's specific requirements, which are addressed and incorporated in the Pre-Hearing Grievance Procedures and Hearing Procedures set forth in this Policy. Wake Forest will also follow these Pre-Hearing Grievance Procedures when Wake Forest has Actual Knowledge of Sexual Misconduct (or allegations thereof).

Promptly upon receiving allegations of Sexual Harassment against a person in the United States in Wake Forest's Education Program or Activity or upon receiving allegations of Sexual Misconduct, the Title IX Coordinator will contact the Claimant to discuss the availability of Supportive Measures with or without the filing of a Formal Complaint and to explain to the Claimant the process for filing a Formal Complaint.

### 2A.03  Filing of a Formal Complaint

As noted in the Definitions section above, a Formal Complaint means a document filed by a Claimant or signed by the Title IX Coordinator alleging Sexual Harassment and/or Sexual Misconduct against a Respondent and requesting that Wake Forest investigate the allegation(s). At the time of filing a Formal Complaint of Sexual Harassment, a Claimant must be participating in or attempting to participate in Wake Forest's Education Program or Activity. A Formal Complaint may be filed with the Title IX Coordinator in person, by mail, or by electronic mail, by using the contact information listed in <u>Exhibit A</u> and the Formal Complaint Form available online <u>at this link</u>. As used in this paragraph, the phrase "document filed by a

Claimant" means a document or electronic submission that contains the Claimant's physical or digital signature or otherwise indicates that the Claimant is the person filing the Formal Complaint.

When the Title IX Coordinator believes that, with or without the Claimant's desire to participate in a grievance process, a non-deliberately indifferent response to the allegations or other applicable law requires an investigation, the Title IX Coordinator has the discretion to initiate the grievance process by signing a Formal Complaint. Where the Title IX Coordinator signs a Formal Complaint, the Title IX Coordinator is not a Claimant or otherwise a party under these Grievance Procedures. Furthermore, initiation of a Formal Complaint by the Title IX Coordinator is not sufficient alone to imply bias or that the Title IX Coordinator is taking a position adverse to the Respondent.

Once a Formal Complaint is initiated, a person who was allegedly harmed will be referred to as a "Claimant," and a person who allegedly caused harm will be referred to as a "Respondent."

## 2A.04  Notice of Allegations

Upon receipt of a Formal Complaint, the Title IX Coordinator will provide the Claimant and any known Respondent written notice of these Grievance Procedures and of the allegations of conduct potentially constituting Sexual Harassment and/or Sexual Misconduct, including sufficient details known at the time and with at least five days to prepare a response before any initial interview. Sufficient details include the identities of the parties involved in the incident, if known, the conduct allegedly constituting Sexual Harassment and/or Sexual Misconduct, and the date and location of the alleged incident, if known. The Title IX Coordinator will also make each party aware of the availability of supportive measures.

The written notice will include a statement that the Respondent is presumed not responsible for the alleged conduct, that the Formal Complaint is presumed to have been filed in good faith, and that a determination regarding responsibility is made at the conclusion of the grievance process. The written notice also will inform the parties that they may have an advisor of their choice, who may be, but is not required to be, an attorney and that at appropriate junctures the parties and their advisors may review and inspect evidence collected during the investigation. The written notice will also advise the parties that they may have a support person of their choosing to support them during the process. Additionally, the written notice will inform the parties of Wake Forest's prohibition on knowingly making false statements or knowingly submitting false information during the grievance process.

If, in the course of an investigation, Wake Forest decides to investigate allegations of Sexual Harassment, Sexual Misconduct, and/or Retaliation involving the Claimant or Respondent that are not included in the original written notice of allegations, Wake Forest will provide notice of the additional allegations to the parties whose identities are known.

## 2A.05  Dismissal

Wake Forest will investigate the allegations in a Formal Complaint; however, Wake Forest will dismiss a Formal Complaint or a portion of the allegations therein if (1) the conduct alleged in the Formal

21

Complaint, even if substantiated, would not constitute Sexual Harassment or Sexual Misconduct; (2) at the time of filing the Formal Complaint of Sexual Harassment the Claimant was not participating in or attempting to participate in Wake Forest's Education Program or Activity; (3) the Sexual Harassment conduct alleged in the Formal Complaint did not occur in Wake Forest's Education Program or Activity; or (4) the Sexual Harassment conduct alleged in the Formal Complaint did not occur against an individual in the United States. Such a dismissal may take place at the conclusion of the investigation or at any time prior to the conclusion of the investigation.

Additionally, Wake Forest may dismiss a Formal Complaint or a portion of the allegations therein if (1) the Claimant notifies the Title IX Coordinator in writing that the Claimant would like to withdraw the Formal Complaint or any allegations therein; (2) the Respondent is no longer enrolled or employed at Wake Forest; or (3) despite efforts to do so, Wake Forest is unable to gather evidence sufficient to reach a determination as to the Formal Complaint or allegations therein.

In the event the Title IX Coordinator determines that dismissal of a Formal Complaint or a portion of the allegations is appropriate, the Title IX Coordinator will promptly notify the parties in writing of the dismissal and the reasons for it. Dismissal does not impair Wake Forest's ability to proceed with any appropriate investigatory or disciplinary actions under this Policy or another Wake Forest policy or procedure and/or to provide Supportive Measures to the parties.

Within five days of the issuance of the written notice of the dismissal, either party may appeal a decision to dismiss a Formal Complaint or a portion of the allegations by submitting a written appeal to the Title IX Coordinator on the following grounds: (1) procedural irregularity that affected the decision to dismiss; (2) new evidence that was not reasonably available at the time of dismissal and that could affect the outcome of the matter; or (3) the Title IX Coordinator or other participant in the dismissal having a conflict of interest or bias for or against Claimants or Respondents generally or the individual Claimant or Respondent that affected the decision to dismiss.

The Title IX Coordinator will promptly notify the other party of the appeal, and the non-appealing party may submit a response to the appeal within three days of notification of the appeal

The Title IX Coordinator will appoint an appeal officer and will contemporaneously share the appeal officer's name and contact information with the Claimant and the Respondent.

Within two days of such appointment, the Claimant, or the Respondent may identify to the Title IX Coordinator in writing alleged conflicts of interest or bias on the part of the appeal officer. The Title IX Coordinator will consider such statements and will promptly assign a different appeal officer if the Title IX Coordinator determines that a material conflict of interest or material bias exists.

The Title IX Coordinator will forward the Formal Complaint and any documents upon which the dismissal decision was based, as well as the appeal and any response to the appeal to the appeal officer.

22

Within seven days of receipt of those materials, the appeal officer will determine whether any of the grounds for appeal warrant overturning or modifying the dismissal and will issue a written decision to the parties. The decision by the appeal officer is final.

## 2A.06  Advisors and Support Persons

The Claimant and the Respondent may be accompanied to any meeting or proceeding under this Policy by the advisor of their choice, who may be, but is not required to be, an attorney. Wake Forest will not limit the choice or presence of the advisor for either the Claimant or the Respondent. Advisors, however, are not allowed to disrupt any meeting or proceeding or to speak on behalf of the Claimant or the Respondent, with the exception of cross-examination during any hearing conducted under Section III of this Policy, which must be conducted by an advisor and never personally by the Claimant or the Respondent.

Parties must provide the name and contact of their advisor to the Title IX Coordinator in writing as soon as reasonably possible and must provide updated information if their advisor changes. All advisors will be required to assent to Wake Forest's Expectations for Advisors.

If a party does not have an advisor present at a hearing conducted under Section III of this Policy, Wake Forest will provide, without charge to that party, an advisor of Wake Forest's choice who may be, but is not required to be, an attorney, to conduct cross-examination on behalf of that party. In such circumstances, the hearing may be postponed until Wake Forest can provide an advisor to be available at the hearing.

The Claimant and the Respondent may not be accompanied by more than one advisor during meetings or proceedings. The Claimant and Respondent may be accompanied by a support person of their choice during meetings, but such support person will not be permitted in a hearing conducted under Section III of this Policy. A support person is permitted at hearings conducted under Section IV of this Policy. The support person will not be allowed to disrupt any meetings or procedures and may not speak on behalf of a party.

