| | |
|---|---|
| JOHN DOE, | : |
| Plaintiff, | : Case No. 1:23-cv-00114 |
| v. | : |
| WAKE FOREST UNIVERSITY, | : |
| Defendant. | : |

# DECLARATION OF AISHAH CASSEUS

I, Aishah Casseus, hereby declare as follows:

1. I am the Director of the Title IX Office at Wake Forest University. I have been in that role since 2020.

2. Prior to working at Wake Forest, I served as the Equal Employment Opportunity Director and Title IX Coordinator at Winston-Salem State University for three years. Prior to that, I worked at Florida State University for a year and a half. I served as FSU's first full time Senior Title IX Investigator, and spent 11 months as FSU's interim Title IX Director. I earned a Juris Doctor from North Carolina Central University in 2011, with a concentration in Constitutional Law and Civil Rights.

3. In my position, I am responsible for the implementation of Title IX at Wake Forest University and for coordinating the University's compliance with Title IX. I am in charge of the intake of formal complaints under Title IX and oversee investigations of complaints and any disciplinary actions pursuant to the Wake Forest University Sex and Gender Discrimination and

Harassment Policy and Title IX Sexual Harassment and Non-Title IX Sexual Misconduct Grievance Procedures (the "Policy").

4. I was the Title IX Coordinator when Jane Roe filed the complaint against John Doe that is the subject of the above-captioned lawsuit.

5. Sometime in March 2022, Jane Doe contacted the Wake Forest University SAFE Office. The SAFE Office is a confidential resource and counseling center available to all students where Jane Doe spoke with SAFE staff member Stephanie Deangelis.

6. On March 25, 2022, Ms. Deangelis requested a meeting with me.

7. On April 1, 2022, Ms. Deangelis came to the meeting with Jane Doe and her friend, another Wake Forest university student. Ms. Deangelis is familiar with the University's Title IX policy and procedures, and Jane Doe was interested in pursuing an adaptive resolution.

8. Adaptive Resolution is a process where the parties can agree to suspend the formal resolution process and attempt to resolve the allegations without a hearing:

> If both parties wish to engage in the Adaptive Resolution process and if the Claimant and Respondent agree in writing to a resolution through the Adaptive Resolution process, then the Formal Complaint will be resolved without completion of the hearing and without any further rights of appeal by either party. If the parties are unable to agree to a resolution through the Adaptive Resolution process, the Title IX Coordinator will continue the formal resolution process.

[ECF No. 6-2 at § 3A.01].

9. The meeting on April 1 was solely informational. We discussed the Policy and University procedures. Jane Doe primarily wanted information on the Title IX process and wanted to learn more about the Adaptive Resolution process. I informed her that if it is determined that Jane Roe alleged conduct, which, if true, would be prohibited by the Policy, then the Respondent

would receive a notice of allegations and would then meet with the Title IX Office to discuss options, including Adaptive Resolution.

10. I alerted Roe that the adaptive resolution process could not begin until a Formal Complaint was filed. If any party did not agree to Adaptive Resolution, then a complaint would proceed to an investigation. Jane Roe did not disclose details regarding her allegations at that time. She had not yet filed any complaint with my office.

11. On April 11, 2022, I received an email from Jane Roe indicating she wanted to proceed with filing a formal complaint against John Doe. She stated she preferred to participate in Adaptive Resolution rather than a formal investigation.

12. On April 12, 2022, Roe filed a formal complaint with my office via our digital form. The formal complaint stated that the alleged sexual assault occurred in Jane Doe's dorm room on October 15-16, 2021:

> The respondent attended my sorority date function as my date on October 15th. After the event in my dorm room I was unable to give consent to activity that occurred and the next morning non-consensual activity occurred.

A true and correct copy of the form is attached to Plaintiff's Motion. [ECF No. 6-3].

13. I followed up with a message to Ms. Deangelis requesting Jane Doe provide clarification for the formal complaint.

14. Later on April 12, 2022, Jane Roe came to my office to clarify her allegations. She explained that the nonconsensual activity she referred to was digital penetration and her inability to give consent was due to incapacitation by alcohol. Based on this information I updated Jane Roe's Formal Complaint for the purpose of providing additional specificity to John Doe.

