IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JOHN DOE, | |
| Plaintiff, | Case No. 1:23-cv-00114 |
| v. | |
| WAKE FOREST UNIVERSITY, | |
| Defendant. | |

## DECLARATION OF JESSICA TELLIGMAN

I, Jessica Telligman, hereby declare as follows:

1. I am the Assistant Director of the Title IX Office and the Deputy Title IX Coordinator at Wake Forest University. I have been in that role since 2016.

2. Prior to working at Wake Forest, I served as the Assistant Director of Administration at Salem Academy and College in Winston-Salem, NC. As a member of the senior administrative team, I worked extensively with the institution on grievance procedures including, but not limited to, Title IX, Section 504, and employment law matters. Prior to that time I served as a Magistrate Judge for Forsyth County from 2013 - 2015, as appointed by Forsyth County Superior Court Judge William Z. Wood, Jr. Prior to that position I practiced civil litigation in Winston-Salem commencing directly after my graduation from Vanderbilt Law School in 2004.

3. In my current role at Wake Forest, I am responsible for Title IX Office investigations and regularly serve as a neutral party in conducting prompt and thorough reviews of alleged reports. At times, I also assist with intake of Title IX reports involving University

students and/or employees. I prepare detailed, unbiased reports following Title IX Office investigations as set forth in applicable policies.

4. I served as the Title IX Investigator in the sexual misconduct complaint filed by Jane Roe against John Doe that is the subject of the above-captioned lawsuit.

5. After completing my investigation, I drafted a Title IX Office Investigation Report ("Investigation Report"), dated November 4, 2022. A true and correct copy of my Investigation Report is attached to Plaintiff's Motion [ECF No. 6-6].

6. My role as a Title IX Investigator is limited to gathering the facts. I do not resolve factual disputes or opine as to credibility. It is not my role to come to a conclusion about whether someone violated the Wake Forest University Sex and Gender Discrimination and Harassment Policy and Title IX Sexual Harassment and Non-Title IX Sexual Misconduct Grievance Procedures (the "Policy"). My Investigation Report in this matter makes no factual findings or credibility assessments.

7. Throughout my investigation, I maintained the presumption that John Doe was not responsible for violation of the Policy. My Investigation Report is a summary of witness interviews I conducted and relevant documents and other evidence, without comment or characterization from me.

8. I created the Investigation Report with the objective goal of information gathering, and not based on any bias for or against men or women, or any bias for or against complainants or respondents. I did not receive any related pressure or input for Wake Forest University or any third party that influenced my inclusion of information in the Investigation Report.

9. Jane Roe submitted a Title IX Formal Complaint form to the Wake Forest Title IX Office on April 12, 2022, a true and correct copy was attached to Plaintiff's Motion. [ECF No. 6-3].

10. On April 13, 2022, the Wake Forest Title IX Office sent a Notice of Allegations ("Notice") letter to John Doe, notifying him that he was accused of sexual harassment in violation of the Policy. A true and correct copy of the Notice was attached to Plaintiff's Motion. [ECF No. 6-4]. The Notice stated that Jane Roe alleged: "*The respondent attended my sorority date function as my date on October 15th. After the event in my dorm room I was unable to give consent to activity that occurred due to incapacitation and the next morning non-consensual digital penetration occurred.*" [ECF No. 6-4].

11. On April 21, 2022, I met with the Respondent, John Doe and his advisor John Fitzgerald for an informational meeting about the Policy and procedures in addressing the complaint. The meeting was informational only and solely about the process; we did not discuss the substance of the Formal Complaint or the allegations against John Doe.

12. It is not unusual for me to hold a pre-investigation informational session with a student party and advisor to explain the University's process. I did not say to John Doe or his advisor that I would recuse myself as investigator if the complaint went forward. In addition to my clear memory that I did not say that, to make that observation would not have made any sense from our process perspective; Doe had already been noticed with the allegations, so there would have been nothing improper about discussing the substance of the allegation in that meeting. Nevertheless, that was not the purpose of the meeting, and I did not ask any questions about the substance of the allegations and Doe did not provide any.

3

13. John Doe's own Appeal of the Final Outcome Letter stated that the investigation "was conducted between August 30, 2022 through November 1, 2022." [ECF No. 6-8 at 11]. As of the time he appealed his suspension, John Doe also did not view the April 21, 2022 meeting as part of my investigation.

14. I informed John Doe at the April 21, 2022 meeting that the Complainant, Jane Roe, was interested in pursuing Adaptive Resolution and explained that process. Adaptive Resolution is an alternative to a formal investigation and adjudication that allows the University and parties to a complaint to attempt to reach an outcome that is acceptable to all in light of the individual facts and circumstances of that case. It does not result in a formal finding as to whether a Policy violation occurred (unless the parties agree to such an outcome).

