IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JOHN DOE, | |
| Plaintiff, | |
| v. | Civil Case No. 1:23-cv-114 |
| WAKE FOREST UNIVERSITY, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
WAKE FOREST UNIVERSITY'S MOTION TO DISMISS THE COMPLAINT**

Defendant Wake Forest University (the "University") submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff John Doe's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

**INTRODUCTION**

Plaintiff asserts two causes of action – one under Title IX and one for breach of contract. This Court has preliminarily addressed Plaintiff's Title IX claim in its disposition of Plaintiff's prior motion, but it has never considered whether Plaintiff's Title IX claim fails for lack of causation. Nor has this Court considered Plaintiff's breach of contract claim. The University accordingly moves for dismissal of the Complaint on two grounds.

Plaintiff's breach of contract claim fails because under North Carolina law student handbooks and other published policies and procedures do not constitute legally binding contracts between a University and its students unless expressly incorporated into a standalone written contract. *See, e.g., Shaw v. Elon Univ.*, 400 F. Supp. 3d 360, 365 (M.D.N.C. 2019). Where, as here, a plaintiff student alleges that a university's published handbook constitutes an express or implied

-1-
41255610.5

Case 1:23-cv-00114-KDB-DSC   Document 32   Filed 03/17/23   Page 1 of 16

contractual commitment, North Carolina courts have consistently rejected the existence of a contractual relationship because such handbooks are unilateral in nature and subject to change without notice by the university. As a result, Plaintiff cannot establish a legally cognizable contractual relationship under North Carolina law and his breach of contract claim fails as a matter of law.

Plaintiff's Title IX claim fails because he does not allege facts that plausibly support the conclusion that any alleged sex discrimination was the "but-for" cause of any harm to him. Plaintiff raises a number of grievances with the investigation process, against the hearing officer, and concerning the procedure at his disciplinary hearing. This Court has already determined (albeit on a fuller record) that many of those allegations are not supported by the facts. [ECF No. 27 at 13, n.5]. But even accepted as true, those allegations cannot form the basis for a Title IX claim because the University's own error-correction process – Plaintiff's internal appeal – addressed each of Plaintiff's purported bases for sex discrimination and concluded that the decision to suspend Plaintiff was supported by the record (the "Appellate Decision"). *See* Compl. at ¶¶ 246-49; *see also id.* at Ex. H to Declaration of John Doe, Appellate Decision [ECF No. 6-9]. Plaintiff does not allege any facts supporting a conclusion that the Appellate Decision was flawed, improper, or – as required here – motivated by bias based on Plaintiff's sex. Because Plaintiff has not, and, more importantly, cannot, plausibly allege that the Appellate Decision was the result of improper bias, his allegations that an earlier stage of the process involved unlawful bias is insufficient; the unchallenged determination of the appellate officer breaks the chain of causation necessary to sustain a Title IX claim. And because Plaintiff cannot allege that discrimination was the "but-for" cause of the University's decision, Plaintiff cannot prevail on an essential element of his claim.

# RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was suspended for one year from the University after he was found to be responsible for sexually assaulting a fellow Wake Forest student ("Jane Roe). [ECF No. 27 at 4]. Because the Court is already familiar with the facts of this case [ECF No. 27], the University will reiterate only the facts and allegations most relevant to this Motion.

## I. Wake Forest Policies.

The University is required to investigate and respond to complaints of sexual harassment and assault by, and/or against, University students or employees. *See* 20 U.S.C. §1681 *et seq.*; 34 C.F.R. Part 106 *et seq*. To fulfill its obligations, the University implemented the Wake Forest University Sex and Gender Discrimination and Harassment Policy and Title IX Sexual Harassment and Non-Title IX Sexual Misconduct Grievance Procedures (the "Policy"), attached as **Exhibit A**.[1] The Policy sets forth procedures applicable to all students and employees at the University. It is updated regularly to address changes to the federal Title IX regulations or other necessary revisions. Plaintiff does not allege that the Policy is incorporated into any written contract between the University and him.

