UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

JOHN DOE,

        Plaintiff,

-against-

WAKE FOREST UNIVERSITY,

        Defendant.

Case No. 1:23-cv-00114

**PLAINTIFF'S MEMORANDUM OF LAW IN PARTIAL OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500

-and-

EKSTRAND AND EKSTRAND, LLP
110 Swift Avenue, Second Floor
Durham, North Carolina 27705
(919) 416-4590

1

**INTRODUCTION**

Plaintiff John Doe ("Plaintiff" or "John" or "Doe") submits this Memorandum of Law in partial opposition to Defendant Wake Forest University's ("Defendant" or "Wake Forest" or the "University") Motion to Dismiss Plaintiff's Complaint (ECF No. 31), pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff's opposition responds to Defendant's request to dismiss his breach of contract claim only, as the Court previously denied Defendant's request to dismiss Plaintiff's Title IX claim, on March 17, 2023. (ECF No. 33).[1]

Plaintiff's Verified Complaint (ECF No. 1) adequately pleads a breach of contract claim. Accepting Plaintiff's factual allegations and the reasonable inferences therefrom as true, Plaintiff has demonstrated that the University's Title IX policies and procedures created an enforceable contract between Plaintiff and the University, and that the University violated several provisions of that agreement in carrying out its disciplinary proceedings and ultimately, in suspending John Doe from Wake Forest for a period of one year, beginning at the start of his final semester. Importantly, while asserting that there was no enforceable contract created between the University and Doe, in seeking dismissal of Plaintiff's breach of contract claim Wake Forest does not directly dispute that it violated provisions of its Sex and Gender Discrimination, Harassment, and Misconduct Policy (the "Policy") and the Title IX Sexual Harassment and Non-Title IX Sexual Misconduct Grievance Procedures (the "Procedures"). These breaches include: (i) the University's failure to provide Plaintiff proper notice of the charges against him; (ii) failure to presume Plaintiff not responsible throughout the disciplinary proceedings; (iii) failure to conduct a fair hearing; and

---

[1] *See* ECF No. 33; "the Court has initially reviewed Defendant's Motion and determined that Plaintiff should be required to file a partial response to the Motion on or before March 31, 2023. Specifically, Plaintiff is directed to respond to Defendant's motion to dismiss Plaintiff's claim for Breach of Contract, but not Plaintiff's Title IX claim. Defendant's motion to dismiss the Title IX claim will be denied for the reasons previously stated in Doc. Nos. 25, 27, and the February 17, 2023 hearing. . ."

(iv) failure to address Plaintiff's retaliation claim. Cmplt., ¶¶ 414, 422-425, 323-335, 459. These specific violations amount to failures on the part of the University to follow the procedures promised to its students before imposing discipline, in this case a suspension, thus permitting Plaintiff's breach of contract claim to proceed. For the reasons discussed below, Defendant's motion should be denied in its entirety.

## FACTUAL BACKGROUND[2]

Plaintiff John Doe, a second semester senior with an anticipated graduation date of May 2023, was suspended from Wake Forest University in January of 2023, after being erroneously found responsible for sexual misconduct in relation to an encounter with a fellow student, Jane Roe, which occurred on October 15-16, 2021. Cmplt., ¶¶ 1, 10. The encounter that ultimately led Jane Roe to file the complaint against John Doe was not the first sexual encounter between the two. Instead, John and Jane had participated in an ongoing consensual sexual relationship which involved approximately eight to nine other instances of sexual activity. Cmplt., ¶ 3. During each of these occasions, including on the night of October 15-16, 2021, both parties demonstrated their clear consent through their actions. Cmplt., ¶ 4. Notwithstanding, six months later, in April of 2022, Jane filed a complaint against John alleging non-consensual sexual activity. Cmplt., ¶ 5.

