IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JOHN DOE,<br>　　　　　Plaintiff,<br><br>v.<br><br>WAKE FOREST UNIVERSITY,<br>　　　　　Defendant. | Civil Case No. 1:23-cv-114 |

**REPLY IN SUPPORT OF DEFENDANT WAKE FOREST
UNIVERSITY'S MOTION FOR SUMMARY JUDGMENT**

　　　　Plaintiff continues to believe he should not have been suspended by the University for sexual assault. He continues to argue that despite the nearly infinite list of possible reasons supporting the finding, the *only* rational explanation is unlawful discrimination, though discovery has identified no direct or circumstantial evidence of gender bias. Plaintiff continues to exaggerate perceived flaws in the investigation and hearing, which, even if they were supported by record, create no inference of gender discrimination. Courts have found no trouble in granting summary judgment for university-defendants in other cases with stronger facts presented by plaintiffs.

　　　　And despite its shortcomings, this Court allowed Plaintiff's contract claim to proceed to discovery under the "generous standard of review." The Court made clear that, at summary judgment, Plaintiff would need to present evidence of a breach of a specifically enforceable procedural promise. Plaintiff has failed to meet the Court's standard. The three Policy provisions Plaintiff argues the University violated are non-actionable and, in any case, were not actually breached. Plaintiff's breach of contract claim accordingly fails as a matter of North Carolina law.

　　　　The sum total of Plaintiff's argument is that he was not provided with a perfect process because he has identified a handful of things he claims should have been done differently. Plaintiff

is not entitled to perfection. The University's process is not a court of law, and not even courts with experienced judges are held to the standard Plaintiff seeks to impose here, where a few stray remarks and rulings he disagrees with are cause to conclude the person judging the outcome acted with sex animus. Such a standard would subject countless university disciplinary proceedings to jury review, undermining the process and turning the summary judgment standard on its head.

## ARGUMENT

I. **The University is entitled to judgment on Plaintiff's Title IX claim because he has failed to adduce any facts from which a reasonable jury could conclude Doe's status as a male was the but-for cause of the University's decision.**

To survive summary judgment, a Title IX Plaintiff must establish that gender was the but-for cause of the adverse decision against the student. *Sheppard v. Visitors of Virginia State Univ.*, 993 F.3d 230, 236 (4th Cir. 2021); *Kashdan v. George Mason Univ.*, 70 F.4th 694, 701 (4th Cir. 2023). Plaintiff attempts to pare back his burden by arguing that gender need not be the *only* cause for the adverse disciplinary proceeding, *see* Opp. at 19-20, but Plaintiff misconstrues the University's argument and the holdings in *Sheppard* and *Kashdan*: "The improper motivating factor (gender bias) must be a but-for cause of the erroneous outcome in the challenged disciplinary proceeding." *Kashdan*, 70 F.4th at 701 (citing *Sheppard*, 993, F.3d at 236-37).[1] "[U]nder *Sheppard* it is not enough for the disciplinary decision to have been erroneous. Plaintiff must go further and prove that his sex was the 'but-for' cause of the suspension." ECF 27 at 11. As this Court explained, Plaintiff may not conflate "a finding of an 'erroneous' decision with the required additional finding that 'but-for' gender bias the male student would not have been disciplined."

---

[1] Plaintiff cites *Bostock v. Clayton County, Georgia* in an attempt to reduce his burden on causation and apply the Title VII standard that a protected trait must be a "motivating factor." Opp. at 19. In *Shepherd*, which examined the analysis in *Bostock*, the Fourth Circuit found that the "motivating factor" standard was expressly incorporated into the Title VII statute, but for Title IX matters the higher "but-for" causation standard still applied. *Sheppard*, 993 F.3d at 237, n.7.

-2-

*See* ECF 27 at 12, n.4 (citing *Sheppard*, 993 F.3d at 236). But that is precisely what Plaintiff argues, because he must: Plaintiff has failed to identify *any* evidence that he would not have been suspended but for discrimination based on his gender. Instead, Plaintiff relies entirely on the reasons he thinks the University got the process and the decision wrong, then equates those reasons with sex bias. That does not satisfy his burden. *See Kashdan*, 70 F.4th 701 (affirming dismissal of Title IX claim for lack of connection between sex and outcome).