## 2A.07  Student Amnesty

Wake Forest considers the reporting and adjudication of Sexual Harassment and Sexual Misconduct to be of paramount importance. Wake Forest does not condone underage drinking or the use of illegal drugs; however, Wake Forest will extend amnesty to students who are Claimants, Respondents, witnesses, and others involved in a grievance process from punitive sanctioning for illegal use of drugs and/or alcohol when evidence of such use is discovered or submitted in the course of a grievance process. Similarly, Wake Forest may, in its discretion, provide amnesty for other conduct code violations that are discovered in the course of a grievance process. Notwithstanding the provision of amnesty for students as described in this paragraph, Wake Forest reserves the right to refer Complainants, Respondents, witnesses, and others involved in a grievance process for substance abuse assessment, education, and/or treatment.

23

### 2A.08  Timing

Wake Forest will make reasonable effort to ensure that the investigation and resolution of a Formal Complaint occurs in as timely and efficient a manner as possible. The timelines set forth in these Grievance Procedures are guidelines and may be altered for good cause with written notice to the Claimant and the Respondent of any delay or extension and the reasons for the action. Good cause may include, but is not limited to, considerations such as the absence of a party, a party's advisor, or a witness; concurrent law enforcement activity; natural disasters, pandemic restrictions, and similar occurrences; or the need for language assistance or accommodation of disabilities.

Wake Forest will strive to complete its investigation and resolution of a Formal Complaint (not including an appeal, if applicable) within 120 days of the receipt of the Formal Complaint, absent extenuating circumstances. Hearings generally will take place within 30 days of the conclusion of the investigation. Within fourteen days of the conclusion of the hearing, both the Claimant and the Respondent will receive a final outcome letter.

Either party may request an extension of any deadline by providing the Title IX Coordinator or Investigator with a written request for an extension that includes reference to the duration of the proposed extension and the basis for the request. The Title IX Coordinator will review the request and will make a determination with regard to the request within five days.

### 2A.09  Written Notice of Meetings

Wake Forest will provide, to a party whose participation is invited or expected, written notice of the date, time, location, participants, and purpose of all hearings, investigative interviews, or other meetings with sufficient time for the party to prepare to participate.

### 2A.10  Effect of Corollary Criminal Investigation

Wake Forest's investigation may be delayed temporarily while criminal investigators are gathering evidence. In the event of such a delay, Wake Forest will implement any appropriate Supportive Measures and will evaluate the need for other actions necessary to assist or protect the Claimant, the Respondent, and/or the Wake Forest community.

Neither the results of a criminal investigation nor the decision of law enforcement to investigate or decline to investigate a matter is determinative of whether a violation of this Policy has occurred.

### 2A.11  Emergency Removal and Administrative Leave

Wake Forest may remove a Respondent from Wake Forest's Education Program and/or Activity on an emergency basis, provided that Wake Forest first undertakes an individualized safety and risk analysis, determines that an immediate threat to the physical health or safety of any student or other individual arising from the allegations of Sexual Harassment justifies removal, provides the Respondent with notice

24

and an opportunity to challenge the decision immediately following the removal, and does so in accordance with Section 504 of the Rehabilitation Act of 1973, and the Americans with Disabilities Act, as applicable.

Additionally, Wake Forest may place a non-student employee Respondent on administrative leave during the pendency of Wake Forest's response to allegations of Sexual Harassment provided that it does so in accordance with Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act.

## 2A.12   Effect of Respondent Withdrawal, Graduation, or Resignation

At the discretion of Wake Forest, a Respondent who withdraws or resigns from Wake Forest during the pendency of a grievance process under this Policy may be barred from Wake Forest property and Wake Forest activities and events and may be ineligible for re-enrollment or to be re-hired. If a Respondent completes all requirements to graduate during the grievance process, Wake Forest may hold the Respondent's diploma until full resolution of the Formal Complaint.

## 2A.13   Privacy and Disclosure

Except as may be permitted by FERPA or as required by law or to carry out any investigation or resolution under this Policy, Wake Forest will keep private the identity of any individual who has made a report or complaint of Sexual Harassment or Sexual Misconduct (including any individual who has made a report or filed a Formal Complaint), any Claimant, any Respondent, and any witness.

Wake Forest may report alleged Sexual Harassment and/or Sexual Misconduct to local law enforcement if warranted by the nature of the allegations at issue, and Wake Forest administrators will share information regarding alleged Sexual Harassment and/or Sexual Misconduct, as appropriate and necessary, in order to address and resolve the allegation(s) at issue, prevent the recurrence of similar Sexual Harassment and/or Sexual Misconduct, and address the effects of the Sexual Harassment and/or Sexual Misconduct. Additionally, information regarding alleged Sexual Harassment and/or Sexual Misconduct may be used as a statistical, anonymous report for data collection purposes under the Clery Act.

To comply with FERPA, Title IX, and other applicable laws and to provide an orderly process for the presentation and consideration of relevant information without undue intimidation or pressure, grievance processes carried out under this Policy are not open to the general public. Accordingly, documents prepared in connection with such processes; documents, statements, or other information introduced in interviews, meetings, and proceedings; and the final outcome letter may not be disclosed outside of those processes except as may be required or authorized by law.

As permitted by and subject to the limitations of FERPA, Wake Forest reserves the right to notify parent(s) or guardian(s) of a student Respondent of the outcome of any investigation involving that Respondent, redacting names of any other students who do not consent to the disclosure of their information. At the written request of a party, Wake Forest may include a party's advisor on

25

communications and share access to documents, including the investigation report. This access is subject to the advisor's acknowledgment and agreement to maintain the confidentiality of the documents. While Wake Forest strongly encourages parties to maintain privacy in connection with a grievance process, Wake Forest does not prohibit parties from discussing the allegations under investigation or in any way inhibit the parties from gathering or presenting Relevant Evidence. In addition, Wake Forest's policy does not prohibit disclosure of the final outcome letter by either the Claimant or the Respondent. Parties are cautioned, however, that they remain subject to this Policy's prohibition against Retaliation.

## 2A.14  Conflicts of Interest, Bias, and Training

Wake Forest will ensure that any individual designated by Wake Forest as a Title IX Coordinator, investigator, decision-maker, sanctions officer, appellate officer, or adaptive resolution facilitator under these Grievance Procedures does not have a conflict of interest or bias for or against Claimants or Respondents generally or an individual Claimant or Respondent.

Wake Forest also ensures that Title IX Coordinators, investigators, decision-makers, sanctions officers, appellate officers, and adaptive resolution facilitators receive training, as applicable, on the definition of Sexual Harassment and Sexual Misconduct; the scope of Wake Forest's Education Program or Activity; how to conduct an investigation and grievance process, including hearings, appeals, and adaptive resolution processes; and how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interest, and bias.

Wake Forest further ensures that decision-makers receive training on issues of relevance of questions and evidence, including when questions and evidence about the Claimant's sexual predisposition or prior sexual behavior are not relevant, and that investigators receive training on issues of relevance to create an investigative report that fairly summarizes Relevant Evidence. Additionally, Wake Forest ensures that decision-makers receive training on any technology to be used at live hearings.

Materials used to train Title IX Coordinators, investigators, decision-makers, sanctions officers, appellate officers, and adaptive resolution facilitators will not rely on sex or gender stereotypes and will promote impartial investigations and adjudications of Formal Complaints of Sexual Harassment and/or Sexual Misconduct.

## 2A.15  Burden of Proof

At all times, the burden of proof and the burden of gathering evidence sufficient to reach a determination regarding responsibility rest on Wake Forest, not on either of the parties.

## 2A.16  Presumption of No Responsibility until Determination

Respondents are presumed to be not responsible for alleged Sexual Harassment until Wake Forest makes a determination regarding responsibility pursuant to these Grievance Procedures.

26

## 2A.17  Objective Evaluation of All Relevant Evidence; Credibility Determinations

The investigators and decision-makers under these Grievance Procedures will objectively evaluate all Relevant Evidence, including both inculpatory and exculpatory evidence, and will not make any credibility determinations based on a person's status as a Claimant, Respondent, or witness.