15. On April 12, 2022, I sent Jane Roe an email confirming the changes made to her Formal Complaint during our meeting. Jane Roe responded shortly thereafter confirming the changes. A true and correct copy of the Title IX Formal Complaint is attached to the Plaintiff's Motion. [ECF No. 6-3].

16. On April 13, 2022, I sent a Notice of Allegations ("Notice") to John Doe. A true and correct copy of the Notice was attached to Plaintiff's Motion. [ECF No. 6-4].

17. When I sent the Notice, I understood Jane Roe to be alleging a single allegation of nonconsensual activity in the form of digital penetration on the morning of October 16, 2021.

18. On April 21, 2022, Jessica Telligman met with John Doe and his attorney, John Fitzgerald, to explain the investigation process and answer procedure questions. My understanding is that John Doe expressed an interest in participating in the Adaptive Resolution process.

19. I approved the initiation of Adaptive Resolution. On April 25, 2022, I sent a letter to John Doe informing him that Toni McMurphy was appointed as the Adaptive Resolution Facilitator.

20. In May and June 2022 I maintained contact with Ms. McMurphy and both parties for updates on Adaptive Resolution.

21. The Adaptive Resolution process suffered from many delays. These were caused by a combination of summer break and the fact that John Doe was working over the summer. The facilitator had difficulty finding a time where everyone could meet to discuss resolution.

22. On July 20, 2022, I requested an update from Toni McMurphy and whether she has had a meeting with John Doe and his advisor. She replied:

> The last communication from them was that [John Doe], his mother, and their support person were going to meet early this week and send

4

41154722.3

Case 1:23-cv-00114-KDB-SCR    Document 20-6    Filed 02/16/23    Page 4 of 8

concrete suggestions to help reach a resolution. I have not heard from them yet this week. If I don't hear anything by this afternoon I will send a follow-up email. I've already impressed upon them that [Jane Roe] is frustrated with the multiple delays.

23. On August 9, 2022, I received another update from Toni McMurphy: "I received two suggestions from [John Doe's] mother and share[d] them with Stephanie [Deangelis] the same day. I am not hopeful based on what they offered. I will keep you posted."

24. On August 18, 2022, Jane Roe informed me that she wished to terminate Adaptive Resolution and move to a formal investigation.

25. On August 19, 2022, I sent an email to John Doe, his mother, and Doe's advisor John Fitzgerald informing them that the Adaptive Resolution process has been terminated and a formal resolution process will resume.

26. On August 22, 2022, I assigned Jessica Telligman to serve as the Title IX investigator for matter. It is standard practice that an investigator is not assigned to a case until after the Adaptive Resolution process has concluded.

27. On August 30, 2022, Ms. Telligman met with Jane Roe for an initial interview. Following that interview, Ms. Telligman contacted me to state there was a second incident being alleged against John Doe. Jane Roe told Ms. Telligman that there was nonconsensual sexual intercourse on the night of October 15, 2021 into the early morning hours of October 16, 2021, in addition to the nonconsensual digital penetration on October 16, 2021.

28. In my experience in Title IX investigations, it is not uncommon for new information to come to light during the first formal interview with a complainant, who before that first interview has not been questioned in detail with respect to their allegations. This is particularly true in sexual misconduct investigations.

29. Upon learning of the additional allegations, I immediately prepared an updated Notice of Allegations ("Updated Notice") to John Doe, a true and correct copy of which was attached to Plaintiff's Motion. [ECF No. 6-5]. I sent the Updated Notice to John Doe on September 1, 2022. It stated, in relevant part:

> The Claimant advises Investigator Telligman that you allegedly engaged in sexual assault via sexual intercourse with her on October 16, 2021. Claimant alleges that she initially consented to sexual intercourse with you in her residence hall room, but that she withdrew consent by stating "this doesn't feel good." In summary, Claimant is alleging this instance of withdrawn consent in addition to the separate instance of alleged non-consensual digital penetration which allegedly happened a few hours later and was referenced in the original Notice of Allegations.