15. After explaining the process, John Doe expressed interest in Adaptive Resolution. At that point, it is my understanding that a facilitator was assigned and the parties engaged in the Adaptative Resolution process. I was not involved with that process and I do not know what was discussed.

16. On August 19, 2022, Jane Roe terminated the Adaptive Resolution Process.

17. On August 22, 2022, I was assigned as the investigator for the sexual misconduct complaint made by Jane Roe against John Doe. Director Casseus sent a letter to John Doe, his mother, and his attorney on August 22, 2022, stating that John Doe had "the opportunity to indicate in writing within two (2) days any alleged conflicts of interest or bias on the part of the assigned investigator." A copy of the letter is attached hereto as <u>Exhibit A</u>. John Doe did not raise any conflicts.

18. After I testified at the Title IX hearing of this matter, hearing officer Dixie Wells asked John Doe if he wished to make any objections to me and/or my testimony while I was present and he stated, "I have no objections." [Transcript]. John Doe similarly did not raise any alleged conflicts of interest in his Appeal. [ECF No. 6-8]. To my knowledge, he did not complain about a potential conflict of interest until this lawsuit.

19. I interviewed Jane Roe for the first time on August 30, 2022. [ECF No. 6-6 at 3].

20. During that interview, Jane Roe disclosed that she was accusing John Doe of not only nonconsensual digital penetration, but also of nonconsensual sexual intercourse with her the night prior. [ECF No. 6-6 at 5]. Before this first interview, I was not aware that Roe was making an allegation of nonconsensual sexual intercourse. To the best of my knowledge, no one in the Title IX office had understood Roe's formal complaint to include such an allegation.

21. In my experience in Title IX investigations, it is not uncommon for new information to come to light during the first interview with a complainant, as before the first interview complainant has not been questioned in detail with respect to the allegations. This is particularly true in sexual misconduct investigations.

22. Given this new information, I immediately contacted Title IX Coordinator Aishah Casseus, who was also unaware of any allegations of nonconsensual intercourse. I told her that there were two separate allegations: (1) that Jane Roe was incapacitated (due to alcohol) when John Doe engaged in sexual intercourse or, alternatively, she withdrew consent during sexual intercourse during the night of October 15, 2021 into October 16, 2021; and (2) that she was incapacitated (due to sleep) when Respondent digitally penetrated her vagina without consent on the morning of October 16, 2021. [ECF No. 6-6 at 1].

23. On September 1, 2022, Ms. Casseus sent an updated Notice of Allegations ("Updated Notice") to John Doe, a true and correct copy of which was attached to Plaintiff's Motion at ECF No. 6-5. The Updated Notice stated, in relevant part:

> The Claimant advises Investigator Telligman that you allegedly engaged in sexual assault via sexual intercourse with her on October 16, 2021. Claimant alleges that she initially consented to sexual intercourse with you in her residence hall room, but that she withdrew consent by stating "this doesn't feel good." In summary, Claimant is alleging this instance of withdrawn consent in addition to the separate instance of alleged non-consensual digital penetration which allegedly happened a few hours later and was referenced in the original Notice of Allegations.

24. The purpose of the supplemental notice was to give Doe notice of the additional allegation prior to any interview with him.

25. I did not presume the additional allegation was true, as alleged in Plaintiff's Complaint [ECF No. 1 at ¶ 424]. The additional information did not alter my presumption that John Doe had not violated the Policy. Acknowledging that I received the new allegations was likewise not an indication that I believed Jane Roe was more credible; it was simply information provided to Doe about Roe's allegations. I did not make any credibility determinations concerning this additional information.

26. It makes little sense to suggest that making this disclosure to Doe demonstrates bias; to the contrary, if I were exhibiting bias, I would have *withheld* this information from Doe rather than immediately informing him of the additional allegations against him.

27. The Updated Notice did not change the nature of my investigation. From the time of the original Notice, John Doe was on notice that he was under investigation for violation of the Policy for sexual assault. That was still true following the Updated Notice. The original Notice alleged that John Doe committed sexual assault in violation of the Policy. The Updated Notice

6

41151781.3

Case 1:23-cv-00114-KDB-SCR    Document 20-7    Filed 02/16/23    Page 6 of 19

also alleged that John Doe committed sexual assault in violation of the Policy, though it was clarified to note that there were allegations of two separate incidents.

28. Neither I nor anyone else from the University interviewed John Doe about the allegations prior to his receipt of the Updated Notice.