The University's Undergraduate Student Handbook explains that policies and procedures governing student conduct can be changed by the University at any time:

> **Changes to Policies and Procedures**
>
> Wake Forest University reserves the right to change policies and procedures at any time and without prior notice. Additionally, errors and omissions in published documents (written or electronic) may be corrected at any time. Students will be notified via email of changes to policies or procedures that occur during the academic

---

[1] In considering a 12(b)(6) motion, courts may consider exhibits such as purported contracts that are integral to, and relied upon, in the complaint and whose authenticity is not in dispute. *Forshaw Indus., Inc. v. Insurco, Ltd.*, 2 F. Supp. 3d 772, 782 (W.D.N.C. 2014).

> year. Changes will be reflected in the body of the Handbook as it
> appears online. This handbook was last updated on 09.13.2021.

*See* Wake Forest University, *Undergraduate Student Handbook*, updated Feb. 27, 2023, *available at* https://studentconduct.wfu.edu/undergraduate-student-handbook/ (accessed Mar. 16, 2023), relevant excerpt attached as **Exhibit B**.

## II. The Allegations in the Complaint.

### A. Allegations related to Plaintiff's violation of Title IX claim.

Although Plaintiff alleges a number of purported errors as part of the University's investigation and hearing, Plaintiff does not allege any facts plausibly supporting a conclusion of unlawful bias in connection with the final stage of the University's process. Plaintiff submitted his internal University appeal of the Final Outcome Letter [ECF No. 6-7] on three bases: "(i) procedural irregularities that affected the outcome; (ii) the Title IX Coordinator, investigator, or hearing or sanctions officers had a conflict of interest or bias that affected the outcome; and (iii) the sanction . . ." *See* Compl. at ¶¶ 245-46. The University's appeal officer determined that Plaintiff had failed to demonstrate procedural irregularities and found no bias on the part of Hearing Officer Dixie Wells, in addition to concluding that the findings of the hearing officer were supported by the record. *Id.* ¶ 247. The appeal officer's determination was the final word on Plaintiff's violation of the Policy, but Plaintiff makes no allegations directed at the appeal officer, his process, or his determination.

### B. Allegations related to Plaintiff's breach of contract claim.

Plaintiff alleges that he had a contractual relationship with the University "by virtue of [his] enrollment at Wake Forest. . .," *id.* at ¶ 403, but does not allege that he signed any document or contract that incorporated the Policy into a written contract between him and the University. Rather, Plaintiff alleges only that "through the documents [the University] publishes and provides

-4-

to students, Wake Forest makes express and implied contractual commitments to students involved in the disciplinary process and/or investigation or potential violations of the policies." *Id.* at ¶ 406.

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019). Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (citing *Ashcroft*, 556 U.S. at 678).

## ARGUMENT

I. **Plaintiff's breach of contract claim must be dismissed because the Policy is not a contract under North Carolina law.**

Student handbooks and other policies, guidelines, bulletins, codes of conduct, manuals, or other procedures that universities use to govern community-member conduct are not enforceable contracts. *Shaw v. Elon Univ.*, 400 F. Supp. 3d 360, 365 (M.D.N.C. 2019) (holding that student policies are not enforceable as contracts under North Carolina law); *Love v. Duke Univ.*, 776

F. Supp. 1070, 1075 (M.D.N.C. 1991), *aff'd*, 959 F.2d 231 (4th Cir. 1992) (holding that a "University Bulletin" was not a binding contract).

Instead, "terms found in such unilaterally produced documents must be explicitly included in or incorporated into a valid and enforceable contract for those terms themselves to become enforceable obligations." *Shaw*, 400 F. Supp. 3d at 365; *Chandler v. Forsyth Tech. Cmty. Coll.*, 294 F. Supp. 3d 445, 458-59 (M.D.N.C.), *aff'd*, 739 F. App'x 203 (4th Cir. 2018) (absent an allegation of an enforceable contract explicitly incorporating policies or procedures from a college handbook, a student cannot premise a breach of contract claim on those policies and procedures).