On April 13, 2022, Title IX Director Aishah Casseus ("Casseus") sent John a Notice of Allegations indicating he was alleged to have engaged in "sexual harassment by sexual assault" in violation of the University's Sex and Gender Discrimination and Harassment Policy and the Title IX Sexual Harassment and Non-Title IX Sexual Misconduct Grievance Procedures. Cmplt., ¶¶ 166-167. Specifically, Jane alleged that she was unable to consent to sexual activity due to incapacitation. Cmplt., ¶ 168. After a failed attempt at alternative resolution, Assistant Director of

---

[2] Plaintiff refers the Court to his Verified Complaint (ECF No. 1) for a detailed recitation of the facts.

the Title IX Office, Jessica Telligman ("Telligman") was appointed to serve as the investigator on the matter, on August 22, 2022. Cmplt., ¶¶ 173-182. After Telligman interviewed Jane, Casseus provided John with an Updated Notice of Allegations on September 1, 2022, stating that Jane was also alleging that John sexually assaulted her when he engaged in sexual intercourse with her, on October 16, 2021. Cmplt., ¶¶ 184-186. As an alternative to her initial claim that she was unable to consent due to incapacitation, Jane now alleged that she initially consented to sexual intercourse, but subsequently withdrew her consent by stating "this doesn't feel good." Cmplt., ¶ 186. Throughout the investigation, Plaintiff consistently reported that Jane was not incapacitated, every sexual act between him and Jane on the evening of October 15-16, 2021 was consensual, Jane was an active and fully engaged participant at all times, and they never engaged in sexual intercourse because he was unable to maintain an erection. Cmplt., ¶¶ 146, 149-150, 154, 158.

Telligman interviewed Roe, Doe and several witnesses before issuing the Title IX Investigation report on November 4, 2022. Cmplt., ¶ 201. The Report included select portions of Jane's medical records, indicating that she visited the University Student Health Service on October 18, 2021. Cmplt., ¶ 204. The medical records disclosed that Jane "denie[d] sexual assault," and revealed numerous inconsistencies between the account she reported to medical personnel in the days following the encounter, and the account presented to Investigator Telligman nearly one year later. Cmplt., ¶¶ 206, 208-210.

After filing her complaint with the University, Jane approached the Secretary of John's fraternity and the head of the judicial board, to discuss her allegations and demand that John be kicked out of the fraternity. Cmplt., ¶ 214. When the secretary advised Jane that she should continue to utilize the University's Title IX process, Jane became angry, berated them, called them names and threatened to tell people that their fraternity supports sexual assaulters. Cmplt., ¶ 216.

4

Thereafter, Jane's friends also began reaching out to the fraternity and accusing it of not taking the allegations seriously, referring to John as a "rapist" in a text message on April 29, 2022. Cmplt., ¶ 217. As the investigation proceeded, Jane's friends engaged in further retaliatory actions against John on several occasions, which included elbowing John in his side, telling him to leave a bar, pouring beer on him, and forcing a shoulder into his back. Cmplt., ¶ 219. Though John repeatedly addressed his concerns about such retaliation and made clear his desire to pursue a complaint on this basis, the University failed to take any action on John's complaint. Cmplt., ¶¶ 218-220.

John appeared for his Title IX hearing before external hearing officer, attorney Dixie Wells, on November 29, 2022. Cmplt., ¶¶ 221-222. Wells deprived John of a fair and meaningful opportunity to be heard by, among other things: (i) prohibiting John's advisor from cross-examining Jane until the very end of the hearing; (ii) limiting the time for John's advisor to cross-examine Jane because it was getting late into the evening; (iii) allowing Jane's advisor to interrupt John's advisor during his cross-examination of Jane; (iv) allowing Jane's advisor to ask the parties and witnesses every question proposed, while barring John's advisor from asking the parties and witnesses certain questions she arbitrarily deemed irrelevant; and (v) repeatedly interrupting John's advisor during his cross-examination of Jane. Cmplt., ¶ 229.