### A. Plaintiff has not demonstrated a procedurally flawed process or that he was treated differently based on his gender.

**The Investigation.** Plaintiff contends that Jessica Telligman did not thoroughly investigate the case, did not ask for additional text messages from Roe's friend I.L., did not interview Roe's friend M.D., did not pursue Roe's medical records and an interview with a medical provider, and "altered" Roe's answers. *See* Plaintiff's Opposition**,** ECF 69 **(**"Opp.") at 10-11. Many of these allegations are exaggerated and not supported by the evidence, as the Court observed in the context of Plaintiff's request for preliminary injunctive relief. ECF 27 at 13. There is also nothing in the record to suggest that the alleged irregularities or procedural errors had anything to do with Doe's gender or that the flaws Doe complains about affected the outcome of his case.

Policy § 2B.02 requires an investigator to: (1) interview the Claimant, Respondent, and witnesses; (2) summarize such interviews in writing; (3) collect and review relevant documents; and (4) collect and review Relevant Evidence. The Investigator then prepares a written report to summarize the Relevant Evidence, and make the evidence available to all parties. *See* Declaration of Joshua W. B. Richards, ECF 66 ("Richards Decl.") at Ex. 6 (ECF 66-6), § 2B.03. The investigator did all of these things. Moreover, implicit and necessary for Plaintiff's argument about "sex-bias in investigation" to be right is that (1) the investigator made an intentional choice to not pursue material evidence; and (2) that the investigator did so because Plaintiff is male. But Plaintiff

conceded that the investigator is limited in the information they can obtain, and that the University could not compel any party to provide any document, communication, or other evidence to the investigator. *Id.* Ex. 32 (ECF 66-32), Admission 24. So the baseline is that the investigator can obtain only what witnesses choose to provide. That includes medical records, which the University could not compel Roe to produce. *Id.* Ex. 6 (ECF 66-6), § 2B.05.

After the investigation report is drafted, the parties have ten days to provide a written response or raise any issues or additional evidence they believe should be considered. This is a critical step in the process designed to provide significant procedural protections for parties who feel not all material evidence has been sought. When Doe received the draft investigation report, Doe knew: (1) that I.L. only provided four text messages; (2) that Roe had several medical visits; (3) that M.D. was not interviewed by the investigator; and (4) the contents of the transcripts of Roe's interviews. There is no evidence in the record that he objected, asked for further investigation, or raised these points at the hearing, where he also could have done so. Instead, when Wells asked Plaintiff at the hearing, "Do you have any concerns regarding the way in which your formal complaint or the way in which [Roe's] formal complaint has been investigated?" Plaintiff answered "No." *Id*. Ex. 26 (ECF 66-26) at 295:15-19.

As a result, this argument of "sex bias in investigation" by Doe defies credulity; he did not care enough about this evidence *then* to raise an issue, when he knew a suspension could result from the hearing (and the University could have considered correcting any issue), but *now* it is purportedly critical evidence of bias. This is "gotcha" reasoning at its worst and, based upon the course of conduct in the record, such arguments are paper-thin and waived.

Plaintiff tries to dodge the waiver issue by pointing out that "the Policy does not allow for objections during the hearing." Opp. at 11, n. 5. Plaintiff misapprehends the problem. It is true that

-4-

advisors are not permitted to object to other advisors' questions, but the waiver by Plaintiff is not about objections to questions. Rather, it about Plaintiff's responses to Wells' direct questions about whether defects in process had arisen that could be corrected before the outcome was determined. Wells asked each advisor if they had any objections at the conclusion of each witness and made it clear she wanted any objections or issues raised during the hearing. Plaintiff's advisor consistently said he had no objections. *See* Richard's Decl. at Ex. 26 (ECF 66-26) at 14:20-15:1-10; 92:18-23; 137: 13-21; 166: 11-13; 254: 7-10; 288: 1-5, 367:12-15.