## 2A.18  Academic Freedom

Wake Forest affirms its commitment to academic freedom but notes that academic freedom does not allow any form of Sexual Harassment or Sexual Misconduct. Wake Forest recognizes that an essential function of education is a probing of opinions and an exploration of ideas, some of which, because they are controversial, may cause students and others discomfort. This discomfort, as a product of free academic inquiry within a faculty member's area(s) of expertise, shall in no way be considered or construed to constitute Sexual Harassment or Sexual Misconduct. Academic inquiry may involve teaching, research and extramural speech. Furthermore, nothing in this document shall be interpreted to prohibit bona fide academic requirements for a specific Wake Forest program or activity. When investigating complaints that a party, the Title IX Coordinator, or the investigator(s) believes may involve issues of academic freedom, the Title IX Coordinator or investigator(s) will consult the two faculty members of the Sexual Misconduct Review Board and a faculty member designated by the Committee on Academic Freedom and Responsibility with respect to contemporary academic practices and standards.

## 2A.19  Documentation

Wake Forest will retain documentation (including but not limited to any Formal Complaint, notifications, recording or transcripts of interviews, investigative report, written findings of fact, petitions for appeal, notifications of decisions (including the final outcome letter), audio or audio-visual recordings of hearings, and written communication with the Claimant and Respondent), for no less than seven years.

## 2A.20  Consolidation of Formal Complaints

Wake Forest may consolidate Formal Complaints as to allegations of Sexual Harassment and/or Sexual Misconduct against more than one Respondent, by more than one Claimant against one or more Respondents, or by one party against the other party where the allegations of Sexual Harassment and/or Sexual Misconduct arise out of the same facts or circumstances. Where a grievance process involves more than one Claimant or more than one Respondent, references in these Grievance Procedures to the singular "party," "Claimant," or "Respondent" include the plural, as applicable.

## 2A.21  Complex Complaints

When a Formal Complaint is filed containing allegations of both Sexual Harassment and Sexual Misconduct, or allegations of both Sexual Harassment and of other forms of conduct prohibited by other

27

Doe Decl. Ex. A  p. 28

Wake Forest policies, including but not limited to student codes of conduct or employee policies, all allegations in the Formal Complaint will be addressed in accordance with these Pre-Hearing Grievance Procedures and the Hearing Procedures set forth in Section III of this Policy.

### 2A.22  Individuals with Disabilities

Wake Forest will make arrangements to ensure that individuals with disabilities are provided reasonable accommodations, to the extent necessary and available, to participate in Wake Forest's grievance processes. Student requests for accommodation must be made to the Learning Assistance Center-Disability Services. All other requests for accommodation must be made to the Human Resources Department.

### B.          THE INVESTIGATION

### 2B.01  Appointment of Investigators and Challenging of the Same

Unless a Formal Complaint is dismissed or the parties elect to participate in an Adaptive Resolution Process as set forth in Section VI of this Policy, the Title IX Coordinator will promptly appoint one or more investigators. These investigators may be Wake Forest employees (and may be the Title IX Coordinator), non-employees, or a combination of the two. The Title IX Coordinator will contemporaneously share the name(s) and contact information with the Claimant and Respondent and also will forward a copy of the Formal Complaint to the investigator(s).

Within two days of such appointment, the Claimant or the Respondent may identify to the Title IX Coordinator in writing any alleged conflicts of interest or bias on the part of the assigned investigator(s). The Title IX Coordinator will consider such statements and will promptly assign a different investigator(s) if the Title IX Coordinator determines that a material conflict of interest or material bias exists. If the Title IX Coordinator is the investigator, the Claimant or Respondent may identify to the Vice President for Campus Life or the Associate Provost for Academic Initiatives in writing any alleged conflicts of interest or bias on the part of the assigned investigators(s). The Vice President for Campus Life or the Associate Provost will consider such statements and will promptly assign a different investigator if the Vice President for Campus Life or the Associate Provost determine that a material conflict of interest or material bias exists.

### 2B.02  The Investigators' Activities

Upon receipt of the Formal Complaint, the investigator(s) will promptly begin their investigation, taking such steps as interviewing the Claimant, the Respondent, and witnesses (including expert witnesses, where applicable); summarizing such interviews in writing (or, alternatively, providing access to audio recordings or transcripts of such interviews); collecting and reviewing relevant documents; visiting, inspecting, and taking or reviewing photographs of relevant sites; and collecting and reviewing other Relevant Evidence.

28

## 2B.03   The Investigative Report and Evidence Review

The investigator(s) will prepare a written investigative report that fairly summarizes Relevant Evidence and includes items such as the Formal Complaint, written statements of position, summaries or transcripts of all interviews conducted, photographs, descriptions of Relevant Evidence, and summaries or copies of relevant electronic records.

Prior to the completion of the investigative report, the investigator(s) will send or make available to each party and the party's advisor, if any, an electronic or hard copy of any evidence obtained during the investigation that is directly related to the allegations raised in the Formal Complaint, including (1) any evidence upon which Wake Forest does not intend to rely in reaching a determination regarding responsibility; and (2) both inculpatory and exculpatory evidence.

The parties have ten days from the time that the evidence is provided to submit to the investigator(s) a written response to the evidence. In the response, the parties may address the relevancy of any evidence that the parties believe should be included in or excluded from the investigative report and may also address any further investigation activities or questions that they believe are necessary. If a party wishes to submit additional evidence at this stage, they should explain how the evidence is relevant and why it was not previously provided.

The investigator(s) will review and consider the parties' written submissions and may conduct additional investigative activities as appropriate prior to finalizing the investigative report. In the event the additional investigative activities result in new evidence, the investigator(s) will make available this new evidence to each party and the party's advisor in accordance with the process described above. The parties will have ten days from the time that the new evidence is provided to submit to the investigator(s) a written response to the evidence. The need for additional investigative activities may result in a delay or extension to the timelines set forth in these Grievance Procedures.

At least ten days prior to the hearing, the investigators will send an electronic or hard copy of the investigative report to each party and the party's advisor, if any. Any response a party wishes to make to the investigative report may be included in that party's pre-hearing statement, which is discussed more below in Section 3A.05.

Nothing in this Policy restricts the ability of either party to discuss the allegations under investigation or to gather, preserve, and/or present Relevant Evidence.

## 2B.04   Submission of Evidence; Expert Witnesses

Any evidence that the parties wish for the hearing officer to consider should be presented to the investigators as early as possible during the investigation process. Evidence that is not submitted in a timely manner and prior to finalization of the investigative report may be excluded from the hearing at the discretion of the hearing officer.

29

*Updated on 3/8/22*

Similarly, all witnesses should be identified to the investigators as early as possible during the investigation. The hearing officer generally will not call or consider written statements from witnesses who were not identified to investigators and interviewed during the investigation. However, in their discretion and for good cause, the hearing officer may choose to consider information from witnesses who were not interviewed during the investigation.

Any party who wishes to present testimony from an expert witness[10] should identify that witness by providing the witness's name, contact information and a summary of (1) the witness's qualifications to offer expert testimony; and (2) any opinions the witness expects to offer related to the allegations or evidence. Any evidence upon which the witness relies must be provided to the investigators and will be made available to the other party and their advisor, as well as to any expert witness the other party has identified. This information must be provided as early as possible in the investigation and in no event later than finalization of the investigative report. The parties must make any expert witnesses available to be interviewed by investigators and to testify at the hearing. If an expert witness is not available to provide live testimony at the hearing, the hearing officer must disregard any information submitted by that expert.

## 2B.05   Treatment Records

Wake Forest will not access, consider, disclose, or otherwise use in a grievance process any party's treatment records that are maintained by a physician, psychiatrist, psychologist or other recognized professional or paraprofessional acting in their professional/paraprofessional capacity unless the party provides voluntary, written consent.

---

[10] An expert witness is a person who has the special skills, knowledge, and/or training to provide opinions regarding a particular (and usually technical) subject matter.

30

## SECTION III.   TITLE IX SEXUAL HARASSMENT HEARING PROCEDURES

### 3A.01  Referral for Adaptive Resolution

If, at any time prior to a responsibility determination by the hearing officer, the Title IX Coordinator determines that the matter is appropriate for Adaptive Resolution, the Title IX Coordinator will ask both parties if they wish to suspend the formal resolution process and engage in an Adaptive Resolution process to resolve the allegations without a hearing.

If both parties wish to engage in the Adaptive Resolution process and if the Claimant and the Respondent agree in writing to a resolution through the Adaptive Resolution process, then the Formal Complaint will be resolved without completion of the hearing and without any further rights of appeal by either party.