30. I believed it was important to provide an Updated Notice as soon as possible after learning of the new allegations, so John Doe had notice of the allegations as early as possible. We never withheld any information from Doe. He was fully informed of all allegations against him prior to his first interview with Ms. Telligman on September 8, 2022.

31. I did not presume the additional allegation was true. The additional information did not alter the presumption that John Doe had not violated the Policy. Accepting the new allegations was likewise not an indication that I believed Jane Roe was more credible; it was simply information provided to Doe about Roe's allegations.

32. The Updated Notice did not change the nature of the investigation. From the time of the original Notice, John Doe was on notice that he was under investigation for violation of the Policy for nonconsensual sexual touching. That was still true following the Updated Notice. The original Notice alleged that John Doe committed sexual misconduct in violation of the Policy. The Updated Notice also alleged that John Doe committed sexual misconduct in violation of the Policy, though it was clarified to note that there were allegations of two separate incidents.

33. The investigation concluded on November 4, 2022 when Telligman provided the parties a copy of her Investigation Report. A true and correct copy of the Investigation Report is attached to Plaintiff's Motion. [ECF No. 6-6].

34. A hearing was held on November 29, 2022.

35. On December 20, 2022, Hearing Officer Dixie Wells issued a Final Outcome Letter. She found that the evidence established that it was more likely than not that John Doe committed sexual misconduct in violation of the Policy. A true and correct copy of the Final Outcome Letter is attached to Plaintiff's Motion. [ECF No. 6-7].

36. On January 3, 2023, John Doe filed an Appeal ("Appeal") of Final Outcome Letter. A true and correct copy of the Appeal is attached to Plaintiff's Motion. [ECF No. 6-8].

37. On January 8, 2023, I sent an email to John Doe notifying him that Howard Kallem was appointed as the Appeal officer for the Appeal.

38. The email also informed John Doe he could participate in his classes remotely during the pendency of the Appeal:

> As a reminder, Section 3A.11 of the Sexual Misconduct Policy specifies that sanctions "are effective immediately upon issuance of the final outcome letter." While your suspension from Wake Forest is in effect during the review of your appeal, Wake Forest is willing to allow you to engage in academic work pending the outcome of the process. You will not be able to attend classes in-person or on-campus during this time; however there have been requests made for you to complete academic work remotely (e.g. via Canvas, email, and/or class recordings). If you are interested in pursuing this option, please contact Seth Youngblood, youngbsf@wfu.edu for further direction about your participation. Mr. Youngblood is aware that you will be contacting him but is unaware of the reasons that you are unable to attend classes other than it is due to circumstances beyond your control. Please let me know if you have any questions or concerns.

39. On January 23, 2023, Kallem issued his Appellate Decision, which affirmed the Final Outcome Letter. A true and correct copy of the Appellate Decision was attached to Plaintiff's Motion. [ECF No. 6-9].

40. On January 24, 2023, Associate Dean of Students Dr. Jim Settle sent a letter to John Doe suspending him as of December 20, 2022. The letter also terminated John Doe's ability to participate in class work remotely or to be on campus in person for any reason. A true and correct copy of the letter was attached to Plaintiff's Motion. [ECF No. 6-10].

41. In my position as Title IX Coordinator, I am not an advocate for the Claimant or the Respondent. They are both Wake Forest University students who are entitled to a fair process under the Policy. In my opinion, this case was handled in a fair and objective manner.

42. Since the Policy went into effect in August 2020, in response to updated Title IX regulations from the Department of Education in May 2020, Wake Forest has had three investigations for Title IX Sexual Harassment proceed to a full hearing. Each of those matters involved a female complainant alleging misconduct by a male respondent. In the prior two hearings, the respondent was found not responsible. John Doe is the first and only Respondent to be found responsible for engaging in Title IX Sexual Harassment since the University's current procedures were adopted.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of February, 2023.

_____
Aishah Casseus