29. Throughout the process, I made it clear to both John Doe and Jane Roe that they could submit any documents or other evidence into the record they believed were relevant. All documents that I gathered and interview transcripts of all witnesses and parties were provided to both parties.

30. On August 25, 2022, I informed both parties in writing that they should send me all relevant text messages, social media messages, emails, and any other communications or documents. A redacted copy of the correspondence to John Doe is attached hereto as <u>Exhibit B</u>.

31. Jane Roe provided her medical records from her visit to the Wake Forest University Student Health Service on October 18, 2021. As explained in my Investigation Report, I requested a release from Jane Roe so I could discuss the medical record with the Director of Student Health. Jane Roe declined to provide a release. [ECF No. 6-6 at 7]. Jane Roe has a right under federal law to decline to allow the University access to medical records as part of its investigation. *See* 34 C.F.R. 106.45(b)(1)(x); *see also* Policy at § 2B.05.

32. I interviewed John Doe on four separate occasions: September 8, September 15, September 26, and October 6 of 2022. I also interviewed Jane Roe on four separate occasions: August 30, September 7, October 5 and October 12 of 2022. I interviewed six additional witnesses identified by the parties as having relevant information. A detailed summary of these interviews is provided in my Investigation Report. [ECF No. 6-6].

33. I never suggested particular answers to either Jane Roe or John Doe in my interviews as alleged by Plaintiff. [ECF No. 1 at ¶¶ 310-312]. The Complaint picks out of context the type of clarifying questions that I ask both parties as an investigator.

34. For example, Plaintiff alleges I suggested an answer when I said "I'm going to make an assumption based on what you just told me, it may be that your goal there was just to get the drug testing, not to report anything necessarily." That is only part of my question and it omits the context of the interview and relevant other words stated. In reality, my question was based on a medical record that both myself and Jane were simultaneously reading at the time and which specifically stated and I said in my question, "it says chief complaint, requesting drug testing."

35. As an investigator it is my job to ask clarifying questions to create a record that is thorough, accurate and complete. Students are sometimes difficult witnesses, but it is important to clarify their testimony accurately. I occasionally ask leading questions of witnesses to help ensure a clear record and direct witnesses to specific information I am asking about.

36. I used the same techniques when questioning John Doe. For example, during our initial interview on September 8, 2022, we had the following exchange:

> John Doe: Yeah, I don't. I don't want to say I'm positive. But if I had to guess, I would assume the sorority date function kind of wrapped up by then.
>
> Jessica Telligman: you don't remember, and I'm assuming that's not because you were too impaired to remember. It's because of the passage of time?
>
> John Doe: Correct. I, again, I want to make clear that I was fully coherent during this event. I was not blackout. My memory was not spotty due to alcohol. It's just a matter of being so long ago that certain events don't stick in my mind that long.

8

41151781.3

> Jessica Telligman: And when was the first point that you were notified that there was possibly a problem with the date night, and the reason I ask that is because sometimes that's a memory marker, right?
>
> John Doe: Sure.
>
> Jessica Telligman: So if you know, for example, a week later that there was an issue, you may have that as a marker versus a year later. So the question is, when did you first think oh, gosh, there might have been a problem?
>
> John Doe: April 2022, when I was notified about the allegations.

37. Plaintiff also alleges that I was biased because I did not specifically request his medical records to show a history of his erectile dysfunction. [ECF No. 1 at ¶ 384].

38. While John Doe stated in his interviews that he could not get an erection on the night in question, he never disclosed to me a history of occasions in which we was unable to get or maintain an erection or that he had sought medical treatment for the condition. I consistently requested that John Doe provide any supporting documents or evidence to me during the investigation. He never provided or referenced any medical records or treatment.

39. Plaintiff further alleges that the University failed to take any action on John Doe's claims of retaliation from Jane Roe's friends. [ECF No. 1 at ¶¶ 220, 452-56]. That is incorrect.

40. On September 8, 2022, John Doe complained that friends of Roe were saying things to him and that several bumped into him at a party, he believed on purpose. He said he just wanted to let me know that it was happening because he believed Jane Roe was going to keep what happened confidential. He was bothered that Jane Roe was telling people what happened.

41. John Doe requested a meeting with me on October 21, 2022 regarding a recent time in Las Vegas when one of Jane Roe's friends bumped into him in a night club. I explained the

process for filing a formal complaint against Jane Roe's friends should he believe he was being harassed or targeted.

42. On November 1, 2022, John Doe informed me he wanted to file a formal complaint against three individuals for retaliation. I referred him to Ms. Casseus who sent him an email with instructions on how to file a formal complaint. A copy of the email is attached as <u>Exhibit C</u>.