These federal holdings are grounded in North Carolina state courts' consistent rulings that unilateral manuals and policy handbooks are not independently enforceable contracts and do not become a part of any enforceable contract unless expressly so incorporated. *See, e.g.*, *Black v. W. Carolina Univ.*, 109 N.C. App. 209, 213 (1993) (University procedures could not form basis of contract claim unless expressly incorporated into a contract); *Walker v. Westinghouse Elec. Corp.*, 77 N.C. App. 253, 259-60 (1985) ("[T]he law of North Carolina is clear that unilaterally promulgated employment manuals or policies do not become part of the employment contract unless expressly included in it"); *Rajpal v. Livingstone Coll., Inc.*, 212 N.C. App. 692 (2011) (faculty handbook that was not incorporated by reference into the employment agreement was not a contract); *see also Montessori Children's House of Durham v. Blizzard*, 244 N.C. App. 633, 640-41 (2016) (rejecting a breach of contract claim based on "statements contained on a private school's webpage or in its advertisements that are not expressly incorporated by reference into a contract for admission").[2]

---

[2] Compare with *Supplee v. Miller-Motte Bus. Coll., Inc.*, 239 N.C. App. 208, 219-20 (N.C. Ct. App. 2015) (student catalog was a contract because it was explicitly incorporated into

In *Black*, a full-time assistant professor argued that she was entitled to certain rights under the University of North Carolina Code and brought a breach of contract action against Western Carolina University when her contract was not renewed. 109 N.C. App. at 213. Her breach of contract claim was held to be legally deficient because "neither of the plaintiff's employment contracts expressly incorporated the provisions of the UNC Code" and therefore the UNC Code was not part of any contract. *Id*. Similarly, in *Rajpal*, the plaintiff asserted a breach of contract claim against his college employer for failure to follow the terms set forth in the faculty handbook, arguing that the phrase "faculty member will abide by the policies and procedures" in the handbook created a contractual relationship. 212 N.C. App. 692, *5 (2011). The court disagreed and found that there was neither an express incorporation of the handbook's procedures into an agreement nor an expression of an intent by the college to be bound by the terms. *Id*.

Following North Carolina state law, federal courts have routinely held that unilateral university student handbooks, policies, and procedures are not enforceable contracts. In *Shaw v. Elon University,* the plaintiff asserted a breach of contract claim when his university allegedly failed to follow its disciplinary procedures when it suspended him. *Shaw*, 400 F. Supp. 3d at 363-64. The plaintiff did not allege any written contract that incorporated or included any of the procedures outlined in the Student Handbook. Rejecting a nearly identical theory to that presented by Doe in this case, the court found that the plaintiff did not sign any agreement relating to the Student Handbook (or any agreement at all), so no enforceable contract had been created. *Id*. at 368.

---

agreements signed by the student); *Williams v. Livingstone Coll., Inc.*, No. COA14-696, 2015 WL 660799, at *4 (N.C. Ct. App. Feb. 7, 2015) (same).

In *McClean v. Duke University*, a student alleged that after she was raped and sexually assaulted by another student, the university failed to protect her from subsequent harassment and retaliation as allegedly promised in its policies. 376 F. Supp. 3d 585, 595-96 (M.D.N.C. 2019). Again, this Court dismissed the breach of contract claim, holding that "[u]nilateral manuals and policy handbooks produced by an employer or university are not independent contracts and do not become a part of any contract unless expressly included." *Id*. at 606.

Courts have likewise declined to enforce unilateral policies and procedures as contracts because, as here, institutions can revise the policies and procedures at any time and without consideration from the students. *See, e.g., Cash v. Lees-McRae College, Inc.*, No. 1:18CV52, 2018 WL 7297876, at *12 (W.D.N.C. Aug. 13, 2018), *report and recommendation adopted*, No. 1:18-CV-00052-MR-WCM, 2019 WL 276842 (W.D.N.C. Jan. 22, 2019), *aff'd*, 811 F. App'x 190 (4th Cir. 2020). For instance, in *Cash* the court held that the student handbook governing Title IX proceedings was not a binding contract, particularly because the college had expressly reserved "the right to make changes in the provisions of" the policies. *Id*. Because the policies could be altered by the college "at any time, without consideration, it was not a valid and enforceable contract." *Id*.