Wells prepared the hearing outcome letter, issued to John on December 20, 2022, which found John responsible for sexual harassment by sexual assault (rape) and sexual harassment by sexual assault with an object. Cmplt., ¶¶ 230, 240. Wells' failure to provide Doe with a fair hearing was further revealed through her written decision, in which she construed all evidence in Jane's favor. Cmplt., ¶¶ 231, 370. For instance: Wells disregarded Jane's statement to the healthcare provider that she denied a sexual assault and did not recall either consenting to, or having, sexual intercourse with John; overlooked the fact that Jane cherry picked which medical records to

5

provide as part of the investigation and refused to sign a release authorizing Investigator Telligman to discuss her medical records with the Director of Student Health; ignored Jane's testimony given during her investigation interview which supported John's version of the events; ignored the potential motivations for Jane filing a complaint against John; misconstrued text messages exchanged between Jane and her friends to support Jane's account; and illogically deduced that John's purported lack of attention to Jane's condition on the evening of October 15, 2021 somehow confirmed that he likewise did not recognize that she was sleeping during their sexual contact on the morning of October 16. Cmplt., ¶¶ 232-238, 371-378. All of the foregoing raised further doubt about the fairness and correctness of the University's process and outcome.

After Associate Vice President and Dean of Students Dr. Adam Goldstein recommended a one-year suspension, John submitted his appeal on January 3, 2023, based on procedural irregularities, conflict of interest or bias, and a sanction incommensurate with the gravity of the findings. Cmplt., ¶¶ 245-246. On January 23, 2023, appeal officer Howard Kallem denied John's appeal, upholding the sanction of a one-year suspension. Cmplt., ¶¶ 248-249. Consequently, Plaintiff has been suspended during his final semester of his undergraduate education, depriving him of the ability to graduate with his class in May of 2023. Cmplt., ¶ 250. Further, he may not apply for readmission to the University until January 2, 2024. Cmplt., ¶ 250.

## STANDARD OF REVIEW

As a general rule, pleadings must entail "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This standard instructs that, when faced with a Rule 12(b)(6) motion to dismiss, "the court should accept as true all well-pleaded

allegations and should view the complaint in a light most favorable to the plaintiff." *See Gastonia 1228 Invs., LLC v. HB Gastonia, LLC,* No. 3:16-CV-00498-GCM, 2017 WL 990528, at *2 (W.D.N.C. Mar. 14, 2017), *citing Mylan Labs, Inc. v. Matkari*, 7 F. 3d 1130, 1134 (4th Cir. 1993). A complaint will survive a motion to dismiss when it "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

## ARGUMENT

**I.    North Carolina Courts Recognize Enforceable Contracts in the Educational Context, When a University Fails to Follow its Disciplinary Procedures.**

North Carolina recognizes an action for breach of contract when a valid contract exists, and there is a breach of the terms of that contract. *Henderson v. Garcia Motorrad, LLC*, 248 N.C. App. 121, 789 S.E.2d 569 (2016). With respect to the educational context, the North Carolina Court of Appeals has recognized that a student can, in certain circumstances, bring a claim against a college or university for breach of contract. *See Ryan v. Univ. of N.C. Hosps.,* 128 N.C. App. 300, 301, 494 S.E.2d 789, 790 (1998) (citing *Ross v. Creighton Univ.,* 957 F.2d 410, 416 (7th Cir.1992). Specifically, "a student may bring a breach of contract action related to an 'educational contract' when the student is able to point to an identifiable contractual promise that the university failed to honor." *Williams v. Livingstone College, Inc.*, No. COA14-696, 239 N.C. App. 468, 770 S.E.2d 389, 2015 WL 660799, at *4, 2015 N.C. App. LEXIS 99, at *8-9 (N.C. App. Feb. 17, 2015). *See Herrera v. Charlotte Sch. of L., LLC*, No. 17 CVS 1965, 2018 WL 1902556, at *9 (N.C. Super. Apr. 20, 2018) ("where a student's claim includes "identifiable contractual promises that the University failed to honor," beyond promising a quality education, and the court can make "an objective assessment of whether the institution made a good faith effort to perform on its promise," without inquiring into the nuances of educational processes, then the breach-of-contract claim can survive"); *Neal v. Univ. of N. Carolina,* No. 5:17-CV-00186-BR, 2018 WL 2027730, at *7

7

(E.D.N.C. May 1, 2018) (allowing plaintiff's breach of contract claim to go forward on a limited basis with regard to the alleged failure to follow the promised procedures in the appeal process); *Myers v. Bradford Preparatory Sch.*, No. 3:17-CV-099-RJC-DCK, 2017 WL 6820203, at *4 (W.D.N.C. Oct. 19, 2017), *report and recommendation adopted,* No. 317CV00099RJCDCK, 2018 WL 325310 (W.D.N.C. Jan. 8, 2018) (Plaintiffs alleged the school failed to follow the disciplinary procedures required by its own Handbook; court allowed contract claim to survive motion to dismiss).