None of Plaintiff's other arguments about the investigation demonstrate intentional disparate treatment either. Although the raw number of interviews does not demonstrate bias, *see Doe v. Rollins Coll.,* No. 21-11081, 2023 WL 5199469 (11th Cir. Aug. 14, 2023), each party here was interviewed by Telligman four times. *See* ECF No. 66-22 at 17-18. Both Doe and Roe were told they had the right to provide the names of any witnesses they felt had relevant information and to provide any evidence they believed was relevant. *See* Telligman Dep. (ECF 66-12) at 19:23-20:6, 132:3-6; Doe Dep. (ECF 66-7) at 44:1-16. There is no evidence or testimony that Telligman treated Roe and Doe differently based on their genders; while Plaintiff argues Telligman "suggested" answers to Roe, she used the same questioning technique with Doe. *See* Telligman Decl. (ECF 66-27) at ¶ 35; ECF 66-35 at 8. Plaintiff may second-guess or dislike the investigative decisions Telligman made or techniques she used, but that does not amount to gender bias.

**The Hearing.** Plaintiff also repeats his allegations about alleged procedural flaws in the hearing process, such as disallowing certain questions and imposing a time limit on Doe's advisor. The procedural and evidentiary rulings by Wells during the hearing were discussed extensively in the University's Motion ("Univ. Br."), ECF 64 at 9-12, 16-18. The exaggerations the Court identified in Plaintiff's motion for preliminary injunctive relief persist, and the hearing transcript

-5-

demonstrates that Wells was fair, impartial, and gave significant leeway to Doe's advisor to ask probing questions of Roe. *See generally* ECF No. 66-26.

**The Final Outcome Letter.** Plaintiff argues that Wells exhibited bias based on the credibility determination she made and purported adverse inferences she drew against him. Opp. at 14-16. But other than his disagreement with the rulings, Plaintiff does not demonstrate how the determinations were gender-based. Credibility determinations made by a fact-finder cannot, without more, establish bias or discrimination. *N.L.R.B. v. Honaker Mills, Div. of Top Form Mills, Inc.*, 789 F.2d 262, 266 (4th Cir. 1986) (holding credibility determinations made while listening to the evidence cannot sustain a claim for bias; there must be a showing of something from outside the case that affected the factfinder's impartiality); *Nickelson v. Astrue*, No. 1:07CV00783, 2009 WL 2243626, at *5 (M.D.N.C. July 27, 2009) ("Rulings alone, however, are almost never sufficient evidence of bias. . . . And expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women ... sometimes display do not establish bias." (internal quotations omitted)).

Plaintiff encapsulates the problem well in his Opposition: "Ultimately, Wells found Doe to be less credible than Roe, despite both parties presenting with inconsistencies in their accounts and notwithstanding that the inconsistencies in Doe's account were considerably less material to the overall narrative than Roe's." Opp. at 15. That Plaintiff disagrees with Wells' credibility determinations is clear, but in so doing he has "shown" little more than that Wells' independent, objective weighing of credibility was different than Plaintiff's own subjective view. *Accord Brzonkala v. Virginia Polytechnic Inst. & State Univ.*, 132 F.3d 949, 962 (4th Cir. 1997) (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)). Wells articulated good reasons for what she did, *see* Univ. Br. at 17-19, and Plaintiff's disagreement does not show sex bias.

Plaintiff attempts to manufacture bias by citing language in a draft Final Outcome Letter about Plaintiff being "entitled to sex." Opp. at 6. That argument might be probative of gender discrimination if it was based on a stereotype about men generally, rather than the evidence, but Plaintiff conceded, both at the hearing and in discovery, that he *did* intend to have sex with Roe. *See* Richards Decl. Ex. 32 (ECF 66-32) at Admission 25. When describing the lead up to sex, Plaintiff testified: "A date function is a little bit different, it's you know a girl has to the guy and then when they go there like -- it's a little more elevated I would say. So, I think that plays a factor. . . I thought it was appropriate and I reached into my wallet, and I got a condom out." *Id*. at Ex. 26 (ECF 66-26) at 319: 2-10. Ultimately, Wells did not base her decision on that fact, as evidenced by the fact that she removed that reasoning from her Outcome Letter. But even if Wells had relied on that finding, it wasn't a stereotype – it was grounded in the evidence of *this case*. It does not establish bias, particularly in the context of Wells' well-reasoned conclusions about credibility.