If the parties are unable to agree to a resolution through the Adaptive Resolution process, the Title IX Coordinator will continue the formal resolution process.

### 3A.02  The Formal Resolution Process

Unless a Formal Complaint is dismissed or the parties elect to participate in the Adaptive Resolution process pursuant to Section VI below, following the investigation the appointed hearing officer will conduct a hearing in which they may question the Claimant, the Respondent, and any witnesses whose testimony the hearing officer deems relevant. During the hearing, the hearing officer and the parties may also question the investigator(s) about the investigative report.

### 3A.03  Appointment of the Hearing Officer and Challenging of the Same

The Title IX Coordinator will appoint a hearing officer, who will administer the hearing, serve as the decision-maker regarding responsibility, and (as applicable) recommend sanctions. The hearing officer may be a Wake Forest employee or non-employee. The Title IX Coordinator will contemporaneously share the hearing officer's name and contact information with the Claimant and the Respondent. The Title IX Coordinator will provide to the hearing officer the Formal Complaint, all evidence directly related to the allegations, the parties' written responses to the evidence, and the investigative report.

Within two days of such appointment, the Claimant or the Respondent may identify to the Title IX Coordinator in writing any alleged conflicts of interest or bias on the part of the hearing officer. The Title IX Coordinator will carefully consider such statements and will promptly assign a different hearing officer if the Title IX Coordinator determines that a material conflict of interest or material bias exists.

31

Doe Decl. Ex. A   p. 32

## 3A.04   Notice of the Hearing

Promptly after the appointment of the hearing officer and no less than seven days prior to the hearing, the hearing officer will provide concurrent written notice to the Claimant and the Respondent setting forth the date, time, and location of the hearing. Any modifications to the hearing date, time, or location will be provided in writing to both parties prior to the date of the hearing.

## 3A.05   Pre-Hearing Submissions

Each party may submit a written statement to the hearing officer that includes any response the party wishes to make to the investigative report. Each party's pre-hearing statement must be submitted at least five days prior to the hearing. The hearing officer will share the statement with the other party, who may submit a response within two days.

## 3A.06   Failure to Appear

If any party or witness fails to appear at the hearing after having been provided proper notice of the hearing as set forth above, then absent extenuating circumstances as determined by the hearing officer, the hearing officer will proceed with the hearing and issuance of their responsibility determination and, as applicable, sanction recommendation. Wake Forest will provide an advisor to any party who attends the hearing unaccompanied.

## 3A.07   Evidentiary Matters

A Title IX hearing does not take place within a court of law and is not bound by formal rules of evidence that apply to court proceedings.

Evidence of and questions about the Claimant's sexual predisposition or prior sexual behavior are not relevant and will not be permitted at the hearing, with the following exceptions: (1) if the questions and evidence about the Claimant's prior sexual behavior are offered to prove that someone other than the Respondent committed the conduct alleged by the Claimant; or (2) if the questions and evidence concern specific incidents of the Claimant's prior sexual behavior with respect to the Respondent and are offered in an effort to prove Consent.

Evidence regarding the Respondent's past sexual activity (regardless of whether the Respondent was formally investigated or found responsible for such conduct) may be permitted to show that the Respondent has engaged in a pattern of behavior similar to the alleged Sexual Harassment at issue before the hearing officer, provided that the Respondent has not been found "not responsible" by Wake Forest in a proceeding related to such conduct.

The hearing officer may also exclude evidence if the hearing officer determines that the proffered evidence's probative value is outweighed by needlessly presenting cumulative evidence or that a question is posed solely to harass a witness or the other party.

32

As explained in Section 2B.05, Wake Forest will not access, consider, disclose, or otherwise use in a grievance process any party's treatment records that are maintained by a physician, psychiatrist, psychologist or other recognized professional or paraprofessional acting in their professional/paraprofessional capacity unless the party provides voluntary, written consent.

Wake Forest will make the evidence that the investigators provided to the parties for their review and inspection prior to finalization of the investigative report available at the hearing to give each party equal opportunity to refer to such evidence during the hearing, including for purposes of cross-examination.

### 3A.08  Hearing Format and Questioning of Witnesses and Parties

The hearing will be conducted with parties in separate rooms, using technology to ensure that each party can see and hear any party or witness answering questions. At the discretion of the hearing officer, the hearing may be conducted partially or entirely remotely, with any or all participants participating virtually.

The Claimant and the Respondent will have equal opportunity to address the hearing officer with an opening statement, if desired, and both the hearing officer and the parties' advisors will have the opportunity to question the other party and any witnesses, including investigators and expert witnesses. Following any opening statements, the hearing officer will first ask any questions of each party and each witness through direct examination. After the hearing officer has completed direct examination, the advisor for the Claimant will have an opportunity to conduct a cross-examination of the Respondent, and afterwards, the advisor for the Respondent will have the opportunity to conduct cross-examination of the Claimant. The hearing officer will determine the order of witnesses and questioning of the witnesses by the advisors for the parties. Any questions that a party has for a witness or the other party must be posed by the party's advisor. A party's advisor cannot question the party for whom they serve as advisor.

Before a party or witness answers a cross-examination question, the hearing officer will determine whether the question is Relevant and allowed under this Policy. The hearing officer will explain any decision to exclude a question.

Members of the Wake Forest community are expected to provide truthful testimony, and any member of the Wake Forest community who knowingly provides false information or testimony during this process is subject to discipline.

### 3A.09  Unavailability or Refusal to Testify or Submit to Cross-Examination

The Respondent and/or the Claimant may choose not to testify at the hearing; however, the exercise of that option will not preclude the hearing officer from making a responsibility determination. If a party or witness does not submit to cross-examination at the hearing, in reaching a responsibility determination, the hearing officer may afford relevant statements made by that party or witness the weight that the hearing officer deems appropriate, taking into consideration factors such as the nature of the statement,

33

Updated on 3/8/22

the context in which the party or witness made the statement, and any other factor the hearing officer deems appropriate.

The hearing officer will not draw an inference regarding responsibility based solely on a party's or witness' absence from the hearing or refusal to testify or submit to cross-examination.

## 3A.10   Recording

Wake Forest will create an audio or audio-visual recording of the hearing. This recording will be the only recording permitted of the proceedings and will be the property of Wake Forest. The parties and the appeal officer may use the recording as part of the appeal process. Reasonable care will be taken to ensure a quality recording; however, technological problems that result in no recording or in an inaudible one will not affect the validity of the outcome of a hearing.

## 3A.11   The Determination of the Hearing Officer Regarding Responsibility

Following the hearing, the hearing officer will determine whether the evidence establishes that it is more likely than not[11] that the Respondent committed Sexual Harassment or, in the context of a Complex Case, otherwise violated this Policy or other Wake Forest polices. The hearing officer will render a finding of "Responsible" or "Not Responsible" and will provide the rationale for the decision. If the Respondent is found "Responsible," the hearing officer will specify the specific type(s) of conduct for which the Respondent is found "Responsible" (for example, Sexual Assault, Stalking, etc.). When feasible, the hearing officer will orally communicate the finding of "Responsible" or "Not Responsible" to the parties on the day of or day following the hearing. Additional information regarding the decision, including the rationale, will be communicated to the parties in the final outcome letter (as described below).

## 3A.12   Determination Regarding Sanctions

If the hearing officer determines that the Respondent is "Responsible," the hearing officer will provide findings of fact in support of the hearing officer's determination and the rationale for the determination to the Title IX Coordinator. The Title IX Coordinator will then provide this information to the appropriate Sanctions Officer, as delineated below, and the Sanctions Officer will determine the sanction(s) to be imposed.

In determining sanctions, the Sanctions Officer will consider: (a) the nature and severity of the misconduct; (b) whether a sanction will bring an end to, prevent a recurrence of, or remedy the effects of the Sexual Harassment; (c) the impact of separating a student from their education; and (d) any prior disciplinary history of a Respondent. In addition, the Sanctions Officer may consider aggravating or mitigating factors. The appropriate sanctions for Sexual Assault generally will include at a minimum a period of separation from Wake Forest. The Sanctions Officer will also consult with the Title IX Coordinator regarding Wake Forest's history of sanctions in similar cases.

---

[11] In other words, the standard of proof will be the preponderance of the evidence standard.