43. After Doe submitted the formal complaint, it was forwarded it to the Dean of Students Office, which is consistent with the Policy. *See* Policy at § 1.01 ("Inquiries concerning discrimination or harassment based on a protected characteristic or status other than sex or gender may be referred to the Dean of Students for the College or the relevant School (for students). . .")

44. The Complaint is still pending. However, it is my understanding that John Doe has not responded to communications from the Assistant Dean and has not pursued his claims.

45. John Doe's allegations of retaliation against Jane Doe's friends had no effect, one way or the other, on the substance of my investigation or the information I provided in my Investigation Report. As the allegations of retaliation occurred well after the alleged sexual misconduct, they were not relevant to my charge to gather facts relevant to whether the two instances of alleged sexual misconduct took place or not.

46. Plaintiff also alleges that it was improper for me to respond to questions from John Doe's advisor by referring him to my Investigation Report. I answered that way when the advisor appeared to be attempting to mischaracterize the information in my Report or asked repetitive questions. John Doe does not provide any concrete examples of this practice in his Complaint.

47. When I conduct an investigation, I don't form an opinion as to the allegations and I do not to characterize the evidence. It is my responsibility to remain neutral and objective. By

referencing my report, I was simply affirming that what was in the report remained true and accurate depictions of the evidence I gathered in the course of my investigation.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of February, 2023.

*Jessica Telligman*
Jessica Telligman

# Exhibit A
# Telligman Decl.



**Title IX Office**

August 22, 2022

[REDACTED]
Sent electronically to [REDACTED]

**PERSONAL AND CONFIDENTIAL**

[REDACTED]

Re: Investigator Appointment

Dear [REDACTED],

I am writing to inform you that an investigator has been appointed to the formal complaint. Jessica Telligman, who is included in this email, will be the investigator for this matter.

You have the opportunity to indicate in writing within two (2) days any alleged conflicts of interest or bias on the part of the assigned investigator. This must be submitted to me by 5:00 pm EST on August 24, 2022.

If it is determined that a material conflict of interest or material bias exists, a new investigator will be promptly assigned. Please let me know if you have any questions or concerns.

Sincerely,

Aishah Casseus
Director of the Title IX Office/504 Coordinator

CC: Jessica Telligman, Assistant Director, Title IX Office
    Olivia Bray, Case Coordinator
    John Fitzgerald
    Carolym Bergamini

1834 Wake Forest Road | Reynolda Hall, Suite 307 | Winston-Salem, North Carolina 27109 | p 336.758.7258 | titleixcoordinator@wfu.edu

Case 1:23-cv-00114-KDB-SCR   Document 20-7   Filed 02/16/23   Page 13 of 19

# Exhibit B
## Telligman Decl.



**Title IX Office**

August 25, 2022

[REDACTED]
Sent electronically to [REDACTED]

**PERSONAL AND CONFIDENTIAL**

Re: Interview Scheduling

Dear [REDACTED],

As you know, I have been appointed to investigate the allegations of Sexual Harassment (by alleged sexual assault) that [REDACTED] submitted via a Formal Complaint.

I would like to schedule my initial interview with you. I plan to meet with you in a conference room in Reynolda Hall. Let me know your availability for next week. I am copying John Fitzgerald on this letter and understand that he is an advocate for you. Mr. Fitzgerald may accompany you during this meeting. I will audio record the session.

Also, please go ahead and email me any messages, emails, or photos you have related to the allegations.

I look forward to hearing from you.

Sincerely,

*Jessica R Telligman*

Jessica Telligman
Assistant Director, Title IX Office

CC: Olivia Bray, Case Coordinator

1834 Wake Forest Road | Reynolda Hall, Suite 307 | Winston-Salem, North Carolina 27109 | p 336.758.7258 | titleixcoordinator@wfu.edu

Case 1:23-cv-00114-KDB-SCR   Document 20-7   Filed 02/16/23   Page 15 of 19

# Exhibit C
## Telligman Decl.

**From:** Olivia Bray <brayoy@wfu.edu>
**Sent:** Tuesday, November 1, 2022 4:38 PM
**To:** 20211057+wfu@efc.maxient.com
**Subject:** Fwd: Formal Claim Regarding Harassment


**Olivia Y. Bray**
Case Coordinator
Wake Forest University
Title IX Office
Reynolda Hall 307
Winston-Salem, NC 27109
brayoy@wfu.edu
p 336.758.1969*

*Please leave a message if you get my voicemail.*
**Confidentiality Notice:** Email is not a secure form of communication and confidentiality cannot be ensured. This email message, along with any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender by email and destroy all copies of the original message. Please note that email may not be checked on a daily basis, particularly on weekends and holidays. If you are in need of emergency assistance, please call 911.