These holdings are undergirded by foundational principles of contract: the terms of unilateral policies are not bargained for, so there is no meeting of the minds, and they can be changed by one party at any time, making the contractual obligations unilaterally illusory. In light of these principles, it is unsurprising that further examples of similar holdings abound. *See, e.g., Neal v. Univ. of N. Carolina,* No. 5:17-CV-186-BR, 2020 WL 5775145, at *8 (E.D.N.C. Sept. 28, 2020), *aff'd sub nom. Neal v. E. Carolina Univ.*, 53 F.4th 130 (4th Cir. 2022) (holding that a student catalog was not a binding contract and granting summary judgment to the university);

-8-
41255610.5

*Chandler*, 294 F. Supp. 3d at 459 (M.D.N.C.) (dismissing breach of contract claim because the college's policies and procedures in a student academic planner and handbook did not constitute a contract); *Giuliani v. Duke Univ.*, No. 1:08CV502, 2010 WL 1292321, at *7-8 (M.D.N.C. Mar. 30, 2010) (dismissing breach of contract claim where student handbook and related documents were not expressly incorporated into written contract between university and student).

Here, Plaintiff alleges only: (1) that a contractual relationship was created by virtue of his enrollment at the University (Compl. ¶ 403); (2) through published documents and regulations (such as the Policy) the University "makes express and implied contractual commitments to students. . ." (Compl. ¶ 406); and (3) the University "created express and implied contracts when it offered, and Plaintiff accepted, admission to Wake Forest, and when Plaintiff paid the required tuition and fees." (Compl. ¶ 408). These allegations mirror those consistently found to be insufficient in the foregoing cases. The University has expressly reserved the right to change the provisions in the Policy at any time, and without consideration from the students. Such unilateral agreements cannot constitute an enforceable contract. As a result, Plaintiff's breach of contract claim must be dismissed.

II. **Plaintiff's Title IX claim should be dismissed because he fails to allege that any discrimination was the "but-for" cause of harm to him.**

Plaintiff contends that the hearing officer who determined in the first instance that he was responsible for violating the Policy exhibited bias. This Court has already indicated that Plaintiff's allegations are sufficient to support a conclusion of bias by the hearing officer under a Rule 12 standard where all allegations are accepted as true. [ECF No. 27 at 13].

However, the hearing officer's actions form only one part of the chain of causation that must tie alleged discrimination to harm in order for Plaintiff to state a cognizable Title IX claim. *Sheppard v. Visitors of Virginia State Univ.*, 993 F.3d 230, 236 (4th Cir. 2021) (holding that

-9-
41255610.5

Case 1:23-cv-00114-KDB-DSC    Document 32    Filed 03/17/23    Page 9 of 16

pleading a Title IX discrimination claim on the basis of sex requires "but-for" causation). Conspicuously absent from the Complaint is any allegation that the appeal officer continued the chain of causation as the last-acting and final arbiter of the outcome of Plaintiff's disciplinary process.³ *See generally* Compl. Binding Fourth Circuit authority makes clear that failure to plausibly allege that unlawful bias also affected an independent review of a disciplinary decision is fatal to the causation element of a civil rights claim. *See Neal v. E. Carolina Univ.*, 53 F.4th 130 (4th Cir. 2022).

A plaintiff asserting a Title IX claim challenging a university disciplinary proceeding on grounds of sex discrimination must adequately plead "but-for" causation to make out a prima facie case, that is, a direct causal link between the student's sex and the university's challenged disciplinary proceeding. *Sheppard*, 993 F.3d at 236. Failure to allege discrimination on the basis of sex at every level of the disciplinary process breaks the causal link. *Neal*, 53 F.4th at 152 (holding discrimination claim causal link was broken because an independent panel reviewed and upheld her dismissal); *Oleyar v. Cnty. of Durham*, 336 F. Supp. 2d 512, 518 (M.D.N.C. 2004) (plaintiff failed to prove discrimination because independent, third-party review "further attenuated" any potential discrimination claim); *Rowe v. N. Carolina Agr. & Tech. State Univ.*, 630 F. Supp. 2d 601, 611 (M.D.N.C. 2009) (finding no discrimination where university's stated reason to deny a professor tenure was confirmed by an independent review as unbiased); *Sawicki v. Morgan State Univ.*, No. CIV. WMN-03-1600, 2005 WL 5351448, at *11 (D. Md. Aug. 2, 2005), *aff'd*, 170 F. App'x 271 (4th Cir. 2006) (holding there was no discrimination in adverse employment action, which was upheld by separate and independent appeals).