The particular circumstances that may give rise to a breach of contract claim were discussed by the Middle District of North Carolina in *McFadyen v. Duke University* (786 F. Supp. 2d 887, 981 (M.D.N.C. 2011), *aff'd in part, rev'd in part, dismissed in part sub nom., Evans v. Chalmers*, 703 F. 3d 636 (4th Cir. 2012)). In *McFadyen*, because the Plaintiffs alleged that the Code of Conduct "included specific, potentially enforceable provisions outlining certain procedures to be followed before a student would be suspended for violation of the Code of Conduct," the court held that "a breach of contract claim could potentially reach the limited inquiry of whether Duke failed to follow promised procedures for imposing discipline (particularly suspension) under the Code of Conduct." *McFadyen,* 786 F. Supp. 2d at 983. Citing to *Havlik v. Johnson & Wales Univ.,* (509 F. 3d 25, 34–35 (1st Cir.2007)), in which the First Circuit held that a student's relationship to his university is based in contract, the court in *McFadyen* thus permitted the Plaintiffs' breach of contract claim to proceed based on the University's alleged failure to follow the procedures promised to its students by Duke's disciplinary process. *McFadyen*, 786 F. Supp. 2d at 983.

## II. The Holding in *McFadyen v. Duke University* Concerning the Plaintiffs' Breach of Contract Claim is Informative and Highly Relevant.

Notably absent from Defendant's motion is a discussion of the court's holding in *McFadyen,* concerning the Plaintiffs' breach of contract claim. This is likely so because the court's decision in *McFadyen* on this issue is informative and highly relevant to the present matter. None of the cases cited by Defendant hold otherwise, and each is plainly distinguishable. For instance, in *Shaw v. Elon Univ.* (400 F. Supp. 3d 360 (M.D.N.C 2019)), the court declined to recognize an enforceable contract when the policy provisions the plaintiff alleged to have been violated included general and aspirational statements, such as the University's estimated timeline for completion of an investigation, rather than "a limited, enforceable contractual obligation arising from a process violation." *Shaw,* 400 F. Supp. 3d at 367. In *McClean v. Duke University*, (376 F. Supp. 3d 585, (M.D.N.C. 2019)), the court declined to recognize a breach of contract claim where the plaintiff failed to identify the source of the contractual promises allegedly breached by Duke University and failed to point to any specific promise Duke allegedly contracted to provide. In contrast, Plaintiff John Doe has identified the particular sources of Wake Forest's promises, as well as the precise provisions breached. Similarly, the court in *Doe v. Lees-McRae Coll.,* (2021 WL 1096285, at *9 (W.D.N.C. Feb. 4, 2021)) rejected the plaintiff's breach of contract claim on the grounds that plaintiff failed to allege an identifiable contractual promise, related to the College's purported failure to accommodate his disability.

In *Neal v. University of North Carolina*, (2020 WL 5775145 (E.D.N.C. Sept. 28, 2020), *aff'd sub nom. Neal v. E. Carolina Univ.,* 53 F.4th 130 (4th Cir. 2022)) the court on summary judgment dismissed the plaintiff's breach of contract claim, concluding that the graduate catalog upon which the plaintiff relied was more akin to the handbook at issue in *Shaw v. Elon University,* as opposed to the policy deemed actionable in *McFadyen.* Importantly however, and

9

noticeably absent from Wake Forest's discussion of *Neal*, is the fact that at the motion to dismiss stage, the trial court denied East Carolina University's motion to dismiss, recognizing that the plaintiff made out an actionable legal claim. *See Neal v. Univ. of N. Carolina,* No., 2018 WL 2027730, at *7 (E.D.N.C. May 1, 2018) (permitting contract claim to go forward "on a limited basis with regard only to the alleged failure to follow the promised procedures in the appeal process.") It was only after completing discovery, when the plaintiff was unable to meet her burden at the summary judgment stage, that her breach of contract claim was dismissed. *See Neal*, 2020 WL 5775145, at *8 (noting "[w]hile plaintiff may have adequately pled a claim pursuant to Federal Rule of Civil Procedure 8 to survive a motion to dismiss, the standard for summary judgment requires a different level of scrutiny to determine whether there is a genuine issue of material fact precluding summary judgment.")