**B. Plaintiff improperly relies on external pressures to support gender bias.**

Plaintiff continues to argue, at odds with recent and controlling Fourth Circuit precedent, that external pressures can prop up his gender bias claim unmoored from an impact on his own case. Opp. at 16-17. In *Doe v. The Citadel*, the Fourth Circuit rejected Plaintiff's approach, holding that external pressure could not establish bias without *specifically linking it* to the alleged discrimination. No. 22-1843, 2023 WL 3944370, at *4 (4th Cir. June 12, 2023). Plaintiff provides no such link. Instead, he argues in conclusory fashion that because University staff[2] were all aware

---

[2] Plaintiff relies on a single answer from Roe's hearing testimony to conclude that Wells was aware of the student protests, despite Wells' declaration under oath that she was not aware of the protests when she made her decision. Opp. at 18; Richards Decl. Ex. 4, ECF No. 66-4 (Wells Decl.) at ¶ 27. Plaintiff then complains that the University relies on a "self-serving" declaration to establish Wells' lack of knowledge about the protest. This is a curious characterization of Wells' declaration in light of Plaintiff's failure to ask Wells *any* questions about that topic during her deposition, months after Wells' declaration was filed with the Court. Opp. at 18; *see generally* Wells Dep.

of a student protest, it must have led to them to be biased against Plaintiff. Opp. at 17. There is no evidence *at all* in the record that a student protest more than a year earlier or other external factors had any effect on the outcome of Plaintiff's Title IX proceeding, which is fatal under *The Citadel*.

Plaintiff tries to argue that the University made changes in reaction to the protest while Plaintiff's case was being investigated, but any inference of causation from Plaintiff's invented timeline is contradicted by the facts – particularly the two other Title IX cases being adjudicated in the same time frame as his. On February 15, 2022, a Title IX hearing was held for allegations by a female of sexual assault against a male respondent. The male respondent was found not responsible. *See* Richards Decl. Ex. 5 (ECF 66-5). The complainant appealed and on March 29, 2022 (two weeks before Jane Roe filed her complaint) the not-responsible finding was upheld. *Id*. On May 31, 2022, another female vs. male Title IX hearing was held. Again, the male respondent was found not responsible. *Id*. The complainant appealed, and the finding was upheld on July 26, 2022. Casseus was the Title IX Coordinator during both hearings, and Telligman investigated both cases. According to Plaintiff, both Telligman and Casseus were aware of the protest and other external pressures when these investigations and hearings were held. Yet, in both cases, closer in time to the protest, the male respondent was found not responsible. Arguing that his, but not those cases were tainted by the protests lacks any foundation in logic or common sense.

### C. Plaintiff's Title IX claim fails for lack of causation.

Earlier this month, the Eleventh Circuit affirmed summary judgment denying gender discrimination claims brought by a male student, in a case with a remarkably similar fact pattern. *See Doe v. Rollins Coll.,* No. 21-11081, 2023 WL 5199469 (11th Cir. Aug. 14, 2023). The male plaintiff was accused of sexually assaulting a female student in a dorm room following a Greek life date event. *Id*. at *2. Doe was found to have violated the Title IX policy and was found responsible for sexual assault amidst conflicting accounts of what took place. *Id*. at *2-4. Despite

the very similar fact patterns, there are two significant differences between *Rollins* and this case: (1) the *Rollins* plaintiff identified significantly stronger evidence of gender bias than Plaintiff has here; and (2) the *Rollins* court applied a lower, "motivating factor" bar to that plaintiff's claims.

Unlike here, where Doe has provided no direct or indirect evidence of bias by anyone involved in the Title IX process,[3] the *Rollins* plaintiff presented emails and training materials from the Title IX Coordinator that showed stereotypes of males as predators. *Id*. at *12. And while Doe attempts to invent inequalities in Telligman's investigation, the *Rollins* plaintiff was able to establish *actual* inequalities, including: (1) the investigator interviewed plaintiff once and his accuser four times; (2) a statement by the investigator (who was also the adjudicator) that men seek sex and are responsible for obtaining consent; and (3) the investigator questioned the plaintiff about his sexual history but did not delve into the accuser's sexual history. *Id*. at *12-13.