Sanctions for Respondents who are employees may include, but are not limited to, a written warning, withholding a promotion or pay increase, reassigning employment, terminating employment (including loss of tenure), temporary suspension without pay, compensation adjustments, completion of an intervention or training program, and/or completion of violence risk assessment.

Sanctions for Respondents who are students may include, but are not limited to, expulsion or suspension from Wake Forest, disciplinary probation, social restrictions, parental notification, education sanctions (such as community service, reflection paper(s), and/or fines) expulsion or suspension from University housing, suspension or revocation of admission, and/or withholding or revocation of a degree(s).

The appropriate Sanctions Officer is determined by the Respondent's status:

| Respondent Status | Sanctions Officer |
|---|---|
| Student | Dean of the Student's College or School or designee |
| Faculty Member | Dean of the Faculty Member's College or School or designee |
| Staff Member | Chief Human Resources Officer or designee |

The Sanctions Officer will forward their sanctions determination to the Title IX Coordinator, who will share it with the hearing officer for inclusion in the final outcome letter, as described in Section 3A.14.

## 3A.13  Implementation of Sanctions

Sanctions are effective immediately upon issuance of the final outcome letter described below. However, if necessary to protect the welfare of the Claimant, Respondent, or the Wake Forest community, the Sanctions Officer may recommend and/or the Title IX Coordinator may determine that any sanctions are effective at any time after the conclusion of the hearing and continue in effect until the issuance of the final outcome letter.

## 3A.14  Final Outcome Letter

Within 21 days after the hearing, the hearing officer will issue a final outcome letter through the Title IX Coordinator to the Respondent and Claimant simultaneously.

The final outcome letter will (1) name the Respondent; (2) identify the allegations potentially constituting Sexual Harassment; (3) describe procedural steps taken from the filing of the Formal Claimant through the determination; (4) provide findings of fact in support of the hearing officer's determination; and (5) provide a statement of rationale for the result as to each allegation, including the responsibility determination and any sanctions.

35

*Updated on 3/8/22*

### 3A.15  Appeals

The Claimant or the Respondent may appeal the decision of the hearing officer regarding responsibility and/or the sanction(s) imposed on the Respondent.

The following are the only permissible grounds for an appeal of the hearing officer's responsibility determination: (1) procedural irregularity that affected the outcome; (2) new evidence that was not reasonably available at the time of the determination and that could affect the outcome; and (3) the Title IX Coordinator, an investigator, or the hearing or sanctions officers had a conflict of interest or bias that affected the outcome.

Sanctions may only be appealed on the ground that the severity is incommensurate to the gravity of the Sexual Harassment for which the Respondent was found responsible.

Appeals must be submitted in writing to the Title IX Coordinator within five days from the date of the final outcome letter. The Title IX Coordinator will promptly inform the other party of the filing of the appeal. The other party will have three days from such notification to submit a written response to the appeal.

### 3A.16  Appointment of the Appeal Officer and Challenging of the Same

Upon receipt of an appeal, the Title IX Coordinator will appoint an appeal officer.

Within two days of such appointment, the Claimant or the Respondent may identify to the Title IX Coordinator in writing alleged conflicts of interest or bias posed by assigning that appeal officer. The Title IX Coordinator will carefully consider such statements and will promptly assign a different appeal officer if the Title IX Coordinator determines that a material conflict of interest or material bias exists.

### 3A.17  Appellate Review

The Title IX Coordinator will share the Formal Complaint, the investigative report, the hearing recording, all statements introduced at the hearing, any other evidence considered by the hearing officer, the hearing officer's written findings, and the written appeal submissions with the appeal officer. In addition, if an appeal raises procedural issues, the Title IX Coordinator may provide the appeal officer additional information relevant to those issues.

Within 15 days of the receipt of the appeal, the appeal officer will determine (a) that the decision of the hearing officer should stand; or (b) that the decision of the hearing officer should be overturned and will issue a written explanation of that result and the rationale behind it.

In the event that the appeal officer determines that the decision of the hearing officer should be overturned, the appeal officer will specify, after consultation with the Title IX Coordinator and other Wake Forest administrators as necessary, the appropriate steps to be taken to come to a final resolution

36

of the Formal Complaint (which may include another hearing before the same hearing officer or a different one).

37

*Updated on 3/8/22*

# SECTION IV.  NON-TITLE IX SEXUAL MISCONDUCT HEARING GRIEVANCE PROCEDURES FOR STUDENT-RESPONDENTS

## 4A.01   Referral for Adaptive Resolution

If, at any time prior to a responsibility determination by the hearing officer, the Title IX Coordinator determines that the matter is appropriate for Adaptive Resolution, the Title IX Coordinator will ask both parties if they wish to suspend the formal resolution process and engage in an Adaptive Resolution process to resolve the allegations without a hearing.

If both parties wish to engage in the Adaptive Resolution process and if the Claimant and the Respondent agree in writing to a resolution through the Adaptive Resolution process, then the Formal Complaint will be resolved without completion of the hearing and without any further rights of appeal by either party.

If the parties are unable to agree to a resolution through the Adaptive Resolution process, the Title IX Coordinator will continue the formal resolution process.

## 4A.02   Hearing Board

Wake Forest's Sexual Misconduct Hearing Board is composed of faculty and staff who have received training as described in Section 2A.14 of this Policy.

When a request for a Sexual Misconduct Hearing is made, the Title IX Coordinator, or designated investigator, will select a Chairperson in addition to a three-member Hearing Panel from the Sexual Misconduct Hearing Board to determine whether the Respondent is responsible for Sexual Misconduct that is prohibited by this Policy.

## 4A. 03  Student Sexual Misconduct Hearing Process

Unless a Formal Complaint is dismissed or the parties elect to participate in the Adaptive Resolution process pursuant to Section VI below, following the investigation the hearing panel will conduct a hearing in accordance with this process.

> 4A.03(i) Arrangements for the Hearing. Arrangements may be made for the Claimant and/or the Respondent who do not wish to be in the hearing room with the opposing party at the same time. This accommodation may include audio conferencing or video conferencing. All accommodation requests must be made to the Title IX Coordinator at least three (3) calendar days in advance of the hearing. A hearing may also be held remotely at the discretion of the Title IX Coordinator or the Chairperson

*Updated on 3/8/22*

4A.03(ii) Role of Advisors and Support Persons. Claimants and Respondents may each have one advisor and one support person of their choosing at the hearing, but the roles of the advisor and the support person are strictly limited to providing advice and/or support to the Claimant and the Respondent. Advisors and support persons are prohibited from directly asking questions, arguing, or presenting information or evidence during the hearing. Advisors and support persons may be removed from the hearing at the direction and at the discretion of the Chairperson if the advisor and/or support person(s) disrupt the hearing.

4A.03(iii) Investigation Summary: The investigator assigned to the complaint will provide a brief summary of the allegations. Following the summary, the Hearing Panel may ask questions to the investigator. Claimant and Respondent may submit questions to the Chairperson in writing, for the Hearing Panel to then ask the investigator, which the Chairperson may choose to rephrase or omit.

4A.03(iv) Claimant's Information: The Claimant has the option, but is not required, to provide a brief verbal or written opening statement setting forth the charges alleged. If the opening statement is written, the Hearing Chairperson may, in its discretion, read it out loud upon request by the Claimant. Following an opening statement, the Claimant may present evidence by being available for questioning by the Hearing Panel; may request the Hearing Panel to call witnesses; and may submit questions in writing to the Chairperson for the Hearing Panel to ask, which the Chairperson may choose to rephrase or omit.

Once the Hearing Panel has completed its questioning, the Respondent may submit written questions to the Chairperson to consider and if deemed relevant and not otherwise redundant, submit to the Hearing Panel.

4A.03(v) Respondent's Information: The Respondent has the option, but is not required, to provide a brief verbal or written opening statement setting forth Respondent's reply to the charges alleged. If the opening statement is written, the Hearing Chairperson may read it out loud upon request of the Respondent. No questions may be asked during the opening statements. Following the opening statement, the Respondent may present evidence by being available for questioning by the Hearing Panel; may request the Hearing Panel to call his/her witnesses; and may submit questions in writing to the Chairperson for the Hearing Panel to ask, which the Chairperson may choose to rephrase or omit.