---------- Forwarded message ---------
From: **Casseus, Aishah** <casseua@wfu.edu>
Date: Tue, Nov 1, 2022 at 3:11 PM
Subject: Re: Formal Claim Regarding Harassment
To: [REDACTED]
Cc: Telligman, Jessica <telligjr@wfu.edu>, Olivia Bray <brayoy@wfu.edu>, [REDACTED], <jfitznc@triad.rr.com>


Hello [REDACTED],

Investigator Telligman forwarded your email to me regarding undergraduate students [REDACTED] [REDACTED], and [REDACTED]. We take retaliation very seriously in the Title IX Office and will follow our policy with regard to any alleged violations. To file a complaint with my office for retaliation, you would submit that in writing to me. You would not use the online formal complaint form. An email is fine. Pursuant to our Title IX Policy (Section 1.02), I would assign the complaint to the Dean of Students Office if it does not allege sex or gender discrimination/harassment.

With regard to [REDACTED], you reference slander which is not a Title IX policy violation. Slander typically references a civil court action, which is open to you and separate from the University.

You may also proceed directly to the Dean of Students if you would like to seek redress against another student for allegations which fall under the Student Code of Conduct (general harassment, bullying, harm to others, etc). Jim Settle, Associate Dean of Students, is who you should contact if you would like to proceed with a Code of Conduct allegation. You can email him at settlej@wfu.edu.

I understand that Investigation Telligman spoke with you last week regarding [REDACTED] and [REDACTED] and Investigator Telligman plans to meet with both students to ask them to avoid you going forward. I would like to hear from you before Investigator Telligman meets with them if you plan to file a complaint against those students. Please advise as soon as possible.

Sincerely,

Aishah Casseus

On Tue, Nov 1, 2022 at 1:12 PM Telligman, Jessica <telligjr@wfu.edu> wrote:

> ---------- Forwarded message ---------
> From: [REDACTED]
> Date: Tue, Nov 1, 2022 at 11:37 AM
> Subject: Formal Claim Regarding Harassment
> To: Jessica Telligman <telligjr@wfu.edu>
> Cc: C[REDACTED], John Fitzgerald <jfitznc@triad.rr.com>
>
> Good Morning Jessica,
>
> I am writing this email to let you know that I intend to file a formal complaint for slander and intimidation against [REDACTED] for calling me a 'rapist' in a text to [REDACTED] Even though [REDACTED] did not have any evidence that I had done anything to [REDACTED], she purposefully slandered my good name in an attempt to get me get kicked out of my fraternity. I also believe that [REDACTED] allegation was an attempt to intimidate[REDACTED] to convince the fraternity to kick me out. I want to know if the complaint I will be filing against [REDACTED] is considered ancillary to the existing case or would it be considered a separate complaint entirely? Please advise me if I should use the existing TITLE IX form on-line to file my complaint? In the alternative, please let me know if someone from the TITLE IX office is in charge of filing the complaint against [REDACTED] on my behalf?
>
> I also intend to file formal complaints against [REDACTED] [REDACTED] and [REDACTED]s other unnamed friends for (1) pouring beer on me at an off-campus party and (2) for purposefully "bodychecking" me in Las Vegas as well as the other instances I've discussed with you. I believe that the actions of all of these WF students were done in order to intimidate and harass me. I cannot be sure if [REDACTED]friends wanted to intimidate me into not defending myself against [REDACTED] alleged claims or were the women just harassing me for their own enjoyment? In either case, I believe the TITLE IX rules specifically protect a student in my position from intimidation and harassment from other students arising out of a complaint filed with the TITLE IX office. That being the case, please advise me whether the complaints I intend to file against these women would be considered ancillary to the existing case or would they be considered separate complaints? As with my complaint against [REDACTED] above, I need to know whether I should use the online WF complaint form to file my claims or is someone from the TITLE IX office responsible for filling the complaints on my behalf in the existing case?
>
> Thank you,
> Paul

--
**Jessica Harris Telligman, JD**
**Assistant Director, Title IX Office**
Wake Forest University
Reynolda Hall \ Suite 307
telligjr@wfu.edu
p 336.758.4997 \ titleix.wfu.edu

Confidentiality Notice: Email is not a secure form of communication and confidentiality cannot be ensured.  This email message, along with any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure, or distribution is prohibited.  If you are not the intended recipient, please contact the sender by email and destroy all copies of the original message.  Please note that email may not be checked on a daily basis, particularly on weekends and holidays.  If you are in need of emergency assistance, please call 911.