---

³ To the extent Plaintiff makes other extraneous allegations against other individuals involved in the investigation and hearing, those allegations do not plausibly show the appeal officer was biased in the Appellate Decision.

In *Neal*, the plaintiff brought a claim under the Americans with Disabilities Act ("ADA") against East Carolina University alleging discrimination in dismissing her from her school program on the basis of her disability. *Id*. at 134. The lower court granted summary judgment[4] in the University's favor and the Fourth Circuit affirmed. *Id*. at 135. The Fourth Circuit held that to assert a discrimination claim, a plaintiff must demonstrate causation – *i.e.* that, in that case, that the disability was a "motivating cause" of the university's decision. *Id*. The Fourth Circuit concluded that the causal link between alleged discrimination and adverse action was broken because an independent panel reviewed and upheld her dismissal from the University. *Id*. at 152. Thus, because an outside, independent review panel with no alleged discriminatory intent agreed with the University's disciplinary action, the plaintiff could not establish causation. *Id*. It is particularly notable that the Fourth Circuit's determination in *Neal* was made under the more relaxed "motivating factor" standard; thus, if an independent review was sufficient in *Neal* to break the chain, it is certainly sufficient here under the more exacting "but-for" standard.

*Collin v. Rectors & Visitors of University of Virginia* underscored the same point when the Fourth Circuit held that an unbiased review of an adverse employment decision broke the chain of causation necessary to maintain a claim for discrimination. 163 F.3d 598, *2 (4th Cir. 1998) (per curium). In *Collin*, a University of Virginia professor sued after he was denied tenure, alleging that other faculty members weighing his promotion case engaged in racial discrimination. *Id*. at *1. The professor appealed the tenure committee's denial to the Provost. *Id*. The Provost conducted a de novo review of the professor's record and his tenure application, and denied the appeal. *Id*.

---

[4] That *Neal* was reviewed by the Fourth Circuit on an appeal from entry of summary judgment is of no moment; the focus of the Court's analysis was not on whether no reasonable jury could find for the plaintiff, but rather that the chain of causation is broken where an unbiased review of a determination draws the same conclusion as an allegedly biased review. So too with *Collin*, *infra*.

41255610.5

Case 1:23-cv-00114-KDB-DSC   Document 32   Filed 03/17/23   Page 11 of 16

While the plaintiff made allegations of bias against several faculty members involved in the initial decision, there were no allegations of bias directed at the Provost. *Id*. The district court held, and the Fourth Circuit affirmed, that because the Provost's independent review was "untainted . . . by any hint of racial bias" there was insufficient causation to state a *prima facie* case of discrimination. *Id*. at *2.

*Neal* is controlling here and requires dismissal (*Collin*, though not controlling as an unpublished opinion, underscores why *Neal* is both correct and determinative). It is undisputed that Plaintiff appealed the hearing officer's decision on the three grounds available to him: (1) procedural irregularities that affected the outcome; (2) the Title IX Coordinator, investigator, or hearing or sanctions officers had a conflict of interest or bias that affected the outcome; and (3) the sanction was incommensurate to the gravity of the sexual harassment.[5] *See* Compl. at ¶ 246. It is likewise undisputed that the appeal officer denied the appeal on all three grounds, and specifically found "no demonstrated bias in favor of the Claimant and/or against [Plaintiff]. . ." *Id.* at ¶ 248.

As in *Collin* and *Neal*, the appeal officer was independent of the rest of the process, brought in from outside the University to review the hearing officer's decision. *See* Compl. at ¶ 247. Plaintiff does not allege that the appeal officer had any bias or discriminatory intent against Plaintiff. *See generally* Compl. Nor does Plaintiff allege any specific issue with the Appellate

---

[5] Plaintiff goes to great lengths in his Title IX claim to allege outside pressures forced the University to respond aggressively to allegations of sexual misconduct leading to bias against him. *See e.g.* Compl. at ¶¶ 385-401. When the individuals conducting the disciplinary proceedings are outsiders who are not aware of alleged "external pressures," such circumstantial evidence does not support a claim for discrimination. *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 793 (7th Cir. 2022); *Doe v. Miami Univ.*, 882 F.3d 579, 602 (6th Cir. 2018) (Plaintiff's failure to allege how external pressures affected decision-makers insufficient to raise presumption of bias). Plaintiff does not allege that *either* the hearing officer or the appeal officer were aware of such alleged pressures (if they existed at all).