In *Love v. Duke University* (776 F. Supp. 1070 (M.D.N.C. 1991)), the court found that an academic bulletin, which specified the timeline in which students were to complete preliminary examinations, did not create a binding contract. *Love* is distinguishable from the present matter, first, because it did not involve an alleged failure to comply with stated disciplinary procedures and, second, because it concerned an academic dismissal rather than a disciplinary dismissal. Similarly, the court in *Chandler v. Forsyth Tech. Cmty. Coll.*, (294 F. Supp. 3d 445 (M.D.N.C 2018)) determined that a student academic planner did not create a contract. The court was not tasked with determining whether a conduct policy assuring the University would provide certain procedures for imposing discipline would create an enforceable contract.

The matters of *Black v. West Carolina University* (109 N.C. App. 209 (1993)), *Walker v. Westinghouse Elec. Corp.* (77 N.C. App. 253 (1985)), and *Rajpal v. Livingston College, Inc.* (212 N.C. App. 692 (2011)) are all distinguishable as those cases involved alleged violations of

10

employment contracts. The holding in *Montessori Children's House of Durham v. Blizzard*, (244 N.C. App. 633, (2016)) is likewise inapposite as the case concerned the enforceability of a tuition agreement at a private school. Finally, the court in *Guiliani v. Duke Univ.*, (No. 1:08CV502, 2010 WL 1292321, at *6 (M.D.N.C. Mar. 30, 2010)) declined to recognize an enforceable contract based on alleged oral statements made by a coach to a student athlete.

Significantly, and contrary to the present matter, in none of the foregoing cases did the plaintiffs both identify the particular policies and procedures that formed the terms of the contractual relationship, as well as the promised procedures that were violated through the disciplinary process.

### III. Plaintiff Identifies Several Specific Disciplinary Procedures that Wake Forest Failed to Follow in Investigating and Adjudicating the Charges Against Him.

Here, as in *McFadyen*, Plaintiff John Doe identifies the "specific, potentially enforceable provisions outlining certain procedures to be followed before a student would be suspended for violation of the [Policy]." *See McFadyen*, 786 F. Supp. 2d at 983. As described in Plaintiff's Complaint, Wake Forest's Sex and Gender Discrimination, Harassment, and Misconduct Policy applies to allegations of sexual harassment and sexual misconduct made by or against a student, employee or third party. Cmplt., ¶ 23. The Policy defines the various types of misconduct prohibited by the University's grievance procedures including sexual harassment, sexual assault, and retaliation, and declares that discrimination, harassment, and misconduct on the basis of sex and gender is prohibited. Cmplt., ¶¶ 26-30.

The Title IX Sexual Harassment and Non-Title IX Sexual Misconduct Grievance Procedures applies to allegations of sexual harassment in the University's Education Program or Activity and allegations of sexual misconduct. Cmplt., ¶ 39. The Procedures describe the steps that must be followed by the University when the University learns of allegations of sexual misconduct,

11

from the time a complaint is received, through the investigation process, the hearing process, and a potential appeal, as well as factors to be considered in a sanctioning decision. Cmplt., ¶¶ 42-108.

Plaintiff describes in his Complaint how Wake Forest failed to follow certain promised procedures when carrying out its disciplinary process against him. First, Wake Forest failed to provide Plaintiff with proper notice of the allegations against him. Cmplt., ¶ 305. Pursuant to Section 2A.04 of the Procedures, the University was obligated to furnish written notice of the allegations at issue, including "sufficient details" as to the "conduct allegedly constituting Sexual Harassment and/or Sexual Misconduct." Cmplt., ¶ 410. On April 13, 2022, Plaintiff was notified that Jane alleged non-consensual sexual activity due to incapacity on the evening of October 15, 2021 and digital penetration on the morning of October 16, 2021. Cmplt., ¶¶ 166-168. There was no mention of any allegations related to the pair having engaged in sexual intercourse on the relevant evening, in the initial notice of charges. However, months later, in September of 2022, Wake Forest permitted Jane to amend her allegations, to include a charge of non-consensual sexual intercourse, notwithstanding that had such an allegation been true, Jane would have had knowledge of the claim when she first filed her report in April. Cmplt., ¶¶ 185-186.