Applying the less exacting "motivating factor" standard, the Eleventh Circuit easily affirmed summary judgment for the College, concluding (as here) that many of the alleged process "flaws" were not flaws at all, and in any case could not show gender bias. *Id*. at *13; *see cf. Neal* v. *E. Carolina Univ*., 53 F.4th 130, 134 (4th Cir. 2022) (finding insufficient evidence to establish that alleged discrimination based on a disability was a "motivating factor" for student's dismissal). The *Rollins* court further rejected evidence of external pressures raising an inference of gender bias because "the fact that 5 of the 12 accused male students were ultimately found to not have engaged in sexual misconduct . . . demonstrates that Rollins' investigations didn't invariably yield anti-male results. And that, in turn, weighs against a finding of anti-male bias." *Id*.

Here, Plaintiff must meet a higher burden and show that his gender was the "but-for" cause of him being found responsible for sexual assault. *Sheppard*, 993 F.3d at 237, n.7. Yet, Plaintiff

---

[3] *See* Richards Decl. Ex. 32 (ECF No. 66-32), Doe's Admissions 2-11, 14-15

has adduced *less* evidence of bias than the plaintiff in *Rollins*: no inequitable process, and no pattern of anti-male decision-making by the University (the *Rollins* adjudication did not involve a hearing with live cross examination, either). The *Rollins* court found that 7 out of 12 males being found responsible *was not* evidence of anti-male bias. Here, the University has received twelve formal complaints and held five hearings against male respondents since August 2020. Doe is the only male student to be found responsible. *See* Richards Decl. Ex. 5 (ECF 66-5). Under both *Rollins* and a commonsense application of the legal standard, Doe's Title IX claim cannot survive.

## II. No reasonable trier of fact could find that the University breached a contract with Plaintiff.

Plaintiff has not met his burden to identify an objective procedural promise that the University failed to honor. *See* ECF 43 at 14 (mandating that at summary judgment Doe present "evidence of a breach of a specifically enforceable, procedural promise."). The Opposition narrows Plaintiff's remaining argument to contend that the University breached Policy Sections 2A.17 (Objective Evaluation of All Relevant Evidence; Credibility Determinations); 1.01 and 1.02 (by failing to timely respond to retaliation claims); and 3A.02 (The Formal Resolution Process). Opp. at 23-25. Yet again, Plaintiff does not identify a contractual promise breached by the University.

This "Court must distinguish between allegations related to a subjective assessment of how Defendant's sexual misconduct policies and procedures operated in Plaintiff's case and violations of fundamental procedural protections in the Policy." *See* ECF 43, at 12 (citing *McFadyen v Duke Univ.*, 786 F.Supp.2d 887, 983 (M.D.N.C. Mar 31, 2011); *Neal v. E. Carolina Univ.*, 2018 WL 2027730, at *7 (E.D.N.C. 2018)). "Specifically, subjective or 'aspirational' claims related to the overall 'fairness' of the process and whether the hearing officer or others made 'mistakes' of judgment in handling the claims against the Plaintiff, including the ultimate correctness of the

decision to find Plaintiff 'responsible' for misconduct and suspend him, are not enforceable identifiable objective contractual promises." *Id*. This holding forecloses Plaintiff's claim.

**Section 2A.17** provides: "The Investigators and decision-makers under these Grievance Procedures will objectively evaluate all Relevant Evidence, including both inculpatory and exculpatory evidence, and will not make any credibility determinations based on a person's status as a Claimant, Respondent, or witness." *See* Richards Decl. Ex. 6 (ECF 66-6). Section 2A.17 is a subjective or aspirational provision related to the fairness of the process. What constitutes relevant and inculpatory/exculpatory evidence is subjective and based on the views of the investigator and hearing officer, and, in any case, Plaintiff does not contend that any evidence available to Wells was not evaluated. He argues instead that it was not evaluated in a way he likes. Opp. at 12-16. Credibility determinations are likewise not objective procedural protections that can form the basis of a breach of contract claim. *Supplee v. Miller-Motte Bus. Coll., Inc.*, 239 N.C. App. 208, 219 (2015); *McFadyen v. Duke Univ.*, 786 F.Supp.2d 887, 983 (M.D.N.C. Mar. 31, 2011).