Once the Hearing Panel has completed its questioning, the Claimant may submit written questions to the Chairperson to consider and, if deemed relevant and not otherwise redundant, submit to the Hearing Panel.

While both parties may have already provided the Chairperson with questions to be asked by the Hearing Panel, if either party would like additional questions asked, they must be submitted in writing and provided to the Chairperson during the hearing.

39

4A.03(vi) Submission of Questions to the Hearing Panel. As stated above, prior to and during the hearing, the Claimant and the Respondent may submit questions to the Chairperson to be asked of each other and the witnesses testifying before the hearing panel. The Claimant and the Respondent are prohibited from directly asking questions. This prohibition extends to advisors and support persons of Complainants and Respondents. The Hearing Chairperson will make decisions regarding Relevant Evidence as explained below, and has sole discretion to whether questions may be asked in full, in part, or omitted entirely.

4A.03(vii) Determinations Regarding Relevant Evidence.  As part of a hearing, the Chairperson of the Hearing Panel will make decisions regarding Relevant Evidence.

4A.03(iv) Deliberations: Once the statements have been completed, the parties will be dismissed, and the Hearing Panel will begin its deliberations. The Hearing Chairperson is a non-voting facilitator of the Hearing Panel's deliberations. The Hearing Panel will evaluate the evidence and decide, based on a preponderance of the evidence, whether the Respondent is responsible for Sexual Misconduct.

"Preponderance of the evidence standard" means that the Respondent student will be found responsible if, based upon the entirety of the evidence presented during the hearing, it is determined that the Respondent student "more likely than not" committed the offense in question. A decision is reached by a majority of the Hearing Panel.

## 4A. 04 Sanctions

If there is a finding of responsibility, the Hearing Panel will, in consultation with the Dean of Students in the College or relevant School or their respective designee, determine the sanctions to be imposed. Sanctions for a finding of responsibility depend on the nature and the gravity of the Sexual Misconduct. Sanctions may include, but are not limited to, expulsion or suspension from Wake Forest, disciplinary probation, social restrictions, parental notification, education sanctions (such as community service, reflection paper(s), and/or fines) expulsion or suspension from campus housing, suspension or revocation of admission, and/or withholding or revocation of a degree(s). Sanctions imposed by the Hearing Panel will remain in effect pending the outcome of any appeal process.

## 4A. 05 Determination Letter

Within fourteen days after the hearing, the Hearing Chairperson will issue a determination letter through the Title IX Coordinator to the Respondent and Claimant simultaneously. The determination letter will (1) name the Respondent; (2) identify the allegations potentially constituting Sexual Misconduct; (3) provide a summary of the findings of fact in support of the Hearing Panel's determination; and (4) provide a statement of rationale for the responsibility determination and any sanctions.

40

Doe Decl. Ex. A   p. 41

## 4A.06  Appeals

The Claimant or the Respondent may appeal the decision of the Hearing Panel regarding responsibility and/or the sanction(s) imposed on the Respondent.

The following are the only permissible grounds for an appeal of the Hearing Panel's responsibility determination: (1) procedural irregularity that affected the outcome; (2) new evidence that was not reasonably available at the time of the determination and that could affect the outcome; and (3) the Title IX Coordinator, an investigator, or the hearing officer had a conflict of interest or bias that affected the outcome.

Sanctions may only be appealed on the ground that the severity is incommensurate to the gravity of the Sexual Misconduct for which the Respondent was found responsible.

Appeals must be submitted in writing to the Title IX Coordinator within five days from the date of the determination letter. The Title IX Coordinator will promptly inform the other party of the filing of the appeal. The other party will have three days from such notification to submit a written response to the appeal.

## 4A.07  Appointment of the Appeal Officer and Challenging of the Same

Upon receipt of an appeal, the Title IX Coordinator will appoint an appeal officer.

Within two days of such appointment, the Claimant or the Respondent may identify to the Title IX Coordinator in writing alleged conflicts of interest or bias posed by assigning that appeal officer. The Title IX Coordinator will carefully consider such statements and will promptly assign a different appeal officer if the Title IX Coordinator determines that a material conflict of interest or material bias exists.

## 4A.08  Appellate Review

The Title IX Coordinator will share the Formal Complaint, the investigative report, the hearing recording, all statements introduced at the hearing, any other evidence considered by the Hearing Panel, the Hearing Panel's determination letter, and the written appeal submissions with the appeal officer. In addition, if an appeal raises procedural issues, the Title IX Coordinator may provide the appeal officer additional information relevant to those issues.

Within 15 days of the receipt of the appeal, the appeal officer will determine (a) that the decision of the Hearing Panel should stand; or (b) that the decision of the Hearing Panel should be overturned and will issue a written explanation of that result and the rationale behind it.

In the event that the appeal officer determines that the decision of the Hearing Panel should be overturned, the appeal officer will specify, after consultation with the Title IX Coordinator and other Wake Forest administrators as necessary, the appropriate steps to be taken to come to a final resolution

41

Updated on 3/8/22

of the Formal Complaint (which may include another hearing before the same Hearing Panel or a different one).

42

# SECTION V.  NON-TITLE IX SEXUAL MISCONDUCT ADMINISTRATIVE GRIEVANCE PROCEDURES FOR EMPLOYEE-RESPONDENTS

### 5A.01   Referral for Adaptive Resolution

If, at any time prior to a responsibility determination by the hearing officer, the Title IX Coordinator determines that the matter is appropriate for Adaptive Resolution, the Title IX Coordinator will ask both parties if they wish to suspend the formal resolution process and engage in an Adaptive Resolution process to resolve the allegations without a hearing. Adaptive Resolution will not be available when a Claimant is a student and a Respondent is an employee.

If both parties wish to engage in the Adaptive Resolution process and if the Claimant and the Respondent agree in writing to a resolution through the Adaptive Resolution process, then the Formal Complaint will be resolved without completion of the hearing and without any further rights of appeal by either party.

If the parties are unable to agree to a resolution through the Adaptive Resolution process, the Title IX Coordinator will continue the formal resolution process.

### 5A.02   Sexual Misconduct Review Committee

The administrative grievance process will be managed by a three-person panel comprised of members of the Sexual Misconduct Review Committee ("SMRC"). The SMRC will be composed of three faculty members, three staff members, and three members of the Wake Forest administration. Members of the SMRC will be appointed by the President, or his/her designee. For faculty members, the Committee on Academic Freedom and Responsibility will nominate five faculty members and the President or his/her designee will select two from among the five nominees.

The panel appointed by the Title IX Coordinator to determine responsibility shall consist of at least one faculty member if the Respondent is a faculty member, at least one staff member if the Respondent is a staff member, and an administrator. Members of SMRC are required to attend annual training as determined by the Title IX Coordinator.

### 5A. 03  Employee Sexual Misconduct Review Process

Unless a Formal Complaint is dismissed or the parties elect to participate in the Adaptive Resolution process pursuant to Section VI below, the panel will conduct an administrative review in accordance with this process.

> 5A.03(i) Review Process. The Title IX Coordinator or assigned investigator(s) will provide a copy of the written investigative report to the panel. The investigator(s) will be available to conduct such further investigation as the panel deems appropriate or to answer questions from the

43

panel. The Claimant and the Respondent will also be provided the option to appear before the panel to present a statement if they so choose. In addition, if the panel, in its discretion, desires to interview the Claimant, the Respondent, or any witness, it may do so. Such interviews will be conducted with only the person interviewed will be present (other than a support person or advisor). In the interviews, the panel may make such inquiries as it determines will assist in determining whether the Respondent violated the Policy. Decisions regarding Relevant Evidence will be determined by the panel.

5A.03(ii) Panel Determination. The panel will review the investigative report along with any other information it gathers to determine whether a violation of this Policy has occurred. The panel's determination will be based on facts that a majority of the panel believes are more likely than not to be true. The panel will prepare a determination letter within fourteen days stating the evidence that was considered, how conflicting evidence was resolved, the panel's determination of whether the Respondent violated the Policy, and the facts that form that basis of the panel's determination. The Title IX Coordinator will simultaneously convey the findings in writing to the Claimant and the Respondent.