Decision itself, which found Plaintiff's allegations to be without merit. *See* Compl. at ¶ 248. Indeed, the very purpose of having an outside independent reviewer come in to review disciplinary decisions is to root out potential problems or bias and allow the University to internally error-correct to avoid suits like this one.

In sum, Plaintiff's failure to allege bias by the appeal officer breaks the causal link. Without the chain of causation, Plaintiff cannot allege a *prima facie* case of discrimination. *Neal*, 53 F.4th at 152. Absent plausible allegations of bias against the appeal officer, Plaintiff does not plead the necessary causation – under either standard – to make out a *prima facie* claim for discrimination. As a result, his Title IX claim must be dismissed under binding Fourth Circuit authority.

## **CONCLUSION**

It is not this Court's responsibility to review every disciplinary proceeding and decision as a "super-school disciplinary board." [ECF No. 27 at 8-9 (citing *DeJarnette v. Corning Inc.*, 133 F.3d 293, 298–99 (4th Cir. 1998))]. Through the University's federally-mandated procedures, the independent appeal officer reviewed the investigation, hearing, and sanction, and found no bias and no meaningful deviation from established procedures. These are precisely the sort of error-correcting processes that institutions concerned with fairness and process *should* have, and the process worked in this case as it was supposed to. Respectfully, this is not a case in which the federal courts should act as super-appellate officer.

For all the foregoing reasons, the University's Motion should be granted, and this case should be dismissed, with prejudice.

-13-
41255610.5

Case 1:23-cv-00114-KDB-DSC   Document 32   Filed 03/17/23   Page 13 of 16

Dated: March 17, 2023                    Respectfully Submitted,


                                         */s/ Joshua W.B. Richards*
                                         Joshua W.B. Richards (Special Appearance)
                                         Douglas A. Sampson (Special Appearance)
                                         SAUL EWING LLP
                                         Centre Sq. West, 1500 Market St.
                                         38th Floor
                                         Philadelphia, PA 19102
                                         215-972-7737
                                         joshua.richards@saul.com
                                         douglas.sampson@saul.com

                                         and

                                         William K. Davis (NCSB No. 01117)
                                         Alan M. Ruley (NCSB No. 16407)
                                         Mark A. Jones (NCSB No. 36215)
                                         BELL, DAVIS & PITT, P.A.
                                         P.O. Box 21029
                                         Winston-Salem, NC 27120
                                         336-722-3700
                                         wdavis@belldavispitt.com
                                         aruley@belldavispitt.com
                                         mjones@belldavispitt.com

                                         *Counsel for Defendant Wake Forest University*

41255610.5

| | |
|---|---|
| JOHN DOE, | : |
| Plaintiff, | : |
| v. | : Civil Case No. 1:23-cv-114 |
| WAKE FOREST UNIVERSITY, | : |
| Defendant. | : |

## **CERTIFICATION OF WORD COUNT**

Pursuant to Local Rule 7.3(d), I certify that Wake Forest University's Memorandum of Law in Support of it Motion to Dismiss contains 4,040 words, exclusive of the caption and signatures. The word count was obtained using the "word count" function in Microsoft Word. Therefore, the Memorandum complies with the length restrictions in Local Rule 7.3(d).

                                                                                      */s/ Douglas A. Sampson*
                                                                                      Douglas A. Sampson

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JOHN DOE, | : |
| Plaintiff, | : Case No. 1:23-cv-00114 |
| v. | : |
| WAKE FOREST UNIVERSITY, | : |
| Defendant. | : |

### CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of March, 2023, a copy of the foregoing Memorandum of Law in Support of Defendant, Wake Forest University's Motion to Dismiss the Complaint was served on all parties via the court's ECF system

                                                              */s/ Douglas A. Sampson*
                                                      Douglas A. Sampson (Special Appearance)

41255441.2

Case 1:23-cv-00114-KDB-DSC   Document 32   Filed 03/17/23   Page 16 of 16