Second, Wake Forest violated Section 2A.15 of its Procedures which mandates that respondents be presumed not responsible for alleged sexual harassment until a determination regarding responsibility is made. Cmplt., ¶ 420. Section 2A.16 of the Procedures goes on to state that "[t]he investigators and decision-makers under these Grievance Procedures will objectively evaluate all Relevant Evidence, including both inculpatory and exculpatory evidence, and will not make any credibility determinations based on a person's status as a Claimant, Respondent, or witness." Cmplt., ¶ 421. Defendant violated this provision when it supplemented Jane's allegations, to include an additional charge of non-consensual sexual intercourse. Cmplt., ¶ 422.

Wake Forest presumed Plaintiff responsible for the alleged misconduct when it permitted Jane to add this new charge, based solely upon statements made by Jane during her first interview, before Telligman ever met with John to hear his account of the events. Cmplt., ¶¶422-424.

Third, the University failed to conduct a fair hearing, in contrast to the Procedures' assurance that those involved in the investigation process will be trained to "not rely on sex or gender stereotypes" and to "promote impartial investigations and adjudications," as well as Section 3A.02 of the Procedures which addresses the right of both parties to question the other party and any witnesses during the hearing. Cmplt., ¶¶ 426-427. Wake Forest violated these procedures when Hearing Chair Dixie Wells permitted Jane's advisor to ask every question proposed while restricting Plaintiff's advisor from asking the parties and witnesses certain relevant questions, pressed Doe's advisor to finish his cross-examination of Jane because it was getting late into the evening, permitted the witnesses to avoid responding to certain questions posed by Doe's advisor, repeatedly interrupted Doe's advisor while not once interrupting Jane's advisor, and prohibited Doe's advisor from pursuing several material lines of questioning including those relevant to Jane's credibility. Cmplt., ¶¶ 434-435, 438, 442, 444.

Finally, Wake Forest violated its obligation to address instances of retaliation, as required by Sections 1.01 and 1.02 of the Procedures. Cmplt., ¶¶ 452-453. Plaintiff advised Telligman on September 8, 2022, that he had experienced several instances of retaliation committed by Jane and her friends. Cmplt., ¶ 454. He followed up this report by email on October 19, 2022 to Telligman, reiterating that additional acts of retaliation had been committed against him. Despite meeting with Telligman about these concerns, and exchanging emails with Casseus as well as Dean of students Jim Settle through November and December of 2022, the University never took steps to investigate Doe's complaint of retaliation. Cmplt., ¶¶ 456-459.

Each of the foregoing represents specific enforceable provisions outlining certain procedures to be followed before a student can be suspended. As in *McFadyen,* Plaintiff's breach of contract claim should be permitted to proceed on the limited inquiry of whether Wake Forest failed to follow these promised procedures before imposing discipline.

**IV.     There is Near Universal Recognition that University Student Handbooks, Policies, and Procedures are Enforceable Contracts.**