**Sections 1.01 and 1.02** present more aspirational provisions, including Wake Forest's commitment to investigating instances of harassment and discrimination. *See* Richards Decl. Ex. 6 (ECF 66-6) at §§ 1.01-02. Plaintiff complains that Wake Forest violated these provisions by not timely responding to Plaintiff's allegations of retaliation. Opp. at 25. Sections 1.01 and 1.02 are not specific, objective procedures capable of breach. Section 1.02 states that "complaints of Retaliation may be filed with the Title IX Coordinator and, ***at the discretion of the Title IX Coordinator***, may be addressed under Wake Forest's Pre-Hearing and Hearing Grievance Procedures. . . *Id*. at § 1.02 (emphasis added). Section 1.02 does not provide any specified time in which a retaliation complaint must be addressed and gives the Title IX Coordinator discretion in how to pursue a claim. As this Court already stated, the University's "failure to pursue a putative

-11-

'retaliation' claim against Jane Roe and her friends . . . appears to relate primarily to Defendant's exercise of discretion in handling various allegations rather than a fundamental procedural error." *See* ECF 43, at 14. Nothing has improved in this allegation or the evidence supporting it: the University administrator responding to Plaintiff's retaliation complaint emailed Plaintiff repeatedly (before the Final Decision was released) to set up a time to meet to discuss Plaintiff's retaliation allegations, *see* ECF 66-33, and Plaintiff conceded he did not respond because he decided to not pursue his retaliation complaint(s). *See* Richards Decl. Ex. 7 (ECF 66-7-Doe Dep.) at 150:6-151:16; Ex. 32 (ECF 66-32) Admissions 27-30.

Finally, **Section 3A.02** requires a hearing offer to "conduct a hearing in which they may question the Claimant, the Respondent, and any witness whose testimony the hearing officer deems relevant. During the hearing, the hearing officer and the parties may also question the investigator(s) about the investigative report." *See* Richards Decl. Ex. 6 (ECF 66-6) at § 3A.02. Plaintiff alleges that Wells violated this provision "through the manner in which she conducted the hearing." Opp. at 24-25. Yet, as with Section 2A.17, Plaintiff does not point to any specific requirement of 3A.02 that was not followed. The undisputed facts and the hearing transcript show that Wells: (1) questioned Jane Roe; (2) questioned John Doe; (3) questioned six other witnesses whose testimony she deemed relevant; and (4) Wells and the advisors questioned the investigator about her investigative report. *See generally* Richards Decl. Ex. 26 (ECF 66-26). As a result, the evidence does not establish that the University breached any procedural promise. Plaintiff again simply disagrees now with how the hearing was conducted and the final outcome, and his evidence goes to "the substance rather than the process of the hearing." *See* ECF 43 at 14.

The University is entitled to summary judgment on all counts.

.

Dated: August 24, 2023                    Respectfully Submitted,


                                          */s/ Joshua W.B. Richards*
                                          Joshua W.B. Richards (Special Appearance)
                                          Douglas A. Sampson (Special Appearance)
                                          SAUL EWING LLP
                                          Centre Sq. West, 1500 Market St.
                                          38th Floor
                                          Philadelphia, PA 19102
                                          215-972-7737
                                          joshua.richards@saul.com
                                          douglas.sampson@saul.com

                                          and

                                          William K. Davis (NCSB No. 01117)
                                          Alan M. Ruley (NCSB No. 16407)
                                          Mark A. Jones (NCSB No. 36215)
                                          BELL, DAVIS & PITT, P.A.
                                          P.O. Box 21029
                                          Winston-Salem, NC 27120
                                          336-722-3700
                                          wdavis@belldavispitt.com
                                          aruley@belldavispitt.com
                                          mjones@belldavispitt.com

                                          *Counsel for Defendant Wake Forest University*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of August, 2023, a copy of the foregoing Reply in Support of Wake Forest University's Motion for Summary Judgment was served on all counsel of record via the court's ECF system

*/s/ Douglas A. Sampson*
Douglas A. Sampson (Special Appearance)

## CERTIFICATION OF LENGTH OF BRIEF

Pursuant to Local Rule 7.3(d), I certify that Wake Forest University's Reply in Support of Its Motion for Summary Judgment complies with the Court's Pretrial Order and Case Management Plan, because the length is less that twelve (12) pages (inclusive of caption but excluding signatures and certificates of counsel). *See* ECF No. 35 at ¶ II.E. The brief is double spaced using the "double spaced" setting in "Word" and all text is 12-point font. *Id*.

*/s/ Douglas A. Sampson*
Douglas A. Sampson