## 5A. 04 Sanctions

If the panel determines that the Respondent violated this Policy, the panel will make a sanctions recommendation and the matter (including the determination letter and sanctions recommendation) will be referred by the Title IX Coordinator to a staff member designated by the Chief Human Resources Officer (if a staff employee is found to have violated this Policy) or to a faculty member designated by the Provost (if a faculty member is found to have violated this Policy). The designee of the Chief Human Resources Officer or the designee of the Provost will consult with the Respondent's Department Head, Dean, or Vice President for a determination regarding the sanction that will be imposed taking into consideration the recommendation of the panel. Sanctions imposed on faculty members or staff employees who have been found to be in violation of this Policy shall be commensurate with the severity and/or frequency of the conduct, and shall be intended to adequately and sufficiently prevent the same or similar conduct by the faculty member or staff employee in the future. Corrective or disciplinary action imposed on student- employees may also affect the student-employee's status as a student at Wake Forest. The Title IX Coordinator will then issue a written sanctions determination letter to the Claimant and the Employee. A sanction to revoke the tenure of a faculty member will be addressed in accordance with the University's Procedure for the Dismissal of Tenured Faculty Members.

## 5A.05  Appeals

The Claimant or the Respondent may appeal the decision of the Hearing Panel regarding responsibility and/or the sanction(s) imposed on the Respondent.

The following are the only permissible grounds for an appeal of the Hearing Panel's responsibility determination: (1) procedural irregularity that affected the outcome; (2) new evidence that was not

44

reasonably available at the time of the determination and that could affect the outcome; and (3) the Title IX Coordinator, an investigator, or the hearing officer had a conflict of interest or bias that affected the outcome.

Sanctions may only be appealed on the ground that the severity is incommensurate to the gravity of the Sexual Misconduct for which the Respondent was found responsible.

Appeals must be submitted in writing to the Title IX Coordinator within five days from the date of the determination letter. The Title IX Coordinator will promptly inform the other party of the filing of the appeal. The other party will have three days from such notification to submit a written response to the appeal.

### 5A.06  Appointment of the Appeal Officer and Challenging of the Same

Upon receipt of an appeal, the Title IX Coordinator will appoint an appeal officer.

Within two days of such appointment, the Claimant or the Respondent may identify to the Title IX Coordinator in writing alleged conflicts of interest or bias posed by assigning that appeal officer. The Title IX Coordinator will carefully consider such statements and will promptly assign a different appeal officer if the Title IX Coordinator determines that a material conflict of interest or material bias exists.

### 5A.07  Appellate Review

The Title IX Coordinator will share the Formal Complaint, the investigative report, the hearing recording, all statements introduced at the hearing, any other evidence considered by the hearing officer, the hearing officer's written findings, and the written appeal submissions with the appeal officer. In addition, if an appeal raises procedural issues, the Title IX Coordinator may provide the appeal officer additional information relevant to those issues.

Within 15 days of the receipt of the appeal, the appeal officer will determine (a) that the decision of the hearing officer should stand; or (b) that the decision of the hearing officer should be overturned and will issue a written explanation of that result and the rationale behind it.

In the event that the appeal officer determines that the decision of the hearing officer should be overturned, the appeal officer will specify, after consultation with the Title IX Coordinator and other Wake Forest administrators as necessary, the appropriate steps to be taken to come to a final resolution of the Formal Complaint (which may include another hearing before the same hearing officer or a different one).

Doe Decl. Ex. A   p. 46

# SECTION VI.  ADAPTIVE RESOLUTION

## 6A.01  Availability of Adaptive Resolution

At any time before the issuance of a responsibility determination, the parties may elect to resolve the Formal Complaint through the adaptive resolution process, provided that (1) the parties both voluntarily consent in writing to such resolution; (2) both parties are students or employees of Wake Forest; and (3) the Title IX Coordinator determines that adaptive resolution is an appropriate mechanism for resolving that specific Formal Complaint. Otherwise, a Formal Complaint that is not dismissed will proceed to a hearing. Adaptive resolution is not an appropriate mechanism for resolving a Formal Complaint by a student against an employee.

Adaptive resolution may not be selected for less than all of the misconduct alleged in the Formal Complaint. If the parties agree to adaptive resolution (and adaptive resolution is appropriate for all of the allegations at issue), then all of the allegations must be resolved according to the adaptive resolution process.

Either party has the right to terminate the adaptive resolution process at any time and proceed with formal resolution (i.e., a full investigation and hearing). Furthermore, the Title IX Coordinator may, where appropriate, terminate adaptive resolution and proceed with the formal resolution process instead.

## 6A.02  Notice of Allegations and Notice of Adaptive Resolution and Facilitator

The Title IX Coordinator will provide the parties a written notice disclosing the Formal Complaint's allegations and the requirements of the adaptive resolution process, including any circumstances under which Wake Forest would preclude the parties from resuming a Formal Complaint arising from the same allegations.

When the Formal Complaint is to be resolved according to the adaptive resolution process, the Title IX Coordinator will designate a trained individual to serve as the adaptive resolution facilitator. The Title IX Coordinator will contemporaneously share the name of the adaptive resolution facilitator with the Claimant and the Respondent.

Within two days of such notification, the Claimant or Respondent may identify to the Title IX Coordinator in writing alleged conflicts of interest or bias posed by assigning that facilitator. The Title IX Coordinator will carefully consider such statements and will promptly assign a different facilitator if the Title IX Coordinator determines that a material conflict of interest or material bias exists.

## 6A.03  Adaptive Resolution

The adaptive resolution facilitator will meet separately with each party to review the process and the allegations in the Formal Complaint and to identify the outcome that each party seeks from the adaptive resolution process. If the facilitator determines that it would be productive for both parties to attend a

46

resolution meeting, the facilitator will provide written notice to the Claimant and the Respondent setting forth the date, time, and location of that meeting. At the request of either party or at the discretion of the adaptive resolution facilitator, the meeting may occur with the parties in different locations or meetings with parties may take place on different dates.

Both the Claimant and the Respondent are expected to participate in the adaptive resolution process. If either party fails to participate, the Title IX Coordinator may direct that the Formal Complaint be resolved using a full investigation and hearing or may reschedule the meeting.

During adaptive resolution, the parties may: (1) engage one another in the presence of, and/or facilitated by, the facilitator; (2) communicate their feelings and perceptions regarding the incident and the impact of the incident (either by communicating directly with one another or by communicating indirectly through the facilitator); (3) relay their wishes and expectations regarding the future; and/or (4) come to an agreed-upon resolution of the allegations in the Formal Complaint.

Participation in the adaptive resolution process is completely voluntary, and either party, the facilitator, or the Title IX Coordinator may terminate the process at any time.

## 6A.04  Resolution

The facilitator will attempt to facilitate the parties' resolution of the Formal Complaint. If this process results in a resolution between the parties and the Title IX Coordinator finds the resolution to be appropriate under the circumstances (giving consideration to factors including the extent to which the resolution will protect the safety of the Claimant and the entire Wake Forest community), the resolution will be reduced to writing, which will conclude the process and closing of the Formal Complaint.

## 6A.05  Written Resolution Agreement

To be effective, any agreement reached during the adaptive resolution process must be memorialized in writing and signed by the parties, the facilitator, and the Title IX Coordinator or designee. The Respondent must complete all measures agreed to in the written resolution agreement, and compliance will be monitored by the Title IX Office. If the Respondent completes all measures agreed to in the written resolution agreement, no further process is available with regard to the allegations in the Formal Complaint. If a Respondent fails to complete all measures, the Claimant or the Title IX Coordinator may refile the Formal Complaint and resume the formal resolution process.

Measures that parties agree to in the adaptive resolution process may include (but are not limited to):

1) Alcohol education classes for the Respondent;
2) Completion of online sexual harassment training;
3) Regular meetings with an appropriate individual, unit or resource;
4) Permanent or temporary no contact order;
5) Restrictions for participation in certain activities, organizations, programs or classes;

47

6) Change in residential assignment or restrictions on access to certain residence halls or apartments;
7) Restriction of participation in certain events;
8) Reflection paper or written apology; or
9) The Respondent's completion of an educational or behavioral plan.

## 6A.06  Termination of Adaptive Resolution Process

At any time prior to completing a written resolution agreement, any party has the right to withdraw from the adaptive resolution process and resume the grievance process with respect to the Formal Complaint. If either party terminates the adaptive resolution process or the Title IX Coordinator determines that the adaptive resolution process is no longer appropriate, the formal resolution process outlined above will promptly resume.