Denial of Defendant's motion is further warranted on the ground that there is near universal recognition in the United States that the "basic legal relation between a student and a private university or college is contractual in nature. The catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant become a part of the contract." *Zumbrun v. University of Southern California,* 25 Cal. App. 3d 1, 101 Cal. Rptr. 499, 504 (1972) (collecting cases from numerous states). *See Ross v. Creighton Univ.,* 957 F. 2d 410, 416 (7th Cir. 1992); *Doe v. Trustees of Boston College,* 892 F. 3d 67, 80 (1st Cir. 2018); *Papelino v. Albany College of Pharmacy of Union University,* 633 F. 3d 81, 93-94 (2nd Cir. 2011); *Doe v. University of Sciences*, 961 F. 3d 203, 211-213 (3rd Cir. 2020); *Univ. of Mississippi Med. Ctr. v. Hughes,* 765 So. 2d 528, 534 (Miss. 2000); *Atria v. Vanderbilt University*, 142 Fed. Appx. 246, 255 (6th Cir. 2005); *Corso v. Creighton University*, 731 F. 2d 529, 531-533 (8th Cir. 1984); *Kashmiri v. Regents of Univ. of California,* 156 Cal. App. 4th 809, 823, 67 Cal. Rptr. 3d 635, 646 (2007), *as modified* (Nov. 15, 2007), *as modified* (Nov. 28, 2007) ("[a]lthough *Zumbrun* concerned a private university, other courts have recognized that a contractual relationship applies equally to state universities"); *Sirpal v. University of Miami*, 509 Fed. Appx. 924, 929 (11th Cir. 2013); *Doe v. George Washington University*, 321 F. Supp. 3d 118, 123 (D.C. 2018).

It is noteworthy that Wake Forest treated its policies and procedures as a binding contract when it found Doe to have violated the Policy and imposed a resultant sanction. Yet, the University

simultaneously claims that those same policies do not create an enforceable contract such that the University is itself bound to follow its own policies and procedures. The law does not allow the University to pick and choose when to treat its policy as a binding and enforceable contract. Presumably, Wake Forest would not dispute that when a student is admitted to a private college or university, there is a mutual agreement and understanding on both sides, that if the student complies with the terms established by the college or university, the student will graduate and earn his or her degree. Applying the same logic, university disciplinary policies create an agreement between student and school that describe the university's expectations of the student body, and the procedures that follow should a violation of those expectations occur. Consistent with the holding in *McFadyen,* the limited inquiry of whether Wake Forest University failed to follow promised procedures for imposing discipline upon Plaintiff is sufficiently alleged in Plaintiff's Complaint, creating an actionable breach of contract claim in this action.

## CONCLUSION

For all the reasons set forth herein, Defendant Wake Forest University's motion should be denied in its entirety.

DATED: March 31, 2023

>Respectfully submitted,
>
>**NESENOFF & MILTENBERG, LLP**
>*Attorneys for Plaintiff John Doe*
>
>By: */s/ Andrew Miltenberg*
>Andrew T. Miltenberg, Esq. (Special Appearance)
>Stuart Bernstein, Esq. (Special Appearance)
>Tara J. Davis, Esq. (Special Appearance)
>363 Seventh Avenue, Fifth Floor
>New York, New York 10001
>(212) 736-4500
>amiltenberg@nmllplaw.com
>sbernstein@nmllplaw.com
>tdavis@nmllplaw.com

-and-

**EKSTRAND AND EKSTRAND, LLP**
By: /s/ *Robert Ekstrand*
Robert C. Ekstrand, Esq.
110 Swift Avenue, 2nd Floor
Durham, North Carolina 27705
(919) 416-4590
rce@ninthstreetlaw.com
Bar No. 26673

16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

---------------------------------------------------------------X
**JOHN DOE,**

                **Plaintiff,**                Case No. 1:23-cv-00114

    **-against-**

**WAKE FOREST UNIVERSITY,**

                **Defendant.**
---------------------------------------------------------------X

**CERTIFICATE OF COMPLIANCE WITH L.R. 7.3(d)**

    The undersigned counsel hereby certifies that this brief contains 4,475 words as calculated by the word processing software used to produce it and therefore complies with Local Rule 7.3(d)'s limitation of 6,250 words, excluding captions, signature blocks and certificates.

                                                    /*s/ Tara J. Davis*
                                                    Tara J. Davis, Esq.
                                                    Special Appearance

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

-------------------------------------------------------------------X
**JOHN DOE,**

                    **Plaintiff,**                    Case No. 1:23-cv-00114

   -against-

**WAKE FOREST UNIVERSITY,**

                    **Defendant.**
-------------------------------------------------------------------X

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of March, 2023, I filed the foregoing using the Clerk's CM/ECF system, which will provide notice to all counsel of record.

                                              /s/ *Tara J. Davis*
                                              Tara J. Davis, Esq.
                                              Special Appearance