## 6A.07  Confidentiality of Information Shared

Information shared by parties during an adaptive resolution process will not result in separate or subsequent disciplinary investigation or actions by Wake Forest unless Wake Forest determines in its reasonable discretion that there is a threat of harm or safety to self or others.

## 6A.08  Appeal

A resolution reached pursuant to the adaptive resolution process is final and not subject to appeal.

## 6A.09  Records

The Title IX Coordinator will retain a record of the written resolution agreement for no less than seven years.

*Updated on 3/8/22*

## EXHIBIT A

### Suggested Actions for People Who Have Experienced Sexual Harassment

If you have experienced Sexual Harassment, Wake Forest's first priority is to help you take steps to address your safety, medical needs and emotional well-being. You are encouraged to take the following actions, as applicable, regardless of whether you have made a decision about whether to pursue a criminal or Wake Forest complaint.

**1.    Ensure Your Physical Safety.**

You may seek help from local law enforcement agencies or by contacting the Wake Forest Police Department. The Wake Forest Police Department can assist you with contacting local law enforcement and can help you obtain transportation to the local law enforcement office. Officers are on duty at the Wake Forest Police Department 24 hours a day, seven days a week.

**2.    Seek Medical Assistance and Treatment.**

To seek medical assistance, you can go to a hospital emergency room, clinic, your primary care physician, or Student Health Service (if you are a Reynolda campus student). Local options for medical care include the following:

- Wake Forest Baptist Medical Center (Confidential)
  - 1 Medical Center Boulevard, Winston-Salem, NC 27157
  - 336.716.2011
- Novant Health Forsyth Medical Center (Confidential)
  - 3333 Silas Creek Parkway, Winston-Salem, NC 27103
  - 336.718.5000
- Forsyth County Health Department (Confidential)
  - 799 North Highland Avenue, Winston-Salem, NC 27101
  - 336.703.3100
- Student Health Service (Confidential)
  - Wellbeing Center, Ground Floor
  - 336.758.5218

It is crucial that you obtain medical attention as soon as possible after a sexual assault, for example, to determine the extent of physical injury and to prevent or treat sexually transmitted diseases (such as HIV). Medical facilities can also screen for the presence of sedative drugs such as Rohypnol or GHB (date-rape drugs).

49

Doe Decl. Ex. A   p. 50

Student Health Service will help you obtain transportation to Wake Forest Baptist Medical Center or Forsyth Medical Center and can help you contact a support person, such as a family member, a friend, or a roommate.

If you choose to have an evidence collection kit (or "rape kit") completed, it is important to do so within 120 hours.

Even if you have not decided whether to file charges, it is advisable to have the evidence collection kit completed so that you can better preserve the options of obtaining a protective order and/or filing criminal charges at a later date.

It is advisable to avoid showering, bathing, going to the bathroom, or brushing your teeth before an evidence collection kit is completed. You should also wear (or take with you in a paper – not plastic – bag) to the hospital the same clothing that you were wearing during the assault. An evidence collection kit can still be completed even if you have showered or bathed.

### 3. Obtain Emotional Support

The University Counseling Center ("UCC"), the Safe Office and the Chaplain's Office can help students sort through their feelings and begin the recovery process. The professionals at the UCC, the Safe Office and the Chaplain's Officer are trained to provide crisis intervention on short-term and emergency issues. These offices can also provide referral services for outside providers and law enforcement. Counseling is free of charge to all students. In some instances, the law may require the disclosure of information shared by students with counselors. However, absent a legal mandate to the contrary, counseling services are strictly confidential, are not part of students' records, and will not be reported to other Wake Forest personnel.

Employees may contact the Employee Assistance Program to obtain emotional support (available at: 336.716.5493).

### 4. Obtain Information/Report Misconduct

You are encouraged to report incidents of sexual assault to Wake Forest's Title IX Coordinator ( even if you have filed a report directly with law enforcement). The Title IX Coordinator can help you access resources and can provide you with support and information, including information on Wake Forest's procedures for investigating and addressing instances of sexual assault.

**Important Contact Information: Resources for Parties**

| Resource/Website Link | Email | Phone | Location/Address & Hours |
|---|---|---|---|
| Title IX Office (Non-Confidential)<br><br>**Aishah Casseus, JD**<br>Director of the Title IX Office/Title IX Coordinator/Section 504 Coordinator | titleixcoordinator@wfu.edu<br><br>casseua@wfu.edu | 336.758.7258 | 1834 Wake Forest Road<br>Reynolda Hall, Suite 307<br>P.O. Box 6006<br>Winston-Salem, NC 27109<br><br>Monday – Friday<br>9 am – 5 pm |
| University Police (Non-Confidential) | 24/7 Dispatch Center:<br>dispatch@wfu.edu<br><br>Admin Offices:<br>police@wfu.edu | From Campus Phone Extensions: 911<br><br>Cell or Off Campus:<br>336.758.5911<br><br>Non-Emergency:<br>336.758.5591 | 1834 Wake Forest Road<br>Alumni Hall<br>P.O. Box 7686<br>Winston-Salem, NC 27109 |
| Winston-Salem Police Department (Non-Confidential) | | Emergencies: 911<br><br>Non-Emergencies:<br>336.773.7700 | 725 North Cherry Street<br>Winston-Salem, NC 27101 |
| Student Health Service (Confidential) | Appointments:<br>apptshs@wfu.edu<br><br>Administrative:<br>shs@wfu.edu | 336.758.5218 | 1834 Wake Forest Road<br>Wellbeing Center, Ground Floor<br>Winston-Salem, NC 27109<br><br>Monday – Friday<br>8:45 am – 5 pm<br>Weekends<br>11 am – 5 pm |

51

Updated on 3/8/22

| | | | |
|---|---|---|---|
| Wake Forest University Human Resources<br><br>**Melissa Clodfelter**<br>Assistant Vice President, Campus Engagement & Professional Development | AskHR@wfu.edu<br><br>clodfem@wfu.edu | 336.758.4700 | 2598 Reynolda Road<br>P.O. Box 7424<br>Winston-Salem, NC 27106 |
| University Counseling Center (Confidential) | | 24/7 Crisis Line:<br>336.758.5273 | 1834 Wake Forest Road<br>Reynolda Hall, Suite 117<br>P.O. Box 7838<br>Winston-Salem, NC 27109<br><br>Monday - Friday<br>8:30 am - 5 pm |
| Safe Office (Confidential) | | 24/7 Helpline:<br>336.758.5285*<br><br>*Available while classes are in session | |
| Office of Chaplain (Confidential) | | 336.758.5210 | 1834 Wake Forest Road<br>Reynolda Hall, Suite 8<br>P.O. Box 7204<br>Winston-Salem, NC 27109 |
| Employee Assistance Program (EAP) (Confidential) | | 336.716.5493 | |
| LGBTQ Center (Non-Confidential) | lgbtq@wfu.edu | 336.758.4665 | 1834 Wake Forest Road<br>Benson University Center 311<br>P.O. Box 7203<br>Winston-Salem, NC 27109<br><br>Monday - Friday<br>9 am - 5 pm |

| Women's Center (Non-Confidential) | womenscenter@wfu.edu | 336.758.4053 | 1834 Wake Forest Road<br>Benson University Center 314<br>Winston-Salem, NC 27109<br><br>Monday - Friday<br>9 am - 5 pm |
|---|---|---|---|

## Additional Community Resources

| Resource/Website Link | Email | Phone | Location/Address |
|---|---|---|---|
| Wake Forest Baptist Medical Center (Confidential) | | 336.716.2011 | 1 Medical Center Boulevard Winston-Salem, NC 27157 |
| Novant Health Forsyth Medical Center (Confidential) | | 336.718.5000 | 3333 Silas Creek Parkway Winston-Salem, NC 27103 |
| Forsyth County Health Department (Confidential) | | 336.703.3100 | 799 North Highland Avenue Winston-Salem, NC 27101 |
| Family Services, Inc. (Confidential) | info@fsifamily.org | 336.722.8173 or 1.800.316.5513<br><br>24 Hour Crisis Line for Sexual Assault: 336.722.4457<br><br>24 Hour General Crisis Line: 336.723.8125 | 1200 Broad Street Winston-Salem, NC 27101